John E. Schmidtlein (CA State Bar No. 163520)
Carol J. Pruski (CA State Bar No. 275953)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:    (202) 434-5000
Facsimile:     (202) 434-5029
Email:          jschmidtlein@wc.com
Email:          cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc.,*
*XXVI Holdings, Inc., Sundar Pichai, and Eric Schmidt*

Steven C. Sunshine (*pro hac vice*)
Jack P. DiCanio (CA State Bar No. 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone:    (650) 470-4660
Facsimile:     (213) 621-5430
Email:          steven.sunshine@skadden.com
Email:          jack.dicanio@skadden.com

*Attorneys for Defendants Apple Inc. and Tim Cook*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA CRANE SCHOOL, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, ALPHABET INC., XXVI HOLDINGS, INC., APPLE INC., TIM COOK, SUNDAR PICHAI, and ERIC SCHMIDT,<br><br>Defendants. | Case No. 4:21-cv-10001-HSG<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: August 11, 2022<br>Time:          2:00 p.m.<br>Place:         Courtroom 2<br>Judge:        Hon. Haywood S. Gilliam, Jr. |

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 11, 2022, at 2:00 p.m., or as soon thereafter as this matter may be heard, either in Courtroom 2 of this Court, located on the 4th Floor of the United States Courthouse, 1301 Clay Street, Oakland, California, or by videoconference or teleconference, Defendants Google LLC, Alphabet Inc., XXVI Holdings, Inc., Apple Inc., Tim Cook, Sundar Pichai, and Eric Schmidt (collectively, "Defendants") will move the Court for an order dismissing Plaintiff California Crane School Inc.'s Amended Class Action Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants respectfully request an order dismissing without leave to amend all causes of action brought against them in the above-captioned matter.  This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; any reply memorandum; the pleadings and files in this action; and such other matters Defendants may present at or before the hearing.

DATED:  April 12, 2022

**WILLIAMS & CONNOLLY LLP**

By: /s/ John E. Schmidtlein

John E. Schmidtlein (CA State Bar No. 163520)
Carol J. Pruski (CA State Bar No. 275953)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:    (202) 434-5000
Facsimile:    (202) 434-5029
Email:        jschmidtlein@wc.com
Email:        cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc.,*
*XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

Steven C. Sunshine (*pro hac vice*)
Jack P. DiCanio (CA State Bar No. 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone:    (650) 470-4660
Facsimile:    (213) 621-5430
Email:        jack.dicanio@skadden.com

*Attorneys for Defendants Apple Inc. and Tim Cook*

1

# **TABLE OF CONTENTS**

2

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

LEGAL STANDARD ................................................................................................................ 6

ARGUMENT ............................................................................................................................. 7

I.  THE COMPLAINT FAILS TO STATE A CLAIM UNDER SHERMAN ACT SECTION 1 BECAUSE IT DOES NOT ALLEGE FACTS THAT PLAUSIBLY SUGGEST THE EXISTENCE OF A PER SE HORIZONTAL AGREEMENT NOT TO COMPETE. ........ 7

    A.  THE COMPLAINT FAILS TO PLEAD DIRECT EVIDENCE OF A HORIZONTAL CONSPIRACY. ................................................................... 8

    B.  THE COMPLAINT FAILS TO PLEAD CIRCUMSTANTIAL EVIDENCE OF A HORIZONTAL CONSPIRACY. ................................................................... 9

II.  THE COMPLAINT FAILS TO STATE A CLAIM UNDER SHERMAN ACT SECTION 2 BECAUSE IT DOES NOT ALLEGE FACTS THAT PLAUSIBLY SUGGEST THE EXISTENCE OF A CONSPIRACY TO MONOPOLIZE, A RELEVANT MARKET THAT WAS MONOPOLIZED, OR A SPECIFIC INTENT TO MONOPOLIZE. .......... 13

    A.  THE COMPLAINT DOES NOT ALLEGE FACTS PLAUSIBLY SUGGESTING THE EXISTENCE OF A CONSPIRACY .................................... 14

    B.  THE COMPLAINT DOES NOT ADEQUATELY ALLEGE A RELEVANT MARKET ............................................................................................................ 14

    C.  PLAINTIFF FAILS TO ALLEGE THAT APPLE POSSESSED THE REQUISITE SPECIFIC INTENT. ................................................................................ 15

III.  THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH ANTITRUST STANDING. .................................................................................... 16

IV.  THE STATUTE OF LIMITATIONS BARS DAMAGES PREDATING DECEMBER 27, 2017 ............................................................................................ 21

V.  THE COURT SHOULD DISMISS THE COMPLAINT'S REQUESTS FOR DISGORGEMENT AND PUBLIC INJUNCTIVE RELIEF. ............................................ 25

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051 (9th Cir. 1999) ..........................16, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................................6, 24

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983).................................................................................................19, 20

*Auto Sound Inc. v. Audiovox Elecs. Corp.*, 2012 WL 12892938 (C.D. Cal. Dec. 3, 2012)...........10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. *passim*

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ............................................17

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717 (1988)......................................................7

*Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986) ......................................................18

*City of Oakland v. Oakland Raiders*, 20 F.4th 441 (9th Cir. 2021)........................................18, 20

*Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*,
771 F. Supp. 2d 1195 (N.D. Cal. 2011) ......................................................................25

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499 (9th Cir. 1988) .......................................24

*Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ..........................14

*Digital Sun Corp. v. The Toro Co.*, 2011 WL 1044502 (N.D. Cal. Mar. 22, 2011).......................3

*Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538 (9th Cir. 1987)........................................................20

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ....................12

*Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020) ........................................18

*G.U.E. Tech, LLC v. Panasonic Avionics Corp.*,
2015 WL 12696203 (C.D. Cal. Sept. 15, 2015) ...........................................................18

*Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044 (N.D. Cal. 2016) .............................................23

*Garrison v. Oracle Corp.*, 2015 WL 1849517 (N.D. Cal. Apr. 22, 2015) ...................................24

*Granddad Bread, Inc. v. Continental Baking Co.*, 612 F.2d 1105 (9th Cir. 1979) ......................14

*Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055 (9th Cir. 2012) ...................................21, 23

*Hicks v. PGA Tour, Inc.*, 897 F.3d 1109 (9th Cir. 2018) ................................................................. 15

*Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*,
  2018 WL 5891743 (D. Haw. Nov. 9, 2018) ..................................................................... 16

*In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195 (N.D. Cal. 2015) .................. 21, 22

*In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031 (N.D. Cal. 2021) ............................ 12

*In re Cal. Title Ins. Antitrust Litig.*, 2009 WL 1458025 (N.D. Cal. May 21, 2009) ..................... 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 3648478 (N.D. Cal. July 7, 2016) .................................................................... 25

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) ............................................................ 8, 9

*In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004) ..................................................... 11

*In re Graphics Processing Units Antitrust Litig.*,
  2007 WL 2127577 (N.D. Cal. July 24, 2007) .................................................................. 13

*In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002) ...................... 8, 11

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) .............................................. 9

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) ............................................................... 7, 9, 10, 11

*In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*,
  2012 WL 3637291 (S.D. Cal. Aug. 20, 2012) .................................................................. 11

*In re Online DVD Rental Antitrust Litig.*, 2011 WL 1629663 (N.D. Cal. Apr. 29, 2011) ............ 19

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010) ...................................... 13, 15

*Jacobsen v. Katzer*, 2006 WL 3000473 (N.D. Cal. Oct. 20, 2006) .............................................. 18

*Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140 (N.D. Cal. 2017) ...................................... 9

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) .................................................. 7, 12

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ....................................................................... 22

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) ................................... 18

*Lee v. Kitchables Prods.*, 2021 WL 3173253 (N.D. Cal. July 27, 2021) ..................................... 25

*Maguca v. Aurora Loan Servs.*, 2009 WL 3467750 (C.D. Cal. Oct. 28, 2009) ........................... 11

*Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129 (2d Cir. 2013) ................... 8

*McCabe Hamilton & Renny Co. v. Matson Navigation Co.*,
2008 WL 2233740 (D. Haw. Apr. 9, 2008) ..................................................................17

*Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166 (N.D. Cal. 2009)..............8

*Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co., Ltd.*,
467 F. Supp. 841 (N.D. Cal. 1979) ............................................................................14

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
795 F.3d 1124 (9th Cir. 2015) ..................................................................................12

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ..................................................................23

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) ..............................................................14

*Oliver v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014) ..............................................................22

*Pac. Steel Grp. v. Com. Metals Co.*, 2021 WL 2037961 (N.D. Cal. May 21, 2021)....................10

*Pace Indus., Inc. v. Three Phx. Co.*, 813 F.2d 234 (9th Cir. 1987) ..............................................21

*Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003) ............................13

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505 (8th Cir. 2018)..................9

*Peterson v. Sutter Med. Found.*, 2022 WL 316677 (N.D. Cal. Feb. 2, 2022) ..............................24

*Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*,
2013 WL 3873074 (S.D. Cal. July 25, 2013) ............................................................14

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) ....................12, 13, 16

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ..............................................................17

*Space Expl. Technologies Corp. v. Boeing Co.*,
2006 WL 7136649 (C.D. Cal. May 12, 2006) ......................................................17, 19

*Spindler v. Johnson & Johnson Corp.*, 2011 WL 13278876 (N.D. Cal. Jan. 21, 2011)...............22

*Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015)........................................20

*Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*,
405 F. Supp. 2d 1141 (C.D. Cal. 2005) ..............................................................13, 15

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.*,
2011 WL 2678879 (E.D. Cal. July 7, 2011) ........................................................13, 16

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 803 F.3d 1084 (9th Cir. 2015) ....................11

*Thorman v. Am. Seafoods Co.*, 421 F.3d 1090 (9th Cir. 2005)..................................................23

*Ticketmaster LLC v. Designer Tickets & Tours, Inc.*,
  2008 WL 649804 (C.D. Cal. Mar. 10, 2008) ...........................................................................18

*Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106 (E.D. Cal. 2002) .....................................19, 20

*TSI USA LLC v. Uber Technologies, Inc.*, 2018 WL 4638726 (N.D. Cal. Sept. 25, 2018)...........25

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185 (3d Cir. 2017).........................11

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................................................23

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321 (1971)...............................................21

## STATUTES

15 U.S.C. § 15........................................................................................................... *passim*

15 U.S.C. § 15b...............................................................................................................21

15 U.S.C. § 26................................................................................................................25

## FEDERAL RULES

Federal Rule of Civil Procedure 9(b) ..............................................................................23

Federal Rule of Civil Procedure 12(b)(6) .............................................................6, 15, 25

## OTHER AUTHORITIES

*DOJ-FTC Antitrust Guidelines for the Licensing of Intellectual Property*,
  2017 WL 282889 (2017)...........................................................................................10

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

Google and Apple provide complementary products and services that facilitate internet search: Google offers an internet search engine, and Apple offers an internet browser and a wide range of internet-accessible devices.   As is commonplace among companies that offer complementary products and services, Google and Apple integrated their offerings to create efficiencies and enrich the user experience.  Pursuant to publicly reported agreements, known as Information Services Agreements, Apple has agreed to set Google as the default search provider in its Safari web browser in the United States because Google offers the highest quality search results.  The agreements do not prevent Apple from integrating alternative search engines into Safari.  In fact, Safari users in the United States can choose among Microsoft's Bing, Yahoo!, DuckDuckGo, and Ecosia.  Pursuant to the agreements, Google has agreed to pay Apple a share of the advertising revenues generated by searches performed on Google by Safari users, another standard practice for search engines integrated via a browser's search field.

Although this *vertical* search agreement between search engine provider and web browser developer has been public knowledge for over 15 years (and has been a common form of agreement between search providers and web browser companies during this time, including between other search providers and Apple), Plaintiff tries to spin this *vertical* business relationship into a *per se* unlawful *horizontal* conspiracy whereby Apple also has agreed not to compete with Google.  But no such *horizontal* agreement exists, either as part of the Information Services Agreements or elsewhere, and Plaintiff's Amended Complaint (the "Complaint") does not allege facts plausibly suggesting otherwise.  Stripped of its repetitive conclusory assertions of conspiracy, the Complaint contains nothing more than a recitation of benign, public facts that do not show an unlawful conspiracy as a matter of law.  Because these allegations cannot support the *per se* horizontal

Sherman Act violation or the conspiracy to monopolize asserted in this case, the Complaint fails to state a claim for relief and should be dismissed with prejudice.

Moreover, even if the Complaint had set out viable claims, Plaintiff lacks antitrust standing to assert them.  The Complaint contends that, as a result of a far-fetched non-compete agreement between Google and Apple, Plaintiff and the putative class it seeks to represent paid inflated prices to place search advertising on Google.  But that theory of alleged injury requires *at least* five speculative steps to even loosely connect the dots between the challenged restraint and the injury claimed.  An injury would exist only if—in the absence of the (non-existent) non-compete agreement—Apple developed its own competing search technology and launched a search engine product for use by consumers, used this new search product as the default search provider for the Safari web browser, developed wholly separate search advertising technology and launched a search advertising business in conjunction with a new search engine product (neither of which exist today), and these wholly new businesses resulted in Plaintiff and class members winning search advertising auctions on Google with lower bids than they previously paid.  This attenuated theory, unsupported by any factual allegations, cannot satisfy the strict antitrust standing factors.

Plaintiff's baseless allegations also do not support claims for damages that date back to 2005, or any request for disgorgement of the revenue share payments made by Google to Apple.  According to the Complaint, consumers suffered monetary damages when they purchased Google search advertisements at allegedly inflated prices; however, that means the four-year statute of limitations bars all claims based on sales before December 27, 2017.  And Plaintiff's request that the Court disgorge payments from Google to Apple is a remedy categorically unavailable here.

Put simply, Plaintiff overreaches at every step.  It asserts claims that find no support in the alleged facts; it pursues a theory of injury connected by a multitude of tenuous, speculative links that do not satisfy antitrust standing requirements; it raises claims barred in substantial part by the

statute of limitations; and it seeks forms of relief precluded as a matter of law.   Apparently recognizing these deficiencies, which Defendants identified in their original motion to dismiss, Plaintiff chose to amend its complaint.   Yet Plaintiff's limited amendments fail to cure *any* of the identified deficiencies.   This is precisely the kind of case that the Supreme Court warned would require the rigorous enforcement of Rule 12's pleading requirements.   Defendants respectfully request that the Court follow that admonition and dismiss Plaintiff's Complaint with prejudice.

## BACKGROUND

Defendant Apple Inc. is a California-based technology company that manufactures a host of hardware devices, software, and services, including Macintosh desktop and notebook computers, iPhone and iPad mobile devices, and the Safari web browser that comes preinstalled on Apple devices.   Am. Compl. ¶¶ 50, 72, ECF. No. 39.   It provides cutting-edge electronics, software, and online services to consumers throughout the world.   *Id.* ¶ 72.   Defendant Google, LLC—a subsidiary of Defendants XXVI Holdings Inc. and Alphabet Inc.—has likewise risen from humble beginnings in Silicon Valley to develop high-technology and software products used by consumers around the world, including its world-famous Google Search engine.   *Id.* ¶¶ 49, 81.

According to the Complaint,[1] in 2005, Google entered into a contract with Apple to allow users of Apple devices in the United States to easily access Google Search on Apple's Safari web browser.   In particular, lacking its own search engine,  Apple agreed to set Google Search as the "out-of-the-box" default search service for its Safari web browser, *id.* ¶¶ 89-90, because Google offered the highest quality results.   Google also agreed to pay Apple a share of the advertising revenues generated by searches performed on Google by Safari users.   *Id.* ¶ 90.   The deal did not

---

[1] Defendants acknowledge that, for purposes of this motion, the Court must take Plaintiff's allegations as true, although it need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See, e.g.*, *Digital Sun Corp. v. The Toro Co.*, 2011 WL 1044502, at *2 (N.D. Cal. Mar. 22, 2011).   In fact, Defendants dispute many of Plaintiff's baseless and unsupported allegations.

require Google to be the *exclusive* search engine available on Apple products or even the only search engine promoted by Apple or its Safari web browser; consumers could easily change the default search provider on Safari.  *Id.* ¶ 117.  Apple always has been permitted to preload other search engines on any of its devices, "bookmark" other search engines on Safari, and provide users the ability to easily switch the Safari default search engine in the device's "Settings."  Rival search engines, and a variety of other search-enabled apps and voice assistants, also have been and continue to be available for easy download onto an Apple device from Apple's App Store.  To conduct web searches, users also are free to navigate to the web page of their preferred search engine via Safari or numerous alternative browsers available on Apple devices.  When examined carefully, Plaintiff's Complaint implicates only one of many ways that users could access a search engine on Apple devices:  the default search setting for the Safari web browser.  *Id.* ¶ 89.  And nowhere in this Complaint does Plaintiff allege that the (written) commercial agreements that facilitated the procompetitive promotion of Google Search to users of Apple devices contain any prohibition on Apple independently developing its own search engine.

The existence of these commercial agreements, first entered into years before the launch of the iPhone and iPad, has been public knowledge since their inception.  The pre-set default search engine, like other search engines integrated into Safari, has, of course, been visible to anyone using the Safari web browser on an Apple device in the United States, and the fact that Google has made payments to Apple under the agreement has been widely reported.  *Id.* ¶¶ 31-39.  Unsurprisingly, Apple and Google executives have met numerous times over the years as part of the ongoing working relationship created by these agreements.  *Id.* ¶¶ 101, 103, 121, 124-25.

The Complaint alleges in conclusory fashion that Plaintiff, a crane operator certification company, purchased search advertisements on Google, *id.* ¶ 48, and the prices paid were inflated by an illegal agreement between Apple and Google.  *Id.* ¶¶ 45, 48, 139.  It alleges no facts about what

specific advertising it purchased, which keywords it bid on or how much it bid, or what other forms of digital advertising may have been available besides search advertising on Google.   In short, Plaintiff offers no factual allegations to support a claim that it was injured at all.

According to the Complaint, Apple and Google have not only entered into the known, vertical agreement—whereby Apple agreed to set Google as the default search engine for Safari—but also a separate, clandestine horizontal agreement—whereby Apple agreed with Google not to compete in providing search services.   *Id.* ¶¶ 2-4, 21, 40, 94, 98, 104, 112-13, 115, 134.   The Complaint alleges that this non-compete agreement permitted Google to monopolize search engine services (without alleging any antitrust relevant market whatsoever) and charge advertisers higher fees, which Google then shared with Apple.   *Id.* ¶¶ 6-7, 17, 43, 59, 97, 116.   The parties supposedly hatched this "conspiracy," *id.* ¶ 66, during "secret" meetings between company executives at Google's headquarters, *id.* ¶ 101, a shopping mall café, *id.* ¶ 103, Steve Jobs's living room, *id.* ¶ 103, and public restaurants over dinner, *id.* ¶¶ 121, 124-25.   The Complaint is silent as to any purported connection between these meetings and an unlawful conspiracy, or why a factfinder could infer that these meetings between executives concerned a secret non-compete agreement.

The Complaint alleges the conspiracy was engineered by former CEOs Steve Jobs and Eric Schmidt.   *Id.* ¶ 9.   When they left Apple and Google, their replacements, Tim Cook and Sundar Pichai, allegedly ratified and extended the alleged scheme, *id.* ¶ 10, and the conspiring executives allegedly also informed the "board of directors of both Google and Apple" of their *per se* illegal antitrust agreement.   *Id.* ¶ 51.

On December 27, 2021, Plaintiff sued Defendants on behalf of itself and a proposed class of "consumers and businesses who paid Google to place advertising on Google search in the United States since January 1, 2005."   Compl. ¶ 65, ECF No. 1.   After Defendants filed Motions to Compel

Arbitration, ECF No. 32, Dismiss the Complaint, ECF No. 33, Stay Litigation Pending Arbitration, ECF No. 34, and Stay Discovery, ECF No. 35, Plaintiff amended its complaint, *see* ECF No. 39.

That Complaint is substantially the same as the original and does nothing to cure the defects that Defendants identified in their motion to dismiss the original complaint.  It again contends that Defendants' alleged non-compete agreement is a *per se* violation of Section 1 of the Sherman Antitrust Act.  Am. Compl. ¶¶ 135-47.  It also brings a claim under Sherman Act Section 2 for conspiracy to monopolize "the search business."  *Id.* ¶ 151.  Plaintiff requests treble damages, declarative relief, injunctive relief voiding and prohibiting any profit-sharing and exclusivity agreements, disgorgement of profits and payments exchanged, and the dismantling of both Apple and Google into smaller companies.  *Id.* ¶ 161.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully"; it requires the facts pleaded to push the asserted claim across "the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).  To determine whether a complaint satisfies that requirement, the Court must "draw on its judicial experience and common sense." *Id.* at 679.

Rigorous enforcement of Rule 12's pleading requirements plays an especially important role in antitrust cases, such as this one.  As the Supreme Court has recognized, antitrust disputes impose considerable fact and expert discovery burdens that tax the time, energy, and resources of courts and litigants. *Twombly*, 550 U.S. at 558.  "[I]t is only by taking care to require allegations that reach the

level suggesting conspiracy that [courts] can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence." *Id.* at 559 (cleaned up).

## ARGUMENT

**I.    The Complaint Fails to State a Claim Under Sherman Act Section 1 Because It Does Not Allege Facts that Plausibly Suggest the Existence of a Per Se Horizontal Agreement Not To Compete.**

The Complaint's First Claim for Relief alleges that Apple has agreed not to compete with Google "in the search business," Am. Compl. ¶ 136, which (it claims) constitutes a *per se* violation of Section 1 of the Sherman Act, *see id.* ¶¶ 66(b), 141-43.  This claim fails at the threshold because the Complaint does not plead facts plausibly suggesting the existence of any such horizontal agreement;[2] at most the Complaint outlines a legitimate vertical business relationship between Google and Apple that cannot be *per se* unlawful.

The "crucial question" in Section 1 cases is whether the challenged conduct "stem[s] from independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 553 (alteration in original) (citation omitted); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).  To survive a motion to dismiss, the Complaint must plead facts sufficient to "answer the basic questions: who, did what, to whom (or with whom), where, and when?" of the claimed horizontal conspiracy.  *Kendall*, 518 F.3d at 1048.  And it "must plead not just ultimate facts (such as a conspiracy), but *evidentiary* facts" explaining how it will prove the alleged agreement existed.  *Id.* at 1047 (emphasis added).  Claimants can do so by alleging non-inferential, "direct" evidence of an agreement or, absent that, powerful circumstantial evidence that is inconsistent with rational and legal business conduct.  *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186,

---

[2] Horizontal restraints are typically "agreement[s] between competitors," while vertical restraints typically refer to "agreement[s] between firms at different levels of distribution."  *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988).

1193-94 (9th Cir. 2015); *In re Citric Acid Litig.*, 191 F.3d 1090, 1093-94, 1104 n.8 (9th Cir. 1999). In this case, Plaintiff has done neither.

### A.  The Complaint Fails to Plead Direct Evidence of a Horizontal Conspiracy.

The Complaint contains no factual allegations that could plausibly be viewed as direct evidence of an agreement that Apple would not compete by developing and marketing its own search engine.  Direct evidence is "tantamount to an acknowledgment of guilt," *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002), because it establishes a conspiracy "without requiring any inferences," *In re Citric Acid Litig.*, 191 F.3d at 1093.  In other words, a plaintiff must plead facts amounting to the proverbial "smoking gun" evidence.  *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013) (providing example of "direct evidence" as "a recorded phone call in which two competitors agreed to fix prices at a certain level"); *see also, e.g.*, *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1196-97 (N.D. Cal. 2009) (noting that guilty pleas by conspirators can be direct evidence).

Although Plaintiff concedes that it does not know when or how the supposed conspiracy started, Am. Compl. ¶ 12, it claims without any factual basis that the agreement was formed and negotiated in clandestine meetings between senior executives of Apple and Google, *id.* ¶ 8.  But the Complaint offers not a single fact—a supposed statement by a witness, a document that memorializes the agreement, or any other direct evidence—to support its outlandish assertions.

Instead, Plaintiff pleads that Google and Apple executives have met occasionally over the years, *id.* ¶¶ 11, 13, 99, 101, 103-04, 123-25, but with no evidentiary facts showing that a conspiracy was reached during such meetings.  In desperation to support its claims, Plaintiff alleges a series of disconnected quotes—such as Apple telling Google "Our vision is that we work as if we are one company"—that say nothing about an agreement that Apple would not develop its own search engine.  *Id.* ¶¶ 99-100.  Even if these occurrences were assumed true, they would still require a series

of *inferences* to establish an illegal agreement.  Statements by corporate executives in the context of a vertical relationship between two companies are not admissions that would by themselves prove a conspiracy.  Rather, here a more plausible inference is that the statements by Apple and Google executives advanced the companies' vertical collaboration to enhance users' internet searching on Apple devices.  And allegations—or even proof—of meetings between competitors are not direct evidence of a conspiracy.  *See In re Citric Acid Litig.*, 191 F.3d at 1103.  At bottom, the Complaint does not plead the existence of direct evidence, and it certainly does not "plead 'enough fact[s] to raise a reasonable expectation that discovery will reveal' [any] direct evidence."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 324 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

**B.  The Complaint Fails To Plead Circumstantial Evidence of a Horizontal Conspiracy.**

The Complaint similarly lacks allegations necessary to establish circumstantial evidence of a horizontal agreement by Apple to not compete with Google in the "search business."  To support a claim based on circumstantial evidence, a plaintiff must plead facts demonstrating "parallel conduct" combined with "plus factors" that are "inconsistent with unilateral conduct."  *See In re Musical Instruments*, 798 F.3d at 1193-94 (discussing plus factors); *Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017) (explaining that, for a case to proceed to discovery, the combined circumstantial evidence must tend "to exclude the possibility that defendants acted independently"), *aff'd*, 757 F. App'x 524 (9th Cir. 2008).  Plaintiff pleads neither.

*First*, Plaintiff pleads no "parallel conduct"—for example, "competitors adopting similar policies around the same time."  *In re Musical Instruments*, 798 F.3d at 1193.  That absence alone is enough to reject reliance on circumstantial evidence.  *See id.* at 1193-94; *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018) (affirming dismissal of conspiracy claim because plaintiff failed to "plausibly plead parallel conduct," so "no discussion of any 'plus factors' [was] necessary").  At most, the Complaint alleges the existence of, and facts consistent

with, a lawful *vertical* agreement between Apple and Google under which Apple agreed to set Google as the default search engine on its Safari web browser.  Am. Compl. ¶ 89.  There is nothing suspicious or unusual about such an agreement, which other browser developers have entered into with search providers for many years.[3]  The Complaint then couples those innocuous facts with entirely conclusory assertions of conspiracy.  *See, e.g.*, *id.* ¶¶ 2, 8-10, 40, 94, 112.  Such tactics have routinely been held insufficient to state a Section 1 claim.  *See, e.g.*, *Twombly*, 550 U.S. at 564-69; *In re Musical Instruments*, 798 F.3d at 1193-97.

   *Second*, even if the Complaint adequately pled parallel conduct, it does not plead "plus factors" necessary to make the conspiracy's existence plausible.  Plus factors are "economic actions and outcomes that are largely *inconsistent* with unilateral conduct but largely *consistent* with explicitly coordinated action."  *In re Musical Instruments*, 798 F.3d at 1194 (emphases added).  To successfully plead such "plus factors," the Ninth Circuit requires nonconclusory allegations of fact that plausibly exclude the possibility that defendants acted independently, and therefore allow a court to infer a conspiracy.  *Id.* at 1198.  Plus factors include conduct against an entity's apparent economic self-interest, unusual interfirm communications, or an abrupt change in a long-standing business practice or price structure.  *See id.* at 1195; *Stanislaus Food Prod. Co. v. USS-POSCO*

---

[3] Vertical agreements such as these—agreements that improve the user experience by reducing friction for users (*i.e.*, by giving users a device that works "out-of-the-box," *see* Am. Compl. ¶ 89) and by providing them with high-quality search results—are not *per se* unlawful.  *See, e.g.*, *Pac. Steel Grp. v. Com. Metals Co.*, 2021 WL 2037961, at *7 (N.D. Cal. May 21, 2021) ("[V]ertical restraints should nearly always be analyzed under the rule of reason."); *DOJ-FTC Antitrust Guidelines for the Licensing of Intellectual Property*, 2017 WL 282889, at *3, *10 (2017) (recognizing procompetitive benefits of vertical integration and explaining that vertical licensing arrangements that produce efficiencies are evaluated under the rule of reason).  Plaintiff does not bring any Section 1 claim premised upon the rule of reason.  Even if it had, Plaintiff fails to allege both a relevant market, *see infra* pp.14-15, and that the alleged vertical agreement had adverse competitive effects on that market under specifically a rule of reason analysis, *see Pac. Steel Grp.*, 2021 WL 2037961, at *7-9; *see also Auto Sound Inc. v. Audiovox Elecs. Corp.*, 2012 WL 12892938, at *4-6 (C.D. Cal. Dec. 3, 2012) (dismissing Section 1 claim challenging vertical distribution agreement and recognizing that to "succeed on a rule of reason claim, an antitrust plaintiff must prove that the restraint in question injures competition in the relevant market" (citation omitted)).

*Indus.*, 803 F.3d 1084, 1093 (9th Cir. 2015); *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 196 (3d Cir. 2017); *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004).

The Complaint here contains no such facts. The Complaint contains no allegation at all that any action Google or Apple took was against either company's self-interest in the absence of the alleged horizontal agreement not to compete. Indeed, there are no factual allegations in the Complaint that support the inference that Apple *should have* undertaken developing a commercial internet search engine to compete with Google and launching such a competing search engine from its devices, such that its decision not to do so is evidence of a conspiracy. *Cf. In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d at 658-59.[4] Nor can Plaintiff rely on interfirm communications as a plus factor. Though the Complaint pleads that Google and Apple executives occasionally met and communicated, courts have long held that mere *opportunity* to conspire is insufficient to establish participation in a conspiracy, *see In re Cal. Title Ins. Antitrust Litig.*, 2009 WL 1458025, at *5 (N.D. Cal. May 21, 2009), and the existence of the lawful, vertical agreement undermines any negative inferences, as courts are rightfully suspicious of alleged conspiracies that operate in plain view because of their inherent implausibility, *see In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, 2012 WL 3637291, at *2 (S.D. Cal. Aug. 20, 2012), *aff'd sub nom. In re Musical Instruments*, 798 F.3d 1186 (9th Cir. 2015). And the Complaint pleads the exact opposite of an abrupt change in business practice; it pleads a decades-long, commercial relationship. Am. Compl. ¶¶ 99-104, 123-25. Because the only factual allegations in the Complaint are entirely

---

[4] While the Complaint makes the bald assertions that "[i]n the past, Apple had actively worked on developing its own general search engine as a potential competitor to Google," and that "[i]t was reported that as late as 2014 Apple had been working on its own search engine," Am. Compl. ¶¶ 108, 127, these allegations are not only wholly conclusory, but are in direct conflict with Plaintiff's core assertion that Apple had since 2005 agreed not to undertake such efforts. *See Maguca v. Aurora Loan Servs.*, 2009 WL 3467750, at *2 (C.D. Cal. Oct. 28, 2009) (noting that "self-contradictory" allegations are an "admission sufficient to dismiss this cause of action"). Plaintiff's addition of a conclusory assertion that Apple is a "potential direct competitor" to Google (Am. Compl. ¶ 108) adds no factual content that would render the allegation even remotely plausible.

consistent with "rational, legal business behavior," they cannot be the basis of an illegal conspiracy. *Kendall*, 518 F.3d at 1049 (citing *Twombly*, 550 U.S. at 554-58 & n.5); *accord Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (explaining that courts must consider "obvious alternative explanations" for defendants' behavior when weighing plausibility).

The lack of plausible allegations supporting Plaintiff's fanciful horizontal conspiracy theory mandates dismissal of Messrs. Cook, Pichai, and Schmidt (hereinafter, the "Individual Defendants") for the additional reason that Sherman Act claims against individuals must be dismissed where a complaint fails plausibly to allege their direct participation in, knowing approval of, or ratification of inherently wrongful conduct. *See In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1050-51 (N.D. Cal. 2021). Here, the Complaint contains no plausible, non-conclusory allegations that would connect the Individual Defendants to the alleged horizontal conspiracy between Apple and Google, as the vast majority of allegations directed toward the Individual Defendants are nothing more than bare assertions that they conspired with one another. Am. Compl. ¶¶ 9-18, 51-53, 121, 122, 137, 153. Nor does the Complaint plausibly allege that the Individual Defendants knowingly approved of or ratified inherently unlawful acts, as the only agreement discernible from the Complaint is a non-exclusive vertical agreement that is not *per se* unlawful under Ninth Circuit precedent. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987).[5]

---

[5] Indeed, the Complaint still includes no more than conclusory allegations about the Individual Defendants' supposed knowledge of inherently wrongful acts. For example, it now alleges that Mr. "Cook knew, as Google observed in a 2018 strategy document, that 'People are much less likely to change [the] default search engine on mobile.'" But the Complaint provides no indication as to how Mr. Cook would have knowledge about *Google's* observations. And even still, the Complaint fails to identify how that purported knowledge amounts to knowledge of conduct that is *inherently wrongful*.

1

\*     \*     \*

2

   In sum, Plaintiff cannot just assume the existence of an illegal agreement, cherry-pick a

3

scattershot of neutral events while ignoring their innocent explanation, and then ask the Court to

4

allow "discovery [that] would be a mere fishing expedition." *In re Graphics Processing Units*

5

*Antitrust Litig.*, 2007 WL 2127577, at \*5 (N.D. Cal. July 24, 2007). *Twombly* requires more from

6

7

antitrust plaintiffs, and it tasks district courts with ensuring compliance.

8

9

**II.   The Complaint Fails To State a Claim Under Sherman Act Section 2 Because It Does Not Allege Facts that Plausibly Suggest the Existence of a Conspiracy To Monopolize, a Relevant Market that was Monopolized, or a Specific Intent To Monopolize.**

10

   The Second Claim for Relief relies on the same (inadequate) allegations to allege a

11

conspiracy to monopolize "the search business" in violation of Sherman Act Section 2. Am. Compl.

12

13

¶¶ 148-57. Plaintiffs bringing such a claim must plead facts sufficient to show, *inter alia*, "the

14

existence of a combination or conspiracy to monopolize," *Paladin Assocs. v. Montana Power Co.*,

15

328 F.3d 1145, 1158 (9th Cir. 2003), and a defined relevant antitrust market within which the alleged

16

monopolist would have monopoly power, *see Rutman Wine*, 829 F.2d at 736; *accord Jacobs v.*

17

*Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336-39 (11th Cir. 2010) ("[A]ntitrust plaintiffs . . . must

18

present enough information in their complaint to plausibly suggest the contours of the relevant

19

geographic and product markets."). Plaintiffs also must plead facts establishing that the defendants

20

specifically intended "to empower one of them with monopoly power." *Standfacts Credit Servs.,*

21

*Inc. v. Experian Info. Sols., Inc.*, 405 F. Supp. 2d 1141, 1152 (C.D. Cal. 2005); *see also Stanislaus*

22

23

*Food Prod. Co. v. USS-POSCO Indus.*, 2011 WL 2678879, at \*12 (E.D. Cal. July 7, 2011) (requiring

24

plausible allegations that defendants specifically intended "to seize monopoly power by destroying

25

or excluding competition within the relevant market"). Here, the Complaint fails on all three fronts.

26

27

28

### A.  The Complaint Does Not Allege Facts Plausibly Suggesting the Existence of a Conspiracy.

As with the Section 1 claim, the Court need not look further than the first element.  "The standard for pleading a conspiracy for the purposes of a claim under Section 2 of the Sherman Antitrust Act is the same as the standard for pleading a conspiracy under Section 1."  *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 2017 WL 6059299, at *4 n.43 (N.D. Cal. Dec. 7, 2017); *cf. Granddad Bread, Inc. v. Continental Baking Co.*, 612 F.2d 1105, 1111-12 (9th Cir. 1979).  Because Plaintiff "has failed to plead the existence of a conspiracy for Section 1 violation, [it] has also failed to satisfy the first element for conspiracy to monopolize under Section 2."  *Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, 2013 WL 3873074, at *16 (S.D. Cal. July 25, 2013), *aff'd* 642 Fed. Appx. 665 (9th Cir. 2016).[6]

### B.  The Complaint Does Not Adequately Allege a Relevant Market.

The Section 2 claim also fails for the independent reason that the Complaint neglects to adequately allege a relevant antitrust market that has been monopolized.  The Second Claim for Relief refers to "the search business," Am. Compl. ¶¶ 149, 151, but elsewhere the Complaint cites Google's share of the "computer search engine U.S. market," *id.* ¶ 25; "the search engine U.S. market," *id.* ¶ 26; and "the mobile search engine U.S. market," *id.* ¶¶ 24, 84.  Those blurred markets are distinct from the "search *advertising* market," *id.* ¶ 134 (emphasis added),[7] the undefined "market" where the injury allegedly occurred and one not subject to any alleged conspiracy to

---

[6] Similarly, Plaintiff's failure to plausibly allege that the Individual Defendants directly participated in, knowingly approved of, or ratified the alleged horizontal conspiracy for purposes of its Section 1 claim, *see supra*, also precludes its Section 2 claim against the Individual Defendants. *See Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co., Ltd.*, 467 F. Supp. 841, 851-54 (N.D. Cal. 1979) (granting judgment as a matter of law to individual defendant with respect to Section 2 claim where no reasonable jury could conclude that individual defendant participated in "inherently wrongful conduct"), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981).

[7] Plaintiff's Complaint now further blurs the relevant market by referencing the "general search text advertising markets." Am. Compl. ¶¶ 145, 147.

monopolize.  *See Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *7-8 (N.D. Cal. Nov. 30, 2021) (dismissing Sherman Act claims that "lack[ed] clarity as to the relevant product markets" and referenced "fifteen different markets").

More importantly, none of these labels are accompanied by allegations, or any information at all, about the contours of the market.  A relevant market "must encompass the product at issue as well as all economic substitutes for [that] product."  *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018).  Plaintiff's Complaint fails even to describe the products at issue, let alone product *markets* with reference to these fundamental economic principles—all despite the fact that Defendants alerted Plaintiff to the insufficiencies of its market definition in their original motion to dismiss.  Plaintiff's failure to provide any supporting allegations to define the markets it references renders these markets patently insufficient to state a Section 2 claim.  *See Hicks*, 897 F.3d at 1120 (affirming dismissal of Section 1 and Section 2 claims because "a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable"); *Jacobs*, 626 F.3d at 1336-39 (affirming dismissal of complaint for failing to plead relevant market).

### C.  Plaintiff Fails To Allege that Apple Possessed the Requisite Specific Intent.

Yet another independent basis for dismissal of the Section 2 claim is that the Complaint fails to allege that Apple specifically intended to monopolize, or for Google to monopolize, any relevant market.  As an initial matter, the Complaint contains no direct allegation (*i.e.*, requiring no inferences) that Apple specifically intended for either itself or for Google to monopolize any relevant market.[8]  The Complaint is equally devoid of conduct from which the requisite specific intent to monopolize could be inferred.  The alleged horizontal agreement—*i.e.*, Plaintiff's allegations that

---

[8] Indeed, Plaintiff entirely "fails to allege a specific intent by [Apple] to empower one of [Apple or Google] with monopoly power," *Standfacts*, 405 F. Supp. 2d at 1152, and the words "specific intent," do not appear anywhere in the Complaint.  More, Plaintiff's suggestion that "Google and Apple have *shared* monopoly control," Am. Compl. ¶¶ 116, 151, 154 (emphasis added), is generally not a cognizable theory under Section 2, *see Standfacts*, 405 F. Supp. 2d at 1152.

Apple agreed not to compete with Google, *see e.g.*, Am. Compl. ¶¶ 2, 136—cannot serve as a basis from which to infer specific intent, because even if Plaintiff had adequately alleged such an agreement (which it has not, as explained *supra*), a purportedly voluntary agreement not to compete is not "clearly exclusionary" under Section 2 of the Sherman Act.  *See Stanislaus*, 2011 WL 2678879, at *13 (holding that specific intent to monopolize could not be inferred from an "agreement to exit the market").  To the contrary, a supposed agreement to have one fewer competitor could hardly have an exclusionary impact on *other* actual or potential competitors in that market.  *See id.*

Nor can the requisite specific intent be inferred from Plaintiff's allegations of a vertical agreement.  That Apple entered into a non-exclusive vertical distribution agreement under which it agreed to make Google the default search engine for its products, Am. Compl. ¶¶ 89-95, does not permit the inference that Apple specifically intended to exclude Google's competitors from any relevant market.  For one thing, even *exclusive* distributorships are "not, standing alone, a violation of antitrust laws."  *Rutman*, 829 F.2d at 735-36 (holding that allegation of specific intent involving exclusive distributorship was "conclusory in the absence of anticompetitive conduct from which [] specific intent may be inferred").  For another, Apple's decision to set Google as the default search engine promotes competition in the markets in which Apple does participate (*i.e.*, for certain devices and web browsers) by reducing friction for users and providing them with high-quality search results.  And while the Complaint makes much of Apple's alleged "motive . . . to share in [Google's] profits," Am. Compl. ¶¶ 43, 97, 145, a "common motive to increase profits" is "not enough" to support an inference of specific intent to monopolize.  *Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*, 2018 WL 5891743, at *4 (D. Haw. Nov. 9, 2018) (citation omitted).

## III.   The Complaint Fails To Allege Facts Sufficient To Establish Antitrust Standing.

Private plaintiffs bringing antitrust suits must establish "antitrust standing."  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999).  To determine whether a plaintiff

has antitrust standing, courts consider several factors:  "(1) the nature of the plaintiff's alleged injury . . .; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages."  *Id.*  The Complaint here fails under all these factors.

1.  *Antitrust Injury*:  To establish an antitrust injury, a plaintiff must "allege [a] credible injury caused by the [allegedly] unlawful conduct."  *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013).  The injury must "flow[] from that which makes the conduct unlawful," and "the injured party [must] be a participant in the same market as the alleged malefactors, meaning the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market."  *Id.* (internal quotation marks omitted).  "Because antitrust injury depends less on the plaintiff's proof than on the logic of its complaint and its theory of injury[,] this inquiry is well-suited to prediscovery disposition."  *McCabe Hamilton & Renny Co. v. Matson Navigation Co.*, 2008 WL 2233740, at *4 (D. Haw. Apr. 9, 2008) (internal quotation marks omitted).

Here, Plaintiff failed to allege any injury that "flows from that which makes defendants' acts unlawful"—as opposed to legitimate agreements and business realities.  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  The Complaint premises its injury on Apple competing in the search engine and search advertising market.  But the Complaint has not—and cannot—allege that Apple is "ready to compete" (with the necessary technology) in those markets.  *See Space Expl. Technologies Corp. v. Boeing Co.*, 2006 WL 7136649, at *4 (C.D. Cal. May 12, 2006), *aff'd*, 281 F. App'x 769 (9th Cir. 2008).  Nor does it allege any facts plausibly suggesting that Apple *wants* to compete in those markets.  The Complaint cannot establish an antitrust injury by simply wishing that an innovative company like Apple would launch products that it never has launched before.

What is more, as the Ninth Circuit has recognized, "[p]arties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced *in another market* do not

suffer antitrust injury.'" *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (emphasis added) (citation omitted).  Here, we have a mismatch between the purported market allegedly restrained and the purported market in which the alleged injury occurred.  The Complaint alleges an unlawful restraint in an inadequately defined "search market" and monopolization of the "search business," *see* Am. Compl. ¶¶ 94, 136, but then it claims that Plaintiff suffered an injury in a different (again, undefined) market altogether, the "search advertising market." *Id.* ¶ 134; *see also id.* ¶ 147.  Nothing in the Complaint explains why these markets should be assessed as a single market for the purposes of antitrust law.  *See G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, 2015 WL 12696203, at *3 (C.D. Cal. Sept. 15, 2015); *see also Ticketmaster LLC v. Designer Tickets & Tours, Inc.*, 2008 WL 649804, at *3-4 (C.D. Cal. Mar. 10, 2008) (dismissing antitrust claim where claimant participated in downstream ticket sales market and not in allegedly monopolized primary ticket distribution market).

Because antitrust injury is a threshold requirement to the antitrust standing analysis—and because the Complaint fails to state a cognizable injury flowing from allegedly unlawful conduct in the pertinent market—the Court can grant Defendants' motion to dismiss on those grounds alone. *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986) (stating that antitrust injury is "necessary" to establish antitrust standing); *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021) ("[T]he first factor—antitrust injury—is mandatory.").

2.  *Directness of the Injury*:  Even if the Court finds that the Complaint plausibly alleges antitrust injury, that injury certainly is not direct.  "To assess the directness of this injury, we look to the chain of causation between [Plaintiff's] injury and the alleged restraint in the market." *Am. Ad Mgmt.*, 190 F.3d at 1058.  "There must be not a mere causal link, but a direct effect." *Jacobsen v. Katzer*, 2006 WL 3000473, at *3 (N.D. Cal. Oct. 20, 2006) (quoting *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989 (9th Cir. 2000)).  Here, Plaintiff fails to allege that any direct effect

exists.  Based on the allegations, Plaintiff's injury occurred only if, but-for the alleged agreement not to compete, (1) Apple would have developed its own comparable search technology to replace Google Search; (2) Apple would have launched a search engine product (which it has never done); (3) Apple would have used its yet-to-be-developed search product as the default search provider on Apple devices; (4) Apple would have provided search advertisements (a different technology and another business Apple has never launched); and (5) Apple's new search advertising business would have increased competition and driven down the prices bid at search advertisement auctions.  Courts routinely dismiss claims on antitrust standing grounds where, as here, "the chain of causation between [its] injury and the alleged restraint . . . contains several somewhat vaguely defined links." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540 (1983); *see also, e.g.*, *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1117 (E.D. Cal. 2002) (rejecting claims that "depend[ed] on a multitude of speculative intervening events"); *cf. In re Online DVD Rental Antitrust Litig.*, 2011 WL 1629663, at *7 (N.D. Cal. Apr. 29, 2011) (rejecting plaintiffs' theory of a pricing injury as "simply too attenuated").

3.  *Speculative Measure of the Harm*:  The speculative nature of Plaintiff's injury further weighs heavily against finding antitrust standing.  "[I]t is appropriate for § 4 purposes to consider whether a claim rests at bottom on some abstract conception or speculative measure of harm." *Associated Gen. Contractors*, 459 U.S. at 543 (internal quotation marks omitted).  Here, Plaintiff's claim is premised upon layers of speculation unsupported by any factual allegations.  Plaintiff's theory assumes that Apple would have been "ready to compete" (with the necessary technology) in an undefined search market, *Space Expl. Technologies Corp.*, 2006 WL 7136649 at *4, that Apple would have actually launched a commercial internet search engine product, that Apple would have monetized any search product through search advertising, that Apple would have obtained a significant portion of the search and search advertising markets, and that these speculative actions

would have affected Google's search advertising quality and auction prices.  And even if Plaintiff could prove causation, it would require judicially unmanageable speculation to calculate any differences between the prices paid by Plaintiff (and every other putative class member) and the auction bids submitted in a hypothetical world in which Apple competed with its own search engine and search advertising business.  *See City of Oakland*, 20 F.4th at 459  ("The [Plaintiff] has not alleged—and there is no way of knowing—what would have occurred in a more competitive marketplace.").  "[T]his case is far afield from the conventional horizontal price-fixing case in which an actual purchaser seeks to recover collusive overcharges."  *Id.* at 461.  Thus, this factor weighs heavily against finding antitrust standing here.  *Associated Gen. Contractors*, 459 U.S. at 542-43.

4.  *Risk of Duplicative Recovery*:  The relief sought in the Complaint also creates the potential for duplicative recovery.  "The risk to be avoided under [the duplicative recovery] factor is that potential plaintiffs may be in a position to assert conflicting claims to a common fund . . . thereby creating the danger of multiple liability."  *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 542 (9th Cir. 1987) (citation omitted).  Here, the Complaint does just that by asking the Court to "[r]equire Google and Apple to disgorge the payments . . . made by Google to Apple" under the alleged agreements, in addition to requiring the payment of overcharges.  Am. Compl. ¶¶ 156(l)-(n).  For the reasons explained below, disgorgement is not available in private actions raised under the Sherman Act.  *See infra* p.25.  But, assuming such damages are recoverable, it creates the risk of multiple liability.

5.  *Complexity in Apportioning Damages*:  Finally, even if no risk of duplicative recovery exists, "the fact that [Plaintiff's] alleged injuries are both indirect and derivative would require a complex trial to apportion damages."  *Toscano*, 201 F. Supp. 2d at 1118-19; *see also Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 111 (S.D.N.Y. 2015) (noting "it would be virtually impossible to apportion damages between . . . competitors, which allegedly suffered direct injuries, and Plaintiffs, who might have been indirectly harmed" (cleaned up)).  Search advertisers can participate

in search advertising auctions that are run every time a user enters a search query on Google Search. Proving how search advertising auctions on Google Search would have come out—who would have won and at what bid price—had Apple launched a competing search engine and search advertising business many years ago—and whether Plaintiff or any putative class member who could have participated in the same auctions was damaged poses innumerable complex proof issues. Plaintiff has pled no facts whatsoever to establish that it could apportion damages among putative class members or even assess on a class-wide basis whether any individual advertisers were harmed at all.

*     *     *

In sum, the Complaint fails to allege facts sufficient to establish an antitrust injury under the dispositive first factor of the antitrust standing inquiry, and the remaining antitrust standing factors independently show that Plaintiff lacks antitrust standing in this case.

### IV.     The Statute of Limitations Bars Damages Predating December 27, 2017.

Even assuming the Complaint states a viable claim and that Plaintiff has antitrust standing, the statute of limitations bars the claims that seek damages incurred before December 27, 2017.

Private antitrust actions brought under Section 4 of the Clayton Act—like the one here, *see* Am. Compl. ¶ 1—are subject to a four-year limitations period. 15 U.S.C. § 15b. "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971). A plaintiff need not "actually discover its antitrust claims before the statute of limitations begins to run." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012); *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1208-10 (N.D. Cal. 2015).

Antitrust plaintiffs sometimes invoke the "continuing violations" doctrine to avoid this four-year limitations period. "A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured." *Pace Indus., Inc.*

*v. Three Phx. Co.*, 813 F.2d 234, 237 (9th Cir. 1987).  To state such a violation, a complaint must allege that the defendant completed "a new and independent act" that constitutes more than a mere "reaffirmation of a previous act" and that "inflict[s] new and accumulating injury on the plaintiff." *Id.* at 238.  Importantly, though, "the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by *old overt acts outside the limitations period*." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (emphasis added).  That is, "the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period."  *Id.* at 190.

Under a straightforward application of these principles, the Clayton Act's four-year limitations period bars claims for damages that accrued before December 27, 2017.  The Complaint, however, does not limit its allegations to claims with injuries arising after that date.  Instead, it alleges the Defendants have been violating the Sherman Act since the mid-2000s and seeks recovery for injuries dating all the way back to 2005—nearly 17 years before Plaintiff filed the Complaint. *See* Am. Compl. ¶ 65.  Working from that premise, the Complaint asserts class-based claims on behalf of "[a]ll consumers and businesses who paid Google to place advertising on Google search in the United States *since January 1, 2005*."  *Id.*  But, even assuming that each time an advertiser paid for Google's allegedly "price-fixed" products, "the sale constitute[d] a new overt act causing injury to the purchaser," Plaintiff still has a problem:  "the statute of limitations runs from the date of [that sale]."  *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086-87 (9th Cir. 2014).  "[L]ongstanding U.S. Supreme Court and Ninth Circuit authority specifically hold[] that antitrust claims accrue at the time of injury," *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d at 1210, and the alleged injury occurred when advertisers paid allegedly inflated prices for the product.  Therefore, Section 4 bars any class claims arising from Google's sale of advertisements before December 27, 2017. *See, e.g.*, *Spindler v. Johnson & Johnson Corp.*, 2011 WL 13278876, at *8 (N.D. Cal. Jan. 21, 2011).

In an apparent attempt to dodge this limitations-period bar, the Complaint includes conclusory allegations of fraudulent concealment.  "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence"—the idea being that a defendant should not benefit from affirmative actions that prevented a plaintiff from learning of a cause of action. *Hexcel Corp.*, 681 F.3d at 1060.  To plead fraudulent concealment, a complaint must allege that: "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to his claim as a result of the defendant's affirmative acts; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to his claim." *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1073 (N.D. Cal. 2016) (cleaned up). Plaintiffs bear the burden of pleading these elements and, in doing so, must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Id.*  In this case, the four sentences in the Complaint addressing fraudulent concealment do not come close to satisfying that standard.  *See* Am. Compl. ¶¶ 158-60.

For one, California Crane fails to allege with particularity that Defendants engaged in "affirmative conduct to conceal the underlying claims." *Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1092 (9th Cir. 2005).  The Complaint includes a single conclusory assertion:  "[T]he Defendants took affirmative steps to conceal their conspiracy in private and clandestine meetings between their CEOs."  Am. Compl. ¶ 158.  But, obviously, unnamed "affirmative steps" cannot satisfy Rule 9(b)'s particularity requirement.  The Complaint must allege "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity.").  And it flat out fails to do so.  It does not include any "allegation regarding

- 23 -

what was said at [the alleged] meetings, let alone that what was said was in any way misleading to Plaintiff, as is required to plead fraudulent concealment." *Garrison v. Oracle Corp.*, 2015 WL 1849517, at *9 (N.D. Cal. Apr. 22, 2015).

In addition, the Complaint does not "plead with particularity . . . the facts supporting its due diligence." *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir. 1988). It merely says that "Plaintiff and the members of the class could not have discovered Defendants' violations at any time prior to this date by the exercise of due diligence because of the fraudulent and active concealment of the conspiracy by Defendants through various means and methods designed to avoid detection." Am. Compl. ¶ 159. But that contention does not even address the right question. Claiming that violations *could not have been discovered* with due diligence is not the same as claiming that Plaintiff, in fact, *acted with due diligence*. More importantly, the Complaint's assertion is the exact type of "formulaic recitation of the elements of a cause of action" that the Supreme Court has rejected—a pure "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Put simply, "plaintiff must plead facts supporting its showing of diligence," *Peterson v. Sutter Med. Found.*, 2022 WL 316677, at *10 (N.D. Cal. Feb. 2, 2022), and the Complaint does not even attempt to do so.

*     *     *

In sum, under a straightforward application of settled precedent, Section 4's four-year limitations period bars many of the class-claims asserted in the Complaint. And Plaintiff cannot salvage those claims under the fraudulent-concealment tolling doctrine because it failed to carry its burden of pleading each element of fraudulent concealment with particularity. The Court should dismiss all claims arising from purchases of Google advertisements before December 27, 2017.

**V.     The Court Should Dismiss the Complaint's Requests for Disgorgement and Public Injunctive Relief.**

Claims for recovery that are "precluded as a matter of law may be dismissed under Federal Rule of Civil Procedure 12(b)(6)." *TSI USA LLC v. Uber Technologies, Inc.*, 2018 WL 4638726, at *7 (N.D. Cal. Sept. 25, 2018); *accord Lee v. Kitchables Prods.*, 2021 WL 3173253, at *4 (N.D. Cal. July 27, 2021).  The Complaint includes a claim for disgorgement, asking this Court to "disgorge all payments . . . made by Google to Apple" under the alleged agreements.  Am. Compl. ¶¶ 162(c)-(e). But the Clayton Act authorizes no such relief.  Section 4 provides for treble "damages," 15 U.S.C. § 15(a), and Section 16 permits prospective "injunctive relief . . . against threatened loss or damage," *id.* § 26.  Disgorgement qualifies as neither.  *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *13 (N.D. Cal. July 7, 2016) ("[T]he Ninth Circuit disallows private use of Section 16 to pursue disgorgement."); *Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) (same).

The Complaint also includes claims for "[p]ublic [i]njunctive [r]elief."  Am. Compl. ¶¶ 162(a)-(i).  But as set forth in the Google Defendants' Reply in Support of their Motion to Compel Arbitration, Plaintiff cannot seek public injunctive relief.  *See* ECF No. 48 at 2-4, 7.  The Court should therefore dismiss Plaintiff's prayers for disgorgement and public injunctive relief here.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss with prejudice Plaintiff's Amended Complaint for failure to state a claim.

DATED:  April 12, 2022                      **WILLIAMS & CONNOLLY LLP**

By: /s/ John E. Schmidtlein

John E. Schmidtlein (CA State Bar No. 163520)
Carol J. Pruski (CA State Bar No. 275953)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:     (202) 434-5000

| | |
|---|---|
| Facsimile: | (202) 434-5029 |
| Email: | jschmidtlein@wc.com |
| Email: | cpruski@wc.com |

*Attorneys for Defendants Google LLC, Alphabet Inc.,
XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

By: /s/ Jack P. DiCanio

Steven C. Sunshine (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111

| | |
|---|---|
| Telephone: | (202) 371-7000 |
| Facsimile: | (202 393-5760 |
| Email: | Steven.Sunshine@skadden.com |
| Email: | Julia.York@skadden.com |

Jack P. DiCanio (SBN 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301

| | |
|---|---|
| Telephone: | (650) 470-4660 |
| Facsimile: | (213) 621-5430 |
| Email: | jack.dicanio@skadden.com |

Karen Hoffman Lent (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001

| | |
|---|---|
| Telephone: | (212) 735-3000 |
| Facsimile: | (212) 735-2000 |
| Email: | karen.lent@skadden.com |

*Attorneys for Defendants Apple Inc. and Tim Cook*

## **ATTESTATION**

I, John E. Schmidtlein, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1, I hereby attest that all counsel whose e-signatures (/s/) appear on this document concurred in this filing.

DATED: April 12, 2022                    By: */s/ John E. Schmidtlein*