1   Joseph M. Alioto, Esq. (SBN 42680)        John E. Schmidtlein (SBN 163520)
2   Tatiana V. Wallace, Esq. (SBN 233939)     Carol J. Pruski (SBN 275953)
    ALIOTO LAW FIRM                           WILLIAMS & CONNOLLY LLP
3   One Sansome Street, Suite 3500            680 Maine Ave., S.W.
    San Francisco, CA 94104                   Washington, D.C. 20024
4   Telephone: (415) 434-8900                 Telephone: (202) 434-5000
    Email: jmalioto@aliotolaw.com             Facsimile: (202) 434-5029
5                                             Email: jschmidtlein@wc.com
                                              Email: cpruski@wc.com
6   *Attorneys for Plaintiff*

7   (Additional counsel listed on signature   *Attorneys for Defendants Google LLC, Alphabet Inc.,*
    page)                                      *XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*
8
                                              Steven C. Sunshine (*pro hac vice*)
9                                             Jack P. DiCanio (CA State Bar No. 138752)
                                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
10                                            525 University Avenue
                                              Palo Alto, CA 94301
11                                            Telephone: (650) 470-4660
                                              Facsimile: (213) 621-5430
12                                            Email: jack.dicanio@skadden.com

13                                            *Attorneys for Defendants Apple Inc. and Tim Cook*

14

15                    **UNITED STATES DISTRICT COURT**

16                   **NORTHERN DISTRICT OF CALIFORNIA**

17                          **OAKLAND DIVISION**

18

19   CALIFORNIA CRANE SCHOOL, INC.,          Case No. 4:21-cv-10001-HSG
     on behalf of itself and all others similarly
20   situated,                               **JOINT CASE MANAGEMENT
                                             STATEMENT**
21              Plaintiff,
                                             Hearing Date: August 11, 2022
22        v.                                 Time:         2:00 p.m.
                                             Place:        Courtroom 2
23   GOOGLE LLC, ALPHABET INC., XXVI         Judge:        Hon. Haywood S. Gilliam, Jr.
     HOLDINGS INC., APPLE INC., TIM
24   COOK, SUNDAR PICHAI, and ERIC           Complaint Filed: December 27, 2021
     SCHMIDT,
25
                Defendants.
26

27

28

## JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

Pursuant to Civil Local Rule 16-9 and the Court's November 1, 2018 Standing Order on Contents of Joint Case Management Statement, Plaintiff California Crane School, Inc., ("California Crane" or "Plaintiff") and Defendants Google LLC, Alphabet Inc., XXVI Holdings, Inc., Sundar Pichai, and Eric Schmidt ("Google Defendants"), Apple Inc. and Tim Cook ("Apple Defendants"), hereby submit the following joint statement and Rule 26(f) report.

**1. Jurisdiction and Service**

**a.     Plaintiff's Statement**

This Court has subject matter jurisdiction over the federal antitrust law claims alleged in Counts One and Two under 28 U.S.C. § 1331 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.  No issues exist regarding personal jurisdiction or venue, and no Defendants remain unserved.

**b.     Defendants' Statement**

The Google Defendants filed a motion to compel arbitration on March 18, 2022, explaining why the claims against them cannot proceed in this Court.  As to the Apple Defendants, this Court has subject matter jurisdiction over the federal antitrust law claims alleged in Counts One and Two under 28 U.S.C. § 1331 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.  No issues exist regarding personal jurisdiction or venue, and no Defendants remain to be served.

**2. Facts**

**a.  Plaintiff's Statement**

This is a private antitrust action, brought under Sections 4 and 16 of the Clayton Antitrust Act and filed on behalf of advertisers.  Plaintiff seeks damages and injunctive relief, including divestiture and disgorgement.

1

2

3

4

5

6

7

Defendant Google has ninety-four percent (94%) of the search market by devices and eighty-nine percent (89%) of the search market by computers.  In short, Defendant Google is in a monopoly position in the search market.  Fifty percent (50%) of searches is done on Apple devices.  Defendant Google paid Defendant Apple billions of dollars.  The consideration for the payments was that Defendant Apple would not go into the search business, and that it would give Google the discriminatory treatment for all the Apple devices.

8

9

10

11

Defendants Google and Apple share revenue and profits.  The Defendants' division of the market is a violation of the antitrust laws of the United States. *See Palmer v. BRG of Georgia, Inc*., 498 U.S. 46 (1990).  Profit sharing is *per se* illegal under the antitrust laws of the United States. *See Citizen Publishing Company v. United States*, 394 U.S. 131 (1969).

12

13

14

15

16

17

The top executives of the Defendants, including Defendants Tim Cook, Sundar Pichai and Eric Schmidt, all had private meetings in which these agreements were formed and carried out.  A top Apple executive stated to his counterpart at Google that the reason for their companies' agreements was because they envision them to be "one company."  In addition, the CEO of Google said, we are "merging without having to merge."

18

19

20

21

22

23

Since Google has ninety percent (90%) of the market and has taken steps to maintain its dominant position in the market, in many cases together with Apple, Google has the power to exclude competition and fix prices in violation of the U.S. antitrust laws. *See United States v. Aluminum Co. of America (Alcoa)*, 377 U.S. 271 (1964); *United States v. American Tobacco Co*., 221 U.S. 106 (1911); *Continental Ore Co. v. Union Carbide Corp*., 370 U.S. 690 (1962).

24

25

26

27

Many of the allegations in Plaintiff's Complaint have already been admitted by Defendant Google in Google's Answer to the Government's Complaint in the proceedings filed in *United States v. Google*, Case No. 1:20-cv-03010-APM (DC 2020).

28

### b.  Defendants' Statement

Plaintiff sues Defendants for alleged violations of the Sherman Antitrust Act.  Since 2005, Apple and Google have entered into a series of publicly reported agreements under which Apple integrated Google's general internet search engine into Apple's Safari web browser in return for a share of Google's advertising revenue generated by searches on the Google search engine by Safari users.  The deal did not require Google to be the exclusive search provider available on Apple products or even the only search engine promoted by Apple on its Safari web browser.  As part of the agreement, Apple set Google as the pre-set default search provider in its Safari web browser in the United States because Google offered the highest quality results.  This type of vertical agreement between search provider companies and web browser companies is common in the industry, and the Google-Apple agreement has been widely reported for over 15 years.  Apple and Google executives have met periodically over the years as part of the ongoing working relationship created by these agreements.

Plaintiff is a crane operator certification company that purchased search engine advertisements on Google.  Am. Compl. ¶ 48, ECF No. 39.  It alleges that the longstanding, publicly reported *vertical* agreement between Apple and Google reflected a separate, clandestine *horizontal* agreement under which Apple agreed with Google not to compete in providing search services.  *Id.* ¶¶ 2-4, 21, 40, 94, 98, 104, 112-13, 115, 134.  The Complaint asserts that company executives hatched this conspiracy during secret meetings at Google's headquarters, a shopping mall café, Steve Jobs' living room, and public restaurants over dinner.  *Id.* ¶¶ 101, 103, 121, 124-25.  And this supposed illegal scheme was allegedly ratified by both companies' CEOs, chairmen, and boards of directors.  *Id.* ¶¶ 9-10, 51.  At the same time, Plaintiff alleges that company executives brazenly admitted the conspiracy through public comments, such as when former Google CEO Eric Schmidt

joked to a gathered audience many years ago at the launch of the iPhone: "If we just sort of merged the companies, we could just call them AppleGoo." *Id.* ¶ 99.

Plaintiff sued Defendants on behalf of itself and a proposed class of "consumers and businesses who paid Google to place advertising on Google search in the United States since January 1, 2005." *Id.* ¶ 65, ECF No. 39.  The Amended Complaint theorizes that search advertising prices on Google were inflated because Apple refrained from building its own search engine and search advertising business based on its alleged non-compete agreement with Google.  *Id.* ¶ 48.  Plaintiff contends the alleged agreement is a *per se* violation of Section 1 of the Sherman Antitrust Act, *id.* ¶¶ 141-43, and it claims Defendants conspired to monopolize in violation of Section 2, *id.* ¶ 156. Plaintiff requests treble damages, declarative relief, injunctive relief voiding and prohibiting any profit-sharing and exclusivity agreements, disgorgement of profits and payments exchanged, and the dismantling of both Apple and Google into smaller companies.  *Id.* ¶¶ 161-62.

The Amended Complaint fails to plausibly allege any claim for relief against Defendants for the numerous reasons set forth in Defendants' Rule 12(b)(6) motion to dismiss filed on April 12, 2022.  ECF No. 51.  The Complaint also fails to account for Plaintiff's contractual duty "to arbitrate all disputes and claims . . . that arise out of or relate in any way to" Plaintiff's participation in Google's advertising programs and services, as further outlined in the Google Defendants' motion to compel arbitration filed on March 18, 2022.  ECF No. 32.

Plaintiff's suggestion that Google has "admitted" many of the allegations in this case in the Answer that Google filed responding to the Government's complaint in *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C.) is incorrect.   Plaintiff makes this unsupported assertion for the first time in this statement; it appears nowhere in its pleadings or motion briefing.  Plaintiff also omits that the Government does not allege a horizontal conspiracy not to compete in its suit. The

Government's allegations (which Google vigorously disputes) include nothing about a conspiracy with Apple not to compete, which is the only theory alleged here.

**3. Legal Issues**

**a. Plaintiff's Statement**

The Defendants, like almost all defendants in antitrust cases in the last few years, have taken the position that they will refuse any discovery until after the Court rules on the Defendants' initial motions to dismiss. The Defendants take this position notwithstanding the rules of civil procedure's requirements that defendants must provide declarations demonstrating good cause in order to curtail discovery. Consequently, in every major antitrust case at least in the last decade, defendants automatically file a motion to dismiss and then refuse to engage in discovery until the Court decides the motions. This runs against the rules of civil procedure and pressures the judge to rule before any discovery is had in the case.

**b. Defendants' Statement**

The following legal issues are currently in dispute:

    i.  Whether the Amended Complaint adequately states a claim under Section 1 of the Sherman Act where it does not allege facts that plausibly suggest the existence of a *per se* agreement not to compete; and whether the claims against Defendants Cook, Schmidt, and Pichai fail because the Amended Complaint alleges no "inherently wrongful conduct" or their "knowing approval" of "inherently wrongful acts."

    ii.  Whether the Amended Complaint adequately states a claim under Section 2 of the Sherman Act where it does not allege facts that plausibly establish (i) a conspiracy among Defendants; (ii) a cognizable antitrust relevant market; and (iii) that Apple had a specific intent to monopolize;

iii. Whether the Amended Complaint's claims fail for lack of antitrust standing because Plaintiff pleads no antitrust injury and relies on an indirect, speculative, duplicative, and impossibly complex theory of harm;

iv. Whether the four-year statute of limitations bars claims for damages predating December 27, 2017.

v. Whether Plaintiff is not authorized to seek disgorgement and public injunctive relief in this case.

vi. Whether the Court should compel arbitration and dismiss proceedings as to the Google Defendants and stay proceedings as to the Apple Defendants pending the resolution of any arbitration.

**4. Motions**

On March 18, 2022, the Google Defendants filed a motion to compel arbitration. ECF. No. 32. Plaintiff responded on April 1, 2022, ECF No. 43, and the Google Defendants replied on April 8, 2022, ECF No. 48. After Plaintiff filed an "objection," ECF No. 53, and moved for an order to show cause, ECF No. 66, the Court directed Plaintiff to file a sur-reply brief, ECF No. 80. Plaintiff filed its sur-reply brief regarding arbitration on June 24, 2022. ECF No. 81.

On March 18, 2022, the Apple Defendants filed a motion to stay this litigation pending arbitration of Plaintiff's claims against the Google Defendants. ECF No. 34. Plaintiff responded on April 1, 2022, ECF No. 44, and the Apple Defendants replied on April 8, 2022, ECF No. 50.

On April 12, 2022, all Defendants filed a joint motion to dismiss the Amended Complaint. ECF No. 51. Plaintiff responded on May 3, 2022, ECF No. 63, and Defendants replied on May 17, 2022, ECF No. 64.

On March 18, 2022, Defendants filed a joint motion to stay all discovery pending the Court's ruling on Defendants' motion to dismiss, the Google Defendants' motion to compel arbitration, and

the Apple Defendants' motion to stay the litigation pending arbitration.  ECF No. 35.  Plaintiff responded on April 1, 2022, ECF No. 42, and Defendants replied on April 8, 2022, ECF No. 49.  On April 28, 2022, the Court granted Defendants' motion to stay discovery.  ECF No. 61.  The Court concluded that "good cause exists to stay discovery until the pending motions are resolved" because the "motions may dispose of at least some Defendants, if not Plaintiff's entire case." *Id.* at 2.  It further determined that "no additional discovery would help the Court resolve" the pending motions and "forcing Defendants to" comply with Plaintiff's onerous discovery demands "before the Court has an opportunity to assess whether Plaintiff has pled any plausible claim against them may subject Defendants to undue burden and expense." *Id.*  Plaintiff thereafter petitioned the United States Court of Appeals for the Ninth Circuit for a writ of mandamus commanding this Court to vacate its order staying discovery and directing discovery to proceed immediately.  ECF No. 68.  The Ninth Circuit denied the petition on June 15, 2022.  ECF No. 77.  On June 28, 2022, Plaintiff sought rehearing *en banc* of the denial, and the Ninth Circuit denied that request the next day.  *See* Order, *California Crane School, Inc. v. USDC-CAOAK*, No. 22-70105 (9th Cir. June 29, 2022), ECF No. 4.  Plaintiff's counsel has informed counsel for Defendants that Plaintiff intends to seek review from the United States Supreme Court.

Oral argument for the motions to compel arbitration and to stay proceedings pending arbitration is set for August 11, 2022.  Oral argument on the motion to dismiss is set for September 29, 2022.  Further motion practice, including motions for summary judgment, may become necessary as the case develops.

### a.  Plaintiff's Statement

#### 1.  Jury Trial of Validity of Arbitration Contract

By reason of its jury demand in the First Amended Complaint, Plaintiff has demanded a trial of all issues related to the motion to compel arbitration brought by Defendant Google.

The "saving clause" of the Federal Arbitration Act ("FAA") exempts the FAC from arbitration under Section 2 of the FAA, 9 U.S.C. Section 2, which provides that "[a] written provision in ...a contract...to settle by arbitration a controversy thereafter arising out of such contract...shall be valid, irrevocable, and enforceable....save upon such grounds as exist at law or in equity for the revocation of any contract."

Section 4 of the FAA, 9 U.S.C. Section 4, provides for the trial of an issue related to the validity of the underlying agreement to arbitrate:

> "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . . Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed."

California law governs the interpretation of the contract and the arbitration clause. California law provides two grounds for revocation of any contract. Both grounds, including 1) public injunctive relief FAC ¶¶162 a.-i under California Civil Code sec. 3513, and 2) fraudulent concealment, FAC ¶¶ 158-160, which is a ground for revocation of any contract under California Civil Code sec. 1689, have been alleged in the FAC.

Plaintiff has demanded and renews its demand for a trial by jury of the question whether the arbitration agreement was obtained by fraud. Plaintiff seeks a trial on the merits of the underlying agreement to arbitrate.  Plaintiff challenges the making of any arbitration agreement on the grounds

for revocation of any contract, including  waiver, fraudulent concealment and public injunctive relief

which are determinable in a trial by jury as provided in section 4(a)1 of the Federal Arbitration Act.

2.     Summary Judgment

Plaintiff will move for summary judgement based upon the admissions already in the record and based upon the upcoming discovery that will augment those admissions.   This filing presents one of those extraordinary and very unusual cases in which summary judgment will be granted in favor of the plaintiff.  Plaintiff's case is based upon the same factual pattern held to be illegal in by the Supreme Court in the cases of *Citizen Publishing Company v. United States, 394 U.S. 131 (1969, Douglas, J.)* (where summary judgment was affirmed for the plaintiff) and *Palmer v. BRG of Georgia, 498 U.S. 46, 47-49 (1990, Per Curiam)*.  The Supreme Court also affirmed the entry of summary judgment in favor of a plaintiff in its opinion in *Northern Pac. R. Co. v. United States*, 356 U. S. 1, 5 (1958, Black, J.).

In *Citizen*, the Court held at page 134:

"The purpose of the agreement was to end any business or commercial competition between the two papers and to that end three types of controls were imposed. First was price fixing. . . Second was profit pooling. . . . . Third was a market control. It was agreed that neither the Star nor the Citizen . . . would engage in any other business in Pima County. . .in conflict with the agreement. Thus competing publishing operations were foreclosed.

"All commercial rivalry between the papers ceased. . . .

"The Government's complaint charged an unreasonable restraint of trade or commerce in violation of § 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. § 1, and a monopoly in violation of § 2, 15 U. S. C. § 2. The District Court, after finding that the joint operating agreement contained provisions which were unlawful per se under § 1, granted the Government's motion for summary judgment.

"We affirm the judgment. The § 1 violations are plain beyond peradventure. Price-fixing is illegal per se. United States v. Masonite Corp., 316 U. S. 265, 276. Pooling of profits pursuant to an inflexible ratio at least reduces incentives to compete for circulation and advertising revenues and runs afoul of the Sherman Act. Northern Securities Co. v. United States, 193 U. S. 197, 328. The agreement not to engage in any other publishing business in Pima County was a division of fields also banned by the Act. Timken Co. v. United States, 136*136 341 U. S. 593. The joint operating agreement exposed the restraints so

clearly and unambiguously as to justify the rather rare use of a summary judgment in the antitrust field. See *Northern Pac. R. Co. v. United States*, 356 U. S. 1, 5."

And in *Palmer*, at pages 47-49, the Court held that the district court's and court of appeals' decisions on cross-motions for summary judgment would be reversed:

"The parties agreed that HBJ would not compete with BRG in Georgia and that BRG would not compete with HBJ outside of Georgia.

"On petitioners' [Palmer] motion for partial summary judgment as to the § 1 counts in the complaint and respondents' motion for summary judgment, the District Court held that the agreement was lawful . . . . The Court of Appeals also agreed with the District Court that to prove a per se violation under a geographic market allocation theory, petitioners had to show that respondents had subdivided some relevant market in which they had previously competed. 874 F. 2d 1417 (1989).

"In United States v. Topco Associates, Inc., 405 U. S. 596 (1972), we held that agreements between competitors to allocate territories to minimize competition are illegal:

'One of the classic examples of a per se violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition.... This Court has reiterated time and time again that `[h]orizontal territorial limitations... are naked restraints of trade with no purpose except stifling of competition.' Such limitations are per se violations of the Sherman Act.' *Id.*, at 608 (citations omitted).

"The defendants in Topco had never competed in the same market, but had simply agreed to allocate markets. Here, HBJ and BRG had previously competed in the Georgia market; under their allocation agreement, BRG received that market, while HBJ received the remainder of the United States. Each agreed not to compete in the other's territories. Such agreements are anticompetitive regardless of whether the parties split a market within which both do business or whether they merely reserve one market for one and another for the other. Thus, the 1980 agreement between HBJ and BRG was unlawful on its face."

The Defendants' agreement in this case amounts to a horizontal combination in which Apple is paid to stay out of the internet search business even though Apple had seriously contemplated going into that market with its Safari search engine.  That is the same fact-pattern that was presented in *Citizens* and *Palmer*.

By agreeing to accept billions of dollars from Google to add Google as their default search engine, all incentive to compete at Apple is removed from the equation because Apple is paid to sit

on sideline.  Indeed, Apple's only real incentive is to help Google monopolize as much of the search market as possible, since Apple's payments will be increased as Google's market share soars.  Hence Apple's comment that Apple may as well be called "Apple-Goo".    Google's market share - exceeding 92% of the mobile internet search market in the United States - is already miles above the percentage shares that have been consistently condemned by the Supreme Court in any of the monopoly cases presented to the Court over the many years that the Sherman Act has been enforced.

### b.  Defendants' Statement

Defendants do not believe it is proper to add pages to this case management statement to repeat arguments—or add new arguments—to motions that are already fully ripe for decision. Defendants instead rest on their briefing on the pending motions to compel arbitration, stay proceedings pending arbitration, and dismiss this case with prejudice, except to the extent the Court has questions at the scheduled hearings.  As regards summary judgment, Defendants reserve their arguments for that stage of litigation.

### 5.  Amendment of Pleadings

The Parties do not currently anticipate any further amendments to the pleadings.

### 6.  Evidence Preservation

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. All Parties have assured the others that they have taken and agreed to continue such steps.

### 7.  Disclosures

The Court granted Defendants' motion to stay discovery on April 28, 2022.  ECF No. 61. Defendants have proposed promptly serving initial disclosures after the Court's rulings on the pending motions.

Plaintiff served its initial disclosures pursuant to Rule 26(f) on August 4, 2022, in compliance with the Federal Rules of Civil Procedure.

**8.  Discovery**

**a.  Discovery Taken to Date**

On March 11, 2022, Plaintiff served Interrogatories and Requests for Production on the Google Defendants and Apple Defendants, respectively.  Plaintiff also sent deposition notices for Tim Cook, Sundar Pichai, Eric Schmidt, and several more employees of the companies, each for a day "in no event later than May 1, 2022," which they later noticed for dates certain in late-April 2022.  Counsel for the Google Defendants and counsel for the Apple Defendants each sent responses and objections to Plaintiff's discovery requests on April 11, 2022.  The parties met and conferred regarding discovery on April 18, 2022.  The parties notified the Court of their outstanding disputes via a joint letter filed April 21, 2022.  ECF No. 55.  On April 28, 2022, the Court granted Defendants' motion to stay discovery and stayed all discovery "until the Court rules on Defendants' Motion to Dismiss, the Google Defendants' Motion to Compel Arbitration, and the Apple Defendants' Motion to Stay Litigation Pending Arbitration."  ECF No. 61 at 3.

**b.  Scope of Anticipated Discovery and Proposed Limitations or Modifications of the Discovery Rules**

**i.  Plaintiffs' Statement**

Plaintiff seeks limited deposition discovery, including the depositions of Defendants Cook, Pichai and Schmidt regarding the secret meetings and agreements.  Plaintiff also seeks the identity and depositions of the Apple executive who envisioned Google and Apple to be "one company" and the individual executive of Google who said that Apple and Google were "merging without having to merge."

Plaintiff has served interrogatories directed at Google's billion dollar payments to Apple, including when and where the payments were made, what the payment amounts were, how the

payments were transmitted and according to what agreement(s), and whether the agreement(s) was/(were) written or oral.

Plaintiff has served requests for production of documents seeking the written contract between Defendants Google and Apple with regard to the billion dollar payments made to Apple as well as the dates and amounts of those payments.

The parties met and conferred.  Subsequently the Court entered a stay of discovery on motion by Defendants.

Notwithstanding the conclusions reached by the Court in ruling on the stay, Plaintiff respectfully submits that the production of the Apple-Goggle written agreement, together with the requested limited depositions, will definitely aid this Court in the resolution of the Defendants' pending motion to dismiss.  In addition, the production of this written agreement may shorten the litigation altogether as it will certainly substantiate Plaintiff's claims that Defendants have violated the law and it will form the basis for the Motion for Summary Judgment that will be filed by Plaintiff. (*See* Section 4 re Motions, Ante.)

### ii.  Defendants' Statement

Formal discovery plans may become appropriate if Plaintiff's Amended Complaint survives Defendants' motion to dismiss, which is potentially dispositive of the entire case, the Google Defendants' motion to compel arbitration, which is potentially dispositive of the claims against the Google Defendants, and the Apple Defendants' motion to stay this litigation pending arbitration, which will show that the claims subject to arbitration involve the same facts as, and are inherently inseparable from, the claims subject to litigation, and that allowing the litigation to proceed risks inconsistent results and could thwart federal policy favoring arbitration.  But not until then.

If any claims remain following the Court's decisions, Defendants expect this case to involve routine discovery that should not exceed the standard limits.

**c. Proposed Discovery Plan, Stipulated e-Discovery, and Identified Discovery Disputes**

**i. Plaintiff's Statement**

Plaintiff opposes the entry of any Protective Order in this case on the ground that there has been no showing of good cause, nor any affidavits filed by Defendants, as required by the Rule 26(c), to support the proposition that the discovery in this case will cause annoyance, embarrassment, oppression or undue burden or expense.

**ii. Defendants' Statement**

As described above, formal discovery plans may become appropriate if Plaintiff's complaint survives Defendants' motion to dismiss, the Google Defendants' motion to compel arbitration, and the Apple Defendants' motion to stay this litigation pending arbitration. Defendants intend to propose a formal discovery plan if the Court denies Defendants' motions. The scope of discovery would then be governed by a complaint that has survived preliminary motion practice. This course allows the Parties to understand what facts and allegations, if any, will actually be at issue and therefore subject to discovery.

The Parties have not discussed entering into a stipulated e-discovery order and do not have any pending discovery disputes.

**9. Class Actions**

Plaintiff asserts claims on behalf of a class.

Defendants propose that Plaintiff should move for class certification within six months from the date Defendants file their answer(s).

The Parties have reviewed the Procedural Guidance for Class Action Settlements.

**10. Related Cases**

    **a.  Plaintiffs' Statement**

       On April 22, 2022, counsel for Plaintiff filed a similar action against the same Defendants in this case in the Northern District of California.  *See Arcell, et al. v. Google LLC, et al.*, 22-cv-02499-EJD (N.D Cal.).

       Although Defendants here are the same as in  the *California Crane* action,  Plaintiffs in the *Arcell* case are users and consumers of Google and Apple's internet search services.  In addition there are several unique issues in the *California Crane* action that are not present in the *Arcell* case, e.g., issues relating to class certification and to arbitration.

       On June 1, 2022, this Court denied Defendants' Motion to Relate the *Arcell* case to *California Crane* stating:  "The court has reviewed the motion and determined that no cases are related and no reassignments shall occur."  (ECF 71)[1]

    **b.  Defendants' Statement**

       On April 22, 2022, counsel for Plaintiff filed a similar action in the Northern District of California.  *See Arcell, et al. v. Google LLC, et al.*, 22-cv-02499-EJD (N.D Cal.).  The case concerns a different group of plaintiffs asserting the same two causes of action against the same defendants based on the same alleged conduct and seeking nearly the same relief.  Indeed, Plaintiff's factual allegations and legal claims here are materially identical to the plaintiffs' allegations and claims in *Arcell*: That is, based on the same alleged meetings between Defendants' executives, the same pictures of Defendants' executives, the same scattered quotations by Defendants' employees, and the same vertical revenue sharing agreement, the complaints in both actions allege that, since 2005, Apple and Google have agreed not to compete with one another in the provision of search services.

---

[1]  On June 16, 2022, the Court also denied the Defendants' subsequent Motion for Reconsideration, again ruling that the cases were not related.  (ECF 79).

And the complaints in both actions include the same claims under Section 1 of the Sherman Act alleging a *per se* illegal agreement not to compete, the same claims under Section 2 of the Sherman Act alleging a conspiracy to monopolize the "search business," and the same requests for equitable relief in the form of disgorgement and divestiture.

When filing the *Arcell* case, Plaintiff's counsel noticed the cases as "related" in the civil cover sheet.  Defendants accordingly filed an administrative motion to consider whether the cases should be related, ECF No. 69, which Plaintiff opposed, ECF No. 70, and the Court denied, ECF No. 71.  Defendants filed a motion for leave to seek reconsideration of the related-case issue, ECF No. 72, which Plaintiff opposed, ECF No. 73, and which the Court denied, ECF No. 79.

In the *Arcell* case there is a motion to dismiss that will be fully briefed on August 12, 2022, and it is scheduled for argument on November 3, 2022.  *See* Motion to Dismiss, *Arcell, et al. v. Google LLC, et al.*, 22-cv-02499-EJD (N.D Cal. filed June 24, 2022), ECF No. 25.  The Court in that case has continued the Initial Case Management Conference until December 8, 2022.

**11. Relief**

Defendants dispute that they are liable to Plaintiff for any damages or other relief.  If liability is established, damages expert(s) would likely be required to calculate damages, if any.

**12. Settlement and ADR**

The Parties have complied with ADR Local Rule 3-5.  No formal ADR has taken place.  The Parties will explore the possibility of private mediation after resolution of Defendants' motion to dismiss, the Google Defendants' motion to compel arbitration, and the Apple Defendants' motion to stay this litigation pending arbitration.

**13. Consent to Magistrate Judge for All Purposes**

On December 22, 2021, Plaintiff filed a declination to magistrate judge jurisdiction.  *See* ECF No. 2.

**14. Other References**

The Parties agree that this case is not suitable for reference to a special master or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing Issues**

The Parties have not agreed on any issues that can be narrowed. Defendants have filed a motion to dismiss, which may serve to narrow the issues. The Parties may file at a later date one or more motions for summary judgment, or other dispositive motions, seeking to narrow the issues.

**16. Expedited Schedule**

Plaintiff believes that this case may be supervised by the court on an expedited basis since discovery is not document-heavy (as it usually is in many, more routine antitrust cases) and since Plaintiff has proposed a plan to effect discovery efficiently.

Defendants do not believe that this case is suitable for handling on an expedited basis.

**17. Scheduling**

**a. Plaintiff's Statement**

Plaintiff seeks a trial date.

**b. Defendants' Statement**

Defendants propose the following schedule if any claims remain after the Court's decision on Defendants' motion to dismiss:

| Event | Proposed Date |
|---|---|
| Answer | Within 45 days of the Court's ruling on the Motion to Dismiss |
| Motion for Class Certification | 6 months after Defendants' Answer |
| Close of Fact Discovery | 12 months after Court's ruling on the Motion to Dismiss |

| Affirmative Expert Disclosures | 13 months after Court's ruling on the Motion to Dismiss |
|---|---|
| Rebuttal Expert Disclosures | 15 months after Court's ruling on the Motion to Dismiss |
| Close of Expert Discovery | 17 months after Court's ruling on the Motion to Dismiss |
| Dispositive Briefs Due | 2 months after the close of expert discovery |
| Pretrial Conference | 3 months after Court's ruling on dispositive motions |
| Trial | 6 weeks after the Pretrial Conference |

## 18. Trial

Plaintiff has demanded a trial by jury under Federal Rule of Civil Procedure 38(b).

Plaintiffs believe that this case can be ready for trial in 6 months and that trial will take a maximum of two weeks.

Defendants believe it is premature to estimate a trial timeline without knowing the scope of the claims or the existence of any class.

## 19. Disclosure of Non-party Interested Entities or Persons

Plaintiff California Crane School, Inc. disclosed that it has no parent company and no publicly held company owns 10 percent or more of its stock.  It also disclosed as an interested party John Nypl, who owns 100% of California Crane School, Inc.  *See* ECF No. 18.

Defendants Google, LLC, Alphabet Inc., and XXVI Holdings Inc. disclosed that Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company, and no publicly traded company holds 10 percent or more of Alphabet Inc.'s stock.  *See* ECF No. 16.

Defendant Apple Inc. disclosed that it has no parent corporation and no publicly held company owns 10 percent or more of its stock. *See* ECF No. 21.

**20. Professional Conduct**

Undersigned counsel certifies that all attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. Other**

The Parties are not aware of other matters that may facilitate the resolution of this matter.

DATED:  August 4, 2022

By: /s/ John E. Schmidtlein
John E. Schmidtlein (SBN 163520)
Carol J. Pruski (SBN 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Ave., S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email:  jschmidtlein@wc.com
Email: cpruski@wc.com

*Attorneys for Defendants Google LLC,*
*Alphabet, Inc., XXVI Holdings, Inc., Sundar*
*Pichai, and Eric Schmidt*

By: /s/ Jack P. DiCanio
Steven C. Sunshine (*pro hac vice*)
Karen Hoffman Lent (*pro hac vice*)
Julia K. York (*pro hac vice*)
Jack P. DiCanio (SBN 138752)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4660
Facsimile: (213) 621-5430
Email: jack.dicanio@skadden.com

*Attorneys for Defendants Apple Inc. and Tim Cook*

By: /s/ Joseph M. Alioto
Joseph M. Alioto, Esq. (SBN 42680)
Tatiana V. Wallace, Esq. (SBN 233939)
ALIOTO LAW FIRM
One Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 434-8900
Email: jmalioto@aliotolaw.com

Josephine Alioto (SBN 282989)
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800

Lawrence G. Papale (SBN 67068)
LAW OFFICE OF LAWRENCE G. PAPALE
1308 Main Street, Suite 117
St. Helena, CA 94574
Telephone: (707) 963-1704

Email: j.alioto@veenfirm.com

Email: lgpapale@papale.com

Theresa Moore
LAW OFFICES OF THERESA D. MOORE
One Sansome Street, 35th Floor
San Francisco, CA 94104
Phone: (415) 613-1414
tmore@aliotolaw.com

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

Lingel H. Winters, Esq. (SBN 37759)
LAW OFFICES OF LINGEL H. WINTERS
388 Market St. Suite 1300
San Francisco, California 94111
Telephone: (415) 398-2941
Email: sawmill2@aol.com

Christopher A. Nedeau (SBN 81297)
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

Jeffrey K. Perkins (SBN 57996)
LAW OFFICES OF JEFFREY K. PERKINS
1550-G Tiburon Boulevard, #344
Tiburon, California 94920
Telephone: (415) 302-1115
Email: jeffreykperkins@aol.com

*Attorneys for Plaintiff California Crane
School, Inc.*

**SIGNATURE ATTESTATION**

I, John E. Schmidtlein, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1, I hereby attest that all counsel whose e-signatures (/s/) appear on this document concurred in this filing.

DATED: August 4, 2022                              By: /s/ *John E. Schmidtlein*