1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

CALIFORNIA CRANE SCHOOL, INC.,

8

Plaintiff,

9

v.

10

GOOGLE LLC, et al.,

11

Defendants.

Case No. 21-cv-10001-HSG

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION TO STAY PENDING ARBITRATION**

Re: Dkt. Nos. 32, 34

12
13

This is an antitrust lawsuit that alleges that Google LLC and Apple Inc. have entered into

14

an anticompetitive agreement not to compete in the internet search business. *See* Dkt. No. 39

15

("FAC") ¶ 2. Before the Court is Google LLC's, Alphabet Inc.'s, XXVI Holdings Inc.'s, Sundar

16

Pichai's, and Eric Schmidt's (collectively, "Google" or "Google Defendants") motion for an order

17

compelling arbitration and dismissing or staying Plaintiff California Crane School, Inc.'s

18

("Plaintiff") claims against the Google Defendants. Dkt. No. 32. ("Mot."). That motion is fully

19

briefed. *See* Dkt. Nos. 43 ("Opp."), 48 ("Reply"), 81 ("Sur-Reply"). Also pending is Apple Inc.'s

20

and Tim Cook's (collectively, "Apple" or "Apple Defendants") motion to stay this action in its

21

entirety pending resolution of any arbitration between Plaintiff and the Google Defendants. Dkt.

22

No. 34. The Court held a hearing on both motions on August 11, 2022. For the reasons provided

23

below, the Court **GRANTS** Google's motion and **DENIES** Apple's motion.

24

## I.    BACKGROUND

25

The operative Complaint alleges that Google and Apple violated Sections 1 and 2 of the

26

Sherman Act by engaging in an unlawful conspiracy to restrain trade in and monopolize the

27

internet search market. *See* FAC. Specifically, it alleges that Google and Apple entered into an

28

anticompetitive agreement not to compete in the internet search business. *See id.* ¶ 2. It also

United States District Court
Northern District of California

1     alleges that Plaintiff, a crane operator certification company, bought search advertisements on

2     Google and in so doing paid prices that were inflated by the allegedly illegal agreement between

3     Apple and Google. *Id.* ¶ 45.  Plaintiff asserts the same claims against Google and Apple, and they

4     arise out of the same underlying facts. *See id.* ¶¶ 135-42.

5          The following facts have not been contested.  When advertisers sign up to use Google's

6     advertising platforms in the United States, they are shown Google's Advertising Program Terms

7     ("TOS") and are asked to expressly agree to the TOS.  *See* Dkt. No. 32-1, Declaration of Courtney

8     Shadd ISO Google's Motion to Compel Arbitration ("Shadd Decl.") ¶ 3.[1]  An advertiser will not

9     be able to use Google's services until after the TOS have been agreed to. *Id.*  Plaintiff accepted

10    the TOS in 2017 and 2018. *Id.* ¶¶ 13-16.

11         The TOS states in its very first paragraph that it "require[s] the use of binding individual

12    arbitration to resolve disputes rather than jury trials or class actions." *Id.*, Exs. A & D.

13    Specifically, the TOS's arbitration clause states that the parties "agree to arbitrate all disputes and

14    claims . . . that arise out of or relate in any way to" Plaintiff's participation in Google's advertising

15    programs and services. *Id.* § 13(A).  The provision further states that the agreement to arbitrate "is

16    intended to be broadly interpreted and includes, for example . . . claims brought under any legal

17    theory." *Id.*  And the provision also expressly states that it applies to claims brought against

18    "Google," "Google parent companies, and the respective officers [and] directors" of those entities.

19    *Id.*  Google's records do not reflect any attempts by Plaintiff to opt out of the arbitration provision

20    pursuant to Section 13(F) of the TOS.  Shadd Decl. ¶¶ 10, 12, 15-16; *see also id.*, Exs. A & D, §

21

22    _____

23    [1] The Google Defendants ask the Court take judicial notice of the TOS and related
      documents, including the opt-out website, and the website at which advertisers accepted or
24    declined the TOS.  Mot. at 2.  Plaintiff has not opposed this request.  The Court agrees to take
      judicial notice of the existence of these documents, as they are not the subject of reasonable
      dispute and their authenticity is not in question.  *See* Fed. R. Evid. 201; *Trudeau v. Google LLC*,
25    349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (taking judicial notice of the "TOS, the opt-out
      website, and the website at which advertisers accepted or declined the TOS," because, *inter alia*,
26    "they are not the subject of reasonable dispute and their authenticity is not in question" (citing
      FED. R. EVID. 201)), *aff'd*, 816 F. App'x 68 (9th Cir. 2020).  That said, the Court only takes
27    judicial notice of the existence of the documents and is not bound by any specific fact findings and
      legal conclusions set forth in them.

28

United States District Court
Northern District of California

1    13(F) (explaining opt out process).

2    **II.    LEGAL STANDARD**

3    The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring

4    arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable,

5    and enforceable."  9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting

6    federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

7    U.S. 1, 24 (1983) (same).  The FAA allows that a party "aggrieved by the alleged failure, neglect,

8    or refusal of another to arbitrate under a written agreement for arbitration may petition any United

9    States district court . . . for an order directing that . . . arbitration proceed in the manner provided

10    for in such agreement."  9 U.S.C. § 4.  This federal policy is "simply to ensure the enforceability,

11    according to their terms, of private agreements to arbitrate."  *Volt Info. Sciences, Inc. v. Bd. of*

12    *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  Courts must resolve any

13    "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration."  *Id.*

14    When a party moves to compel arbitration, the court must determine (1) "whether a valid

15    arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue,"

16    *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  The

17    agreement may also delegate gateway issues to an arbitrator, in which case the court's role is

18    limited to determining whether there is clear and unmistakable evidence that the parties agreed to

19    arbitrate arbitrability.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  In either

20    instance, "before referring a dispute to an arbitrator, the court determines whether a valid

21    arbitration agreement exists."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524,

22    530 (2019) (citing 9 U.S.C. § 2).

23    **III.    DISCUSSION**

24    **A.    Google's Motion to Compel Arbitration**

25    Google moves to compel arbitration of Plaintiff's claims against it pursuant to an agreed-

26    upon arbitration clause in Google's terms of service.  On a motion to compel arbitration, this

27    Court's role is simply to determine (1) whether a valid agreement to arbitrate exists and, if it does,

28    (2) whether the agreement encompasses the dispute at issue.  *Kilgore v. KeyBank, Nat. Ass'n*, 718

*United States District Court*
*Northern District of California*

3

1   F.3d 1052, 1058 (9th Cir. 2013).  Plaintiff's primary argument in response to Google's motion to

2   compel arbitration is that the so-called "*McGill* rule" renders the parties' arbitration agreement

3   unenforceable.  The Court will first explain why the arbitration agreement is valid and covers the

4   dispute at issue, and it will then briefly explain why the *McGill* rule is irrelevant to this case.

5       First, the arbitration agreement is valid.  Section 2 of the FAA contains a savings clause,

6   which provides that arbitration agreements are "enforceable, save upon such grounds as exist at

7   law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This savings clause "preserves

8   generally applicable contract defenses."  *Kilgore*, 718 F.3d at 1058 (citations omitted).  Under the

9   FAA savings clause, state law doctrines that "arose to govern issues concerning the validity,

10  revocability, and enforceability of contracts generally" remain applicable to arbitration

11  agreements.  *Id.* (citations omitted).  Thus, generally applicable contract defenses, such as fraud,

12  duress, or unconscionability, may be applied to invalidate arbitration agreements without

13  contravening § 2.  *Id.*  And under California law, a contractual clause is unenforceable if it is both

14  procedurally and substantively unconscionable.  *See Nagrampa v. MailCoups, Inc.*, 469 F.3d

15  1257, 1280 (9th Cir. 2006).[2]

16      Google contends, and Plaintiff does not dispute, that the arbitration clause in the TOS is

17  neither procedurally nor substantively unconscionable.  The Ninth Circuit has held that "the

18  threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is

19  adhesive."  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting

20  *Nagrampa*, 469 F.3d at 1281 (alterations and internal quotation marks omitted)).  "[I]f there is an

21  opportunity to opt out," the arbitration agreement is not adhesive, and thus not procedurally

22  unconscionable.  *Id.*

23      Here, the TOS offers advertisers an opportunity to opt out of arbitration.  Specifically,

24

25  _____

    [2] There is no dispute that California law governs the interpretation of the TOS and its arbitration
26  clause.  *See* Mot. at 3, n.1 (In the TOS, the parties agreed that "ALL CLAIMS ARISING OUT OF
    OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE GOVERNED BY
27  CALIFORNIA LAW, . . . EXCEPT TO THE EXTENT THAT CALIFORNIA LAW IS
    CONTRARY TO OR PREEMPTED BY FEDERAL LAW.") (citing Shadd Decl., Exs. A & D, §
28  14); Dkt. No. 81 at 2 ("California law governs the interpretation of the contract and the arbitration
    clause.").

United States District Court
Northern District of California

Section 13(F) of the TOS provides an advertiser with 30 days to opt out of the arbitration provision, which the advertiser can do by clicking on a hyperlink that leads to a landing webpage containing the "Opt Out Procedure." *See* Shadd Decl. ¶¶ 10, 12, 15-16 (discussing the TOS's opt-out process). Plaintiff has not argued that this procedure fails to afford a meaningful opportunity to opt out of arbitration. So in light of this voluntary opt out procedure, the Court finds that the arbitration provision in the TOS is not procedurally unconscionable and thus not unconscionable. *See Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018) ("This Court finds that the 2017 TOS provided a meaningful opportunity to opt out of the arbitration provision."), *aff'd*, 816 F. App'x 68 (9th Cir. 2020); *Adtrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 1876950, at *5 (N.D. Cal. Apr. 19, 2018) ("[A]n advertiser's decision to decline the September 2017 AdWords Agreement to avoid being subject to the new arbitration provision is a voluntary choice given that he or she can easily opt out from that provision."). There is thus no need to assess whether the arbitration agreement is substantively unconscionable. But in any event, Plaintiff does not contend that it is, and the Court finds no reason to conclude otherwise. At bottom, the arbitration agreement is valid and enforceable.

Second, the arbitration agreement encompasses Plaintiff's claims. Plaintiff alleges that it overpaid Google for showing advertisements on Google's search results pages due to an anticompetitive agreement not to compete in the internet search business between Apple and Google. *See* FAC ¶¶ 45, 48, 139. With exceptions that no one contends are applicable here, the TOS applies to "all disputes and claims" under "any legal theory" that "arise out of or relate in any way" to Google's advertising programs. Shadd Decl., Exs. A & D, § 13(A). Moreover, the arbitration agreement applies to Plaintiff's claims against each of the respective Google Defendants, since the TOS also applies to "Google," "Google parent companies, and the respective officers [and] directors" of those entities. *See id.* Plaintiff has identified no reason why this broad agreement does not encompass the antitrust claims here, and the Court is aware of none. Thus, a valid agreement to arbitrate exists, and it encompasses the dispute at issue in this lawsuit.

All of that is uncontested. Plaintiff's main argument in response to Google's motion is that the "*McGill* rule"—a California doctrine that protects a plaintiff's right to seek "public injunctive

relief"—renders the parties' arbitration agreement unenforceable.  The Court disagrees.

California courts have interpreted certain California unfair competition and consumer protection statutes to "authorize injunctive relief that is primarily for the benefit of the general public."  *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021) (citation omitted); *see also* Cal. Bus. & Prof. Code § 17200 (UCL), et seq.; *id.* § 17500 (FAL), et seq.; Cal. Civ. Code § 1750 (CLRA), et seq.  In *McGill v. Citibank, N.A.*, the California Supreme Court reasoned that any contract that purports to waive a party's right to seek the "the public injunctive relief available under the UCL, the CLRA, and the false advertising law" would "seriously compromise the public purposes the statutes were intended to serve."  2 Cal. 5th 945, 216 Cal. Rptr. 3d 627, 638 393 P.3d 85, 94 (2017).  The "*McGill* rule" is the case's central holding, which is that an arbitration provision that purports to waive the right to request such public injunctive relief in any forum is invalid and unenforceable under California law.  *Id.*

After Google filed its motion to compel arbitration, Plaintiff amended its complaint to add a request for "Forward-Looking Public Injunctive Relief for the General Public as a Whole."  *Compare* Compl. ¶ 156 (g), (k) (omitting any request for such relief) *with* FAC ¶ 162 (adding that request).  The request essentially asks the Court to enjoin Apple and Google from engaging in the alleged anticompetitive conduct.  FAC ¶ 162.  Since the Complaint now "clearly seeks public injunctive relief," Plaintiff contends, "the *McGill* rule is implicated, and the arbitration agreement should not be enforced."  Reply at 3.

But Plaintiff's novel attempt to invoke the *McGill* rule fails at the threshold because none of Plaintiff's claims authorize it to seek public injunctive relief in the first place.  "The public injunction is a creature of California law," and, as interpreted by California courts, it is authorized by certain California unfair competition and consumer protection statutes.  *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 919 (N.D. Cal. 2020).  The *McGill* rule, in turn, is a state law doctrine that protects public injunctions already available under those statutes.  *See McGill*, 216 Cal. Rptr. 3d at 638, 393 P.3d at 94 (reasoning that enforcing a contract to waive a party's right to seek "the public injunctive relief *available under the UCL, the CLRA, and the false advertising law*" would "seriously compromise the public purposes the statutes were intended to serve") (emphasis added).

1   Nothing in the California Supreme Court's decision in *McGill* purports to extend its reach to

2   claims that arise under the law of other jurisdictions.

3       The Amended Complaint, meanwhile, raises no California state law claims.  It instead

4   raises two *federal* antitrust claims pursuant to Sections 4 and 16 of the Clayton Antitrust Act (15

5   U.S.C. §§ 15, 26).  *See* FAC ¶¶ 1, 44.  Plaintiff has not identified a single case where the *McGill*

6   rule was invoked to protect federal claims, and the Court is aware of none.  In short, while the

7   Amended Complaint nominally requests public injunctive relief, it does not premise that request

8   on a California statute that authorizes such relief.  The Court accordingly finds no basis in *McGill*

9   to bar enforcement of the parties' arbitration agreement.  *See, e.g.*, *In re Nat'l Football League's*

10  *Sunday Ticket Antitrust Litig.*, No. ML15-2668-PSG-JEMX, 2021 WL 2350814, at *7 (C.D. Cal.

11  Apr. 20, 2021) (finding the *McGill* rule "irrelevant" where the complaint does not raise CLRA,

12  UCL, or FAL claims); *In re Google Digital Advert. Antitrust Litig.*, No. 20-CV-03556-BLF, 2021

13  WL 2021990, at *7 (N.D. Cal. May 13, 2021) ("The Court credits Defendants' concern that [the

14  plaintiffs] may not seek public injunctive relief under the Sherman Act.").

15      At oral argument, Plaintiff's counsel for the first time suggested that he could remedy this

16  issue by (again) amending the Complaint to add a Cartwright Act claim, which he contends would

17  then authorize Plaintiff to seek public injunctive relief.  But any such amendment would not

18  change the Court's conclusion.  *See Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015)

19  ("the general rule that parties are allowed to amend their pleadings does not extend to cases in

20  which any amendment would be an exercise in futility") (cleaned up).  This is primarily because,

21  to the Court's knowledge, no court has interpreted the Cartwright Act (or any other law other than

22  the UCL, CLRA, and FAL) to authorize the distinct kind of public injunctive relief addressed in

23  *McGill*.

24      Even if the Cartwright Act could generally be read to authorize public injunctive relief, the

25  specific claims Plaintiff seeks to raise would still not authorize such relief.  Both the California

26  Supreme Court and the Ninth Circuit have made clear that public injunctive relief cannot be

27  sought in pursuit of representative claims or for the benefit of a discrete subset of similarly

28  situated persons.  *See McGill*, 2 Cal. 5th at 959-60, 393 P.3d at 93 ("we also conclude that a

United States District Court
Northern District of California

request for [public injunctive] relief does not constitute the pursuit of representative claims or relief on behalf of others"); *Hodges*, 21 F.4th at 548 ("[W]e reaffirm that non-waivable 'public injunctive relief' within the meaning of the *McGill* rule refers to prospective injunctive relief that aims to restrain future violations of law for the benefit of the general public as a whole, *rather than a discrete subset of similarly situated persons*, and that does so without requiring consideration of the individual claims of non-parties.").  Plaintiff's antitrust claims here, however, seek relief on behalf of itself and other "consumers and businesses who paid Google to place advertising on Google search in the United States since January 1, 2005," on the ground that those individuals and entities paid inflated prices for advertising services and therefore are entitled to recoup their past losses.  FAC ¶ 65.  In the Court's view, these are paradigmatic "representative claims" that would primarily benefit a discrete set of similarly-situated persons—namely, individuals or entities that have paid to advertise on Google's services.  To the extent the public would benefit from these claims, it would be collaterally, not primarily.  *See Hodges*, 21 F.4th at 546 ("[T]he existence of an incidental benefit to the general public is not enough to classify that relief as non-waivable public injunctive relief.") (citations omitted); *see also Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018) (concluding that the relief sought was not public injunctive relief because "any benefit to the *public* would be derivate of and ancillary to the benefit to DoorDash's *employees*").  The Court's conclusion is thus reinforced: Plaintiff cannot evade its plainly valid arbitration agreement by tacking on the label of "public injunctive relief."

In the end, a valid arbitration agreement exists and covers the dispute at issue in this case. The FAA accordingly requires this Court "to compel arbitration in accordance with the terms of the agreement."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 1748 (2011) (internal quotation marks omitted).  Google's motion is therefore **GRANTED.**  Once an arbitration agreement is found to be valid, enforceable, and applicable, the court shall stay the action pending the outcome of the arbitration or dismiss the action.  9 U.S.C. § 3; *Sparkling v. Hoddwan Constr. Co. Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).  Having found that the arbitration agreement is valid, enforceable, and Plaintiff's claims fall within the scope of the agreement, the

8

1   Court **STAYS** Plaintiff's claims against Google pending the outcome of arbitration.

2       **B.**    **Apple's Motion to Stay Pending Arbitration**

3       Having ordered that Plaintiff's claims against Google be compelled to arbitration, the

4   Court turns to Apple's request to stay the claims against it pending arbitration.  *See* Dkt. No. 34.

5   This request is denied.

6       Under Section 3 of the FAA, a stay is mandatory as to the parties to the arbitration

7   agreement.  *See* 9 U.S.C. § 3.  As to litigants who are not parties to the arbitration agreement,

8   however, the court may stay the litigation as a matter of discretion to await the outcome of the

9   pending arbitration.  When exercising its discretionary power to stay, a court must weigh the

10  "competing interests which will be affected by the granting or refusal to grant a stay," among

11  which are "the possible damage which may result from the granting of a stay, the hardship or

12  inequity which a party may suffer in being required to go forward, and the orderly course of

13  justice measured in terms of the simplifying or complicating of issues, proof, and questions of law

14  which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110

15  (9th Cir. 2005) (quoting *CMAX Inc. v. Hall*, 200 F.2d 265, 268 (9th Cir. 1962)).  The Ninth Circuit

16  has noted "a preference for proceeding with the non-arbitrable claims when feasible." *See Gray v.*

17  *SEIU*, No. 20-CV-01980-JSW, 2020 WL 12228937, at *5 (N.D. Cal. Aug. 5, 2020) (citing *United*

18  *Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 Fed. Appx. 412, 415 (9th Cir. 2002)).  A court

19  should accordingly stay "only when doing so would serve some legitimate interest of the parties or

20  the court." *Id.*

21      Apple contends that a stay of the remaining claims against it is warranted here because (i)

22  the potential damage to Plaintiff from such a stay is minimal if not nonexistent; (ii) there is a real

23  risk of inconsistent rulings if both arbitration and litigation were to proceed in parallel; and (iii) a

24  stay would promote the orderly course of justice.  Dkt. No. 34 at 2.

25      Neither party has identified concrete prejudice (beyond simple delay) that would result

26  from either staying or declining to stay this case, so the Court's decision is premised on concerns

27  of efficiency and judicial economy.  On those fronts, the Court agrees with Apple that there is a

28  risk of inconsistent rulings.  Since Plaintiff asserts identical conspiracy claims against both Apple

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1   and Google, and the claims arise out of the same underlying facts, both an arbitrator and this Court

2   will have to decide similar questions of law and fact to determine whether Google and Apple

3   conspired in violation of Sections 1 and 2 of the Sherman Act.

4         But in a case like this, that redundancy seems inevitable.  A stay is generally "appropriate

5   where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will

6   depend upon the arbitrator's decision."  *United Commc'ns Hub*, 46 Fed. Appx. at 415 (quoting

7   *Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d 986, 997 (D. Minn. 1999)).  Here,

8   however, Apple does not contend that the arbitrator's findings of fact or law in Plaintiff's

9   arbitration against Google would be binding on this Court or otherwise have any impact on the

10   non-arbitrable claims left here.[3]  Since Plaintiff and Apple will presumably need to eventually

11   litigate the remaining non-arbitrable claims irrespective of whatever happens in the arbitration,

12   proceeding with this lawsuit would not waste judicial resources.  To the contrary, staying the non-

13   arbitrable claims would only serve to needlessly delay their resolution.  In these circumstances,

14   where one alleged co-conspirator has an enforceable arbitration agreement and the other does not,

15   the possibility that parallel proceedings could produce inconsistent results is simply inevitable.

16   Without more, that risk does not require granting a stay.  As such, Apple has not identified how

17   time and effort could be saved by staying the non-arbitrable claims.

18         Having considered the parties' arguments, the Court finds that Apple fails to show that a

19   stay would simplify the legal and factual issues in this lawsuit or otherwise promote the orderly

20   course of justice.  Apple's Motion is **DENIED.**

21   *//*

22   *//*

23

---

24   [3] *See Glob. Live Events v. Ja-Tail Enterprises, LLC*, No. CV 13-8293 SVW, 2014 WL 1830998, at
*6 (C.D. Cal. May 8, 2014) ("Inconsistent verdicts are possible whether the trial precedes the

25   arbitration or vice-versa, and can be avoided only if the second forum gives preclusive effect to
the judgment of the first forum."); *Chen v. Bank of Am., N.A.*, No. CV 19-6941-MWF (SK), 2020

26   WL 4561658, at *3 (C.D. Cal. Mar. 31, 2020) ("As the arbitration is not binding on the Court, the
arbitrator's decision will not necessarily impact the outcome of the non-arbitrable claims.");

27   *Congdon v. Uber Techs.*, 226 F. Supp. 3d 983, 991 (N.D. Cal. 2016) (defendant "has not presented
the Court with any authority indicating that the decision of the arbitrators . . . would in some way

28   bind the Court").

## IV.    CONCLUSION

The Court **GRANTS** Google's Motion to Compel Arbitration and **STAYS** Plaintiff's claims against Google pending the outcome of arbitration.  Plaintiff and Google are further **DIRECTED** to file a status report with the Court every 120 days from the date of this order and notify the Court within 48 hours of the completion of arbitration.  The Court shall retain jurisdiction to confirm the arbitration award and enter judgment, if any, for purposes of enforcement.

The Court **DENIES** Apple's Motion to Stay Pending Arbitration.  As to Defendants' pending motion to dismiss the Amended Complaint, Plaintiff and Apple may file a supplemental brief that addresses whether the Amended Complaint states plausible claims against Apple, specifically.  Any supplemental brief may not exceed ten pages and is due on August 25, 2022.  Neither party may file a reply brief.

**IT IS SO ORDERED.**

Dated: 8/12/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge