Jack P. DiCanio (SBN 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4660
Facsimile: (213) 621-5430
Email: jack.dicanio@skadden.com

Karen Hoffman Lent (admitted *pro hac vice*)
Michael A. Lanci (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
Email: karen.lent@skadden.com
Email: michael.lanci@skadden.com

Steven C. Sunshine (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

*Attorneys for Defendants Apple Inc. and Tim Cook*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| CALIFORNIA CRANE SCHOOL, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, ALPHABET INC., XXVI HOLDINGS INC., APPLE INC., TIM COOK, SUNDAR PICHAI, and ERIC SCHMIDT,<br><br>Defendants. | CASE NO. 4:21-cv-10001-HSG<br><br>**APPLE DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date: September 29, 2022<br>Time: 2:00 p.m.<br>Place: Courtroom 2<br>Judge: Hon. Haywood S. Gilliam, Jr. |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 1

    A. Plaintiff's Section 1 and Section 2 Claims Fail Because Plaintiff Does Not Allege a Plausible Horizontal Conspiracy ................................................................ 1

    B. Plaintiff's Section 2 Claim Must Be Dismissed Because Plaintiff Does Not Plausibly Allege That Apple Possessed the Requisite Specific Intent ....................... 3

    C. Plaintiff's Section 1 and Section 2 Claims Must Be Dismissed Because Plaintiff Fails to Establish Antitrust Standing ............................................................ 4

III. CONCLUSION .................................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Ad Management, Inc. v. General Telephone Co. of California*,
    190 F.3d 1051 (9th Cir. 1999) ............................................................................................ 5, 6, 7

*A-World Trade, Inc. v. Apmex, Inc.*,
    No. 21-55262, 2022 WL 1262010 (9th Cir. Apr. 28, 2022) ................................................... 2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 2, 3

*Bubar v. Ampco Foods, Inc.*,
    752 F.2d 445 (9th Cir. 1985) ................................................................................................... 6

*City of Oakland v. Oakland Raiders*,
    20 F.4th 441 (9th Cir. 2021) ................................................................................................... 7

*City of Pittsburgh v. West Penn Power Co.*,
    147 F.3d 256 (3d Cir. 1998) ................................................................................................... 7

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ................................................................................................... 2

*Federal Trade Commission v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ................................................................................................... 5

*G.U.E. Tech, LLC v. Panasonic Avionics Corp.*,
    No. SACV 15-00789-CJC(DFMx), 2015 WL 12696203 (C.D. Cal. Sept. 15, 2015) ............ 5

*Innovation Marine Protein, LLC v. Pacific Seafood Group*,
    No. 6:17-cv-00815-MC, 2018 WL 1461501 (D. Or. Mar. 23, 2018) ..................................... 7

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................................................ 2, 7

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) ................................................................................................. 3

*Prime Healthcare Services, Inc. v. Service Employees International Union*,
    No. 11-cv-2652-GPC-RBB, 2013 WL 3873074 (S.D. Cal. July 25, 2013), *aff'd*, 642
    F. App'x 665 (9th Cir. 2016) ................................................................................................... 3

*Ramsey v. National Ass'n of Music Merchants* (*In re Musical Instruments & Equipment
    Antitrust Litig.*),
    798 F.3d 1186 (9th Cir. 2015) ................................................................................................. 2

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ............................................................................................... 4

*Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*,
   405 F. Supp. 2d 1141 (C.D. Cal. 2005), *aff'd in part*, 294 F. App'x 271 (9th Cir.
   2008) ..................................................................................................................................... 4

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
   No. CV F 09-0560 LJO SMS, 2011 WL 2678879 (E.D. Cal. July 7, 2011) .......................... 4

*Ticketmaster LLC v. Designer Tickets & Tours, Inc.*,
   No. CV 07-1092 ABC (JCx), 2008 WL 649804 (C.D. Cal. Mar. 10, 2008) ......................... 5

*Toscano v. PGA Tour, Inc.*,
   201 F. Supp. 2d 1106 (E.D. Cal. 2002) ................................................................................. 6

**Statutes**

15 U.S.C. § 15b .................................................................................................................................. 8

## I. INTRODUCTION

Plaintiff's Amended Complaint should be dismissed for all the reasons set forth in Defendants' Motion to Dismiss.[1] *See* Defs.' Mot. to Dismiss Pl.'s Amended Complaint ("Mot." or "Motion to Dismiss"), ECF No. 51; Defs.' Reply in Support of Mot. to Dismiss Pl.'s Amended Complaint ("Reply"), ECF No. 64.  But with the scope of the Court's review now focused on Plaintiff's allegations against Apple alone, certain infirmities in Plaintiff's Amended Complaint merit further emphasis.  First, Plaintiff's Amended Complaint asserts implausible conspiracy claims based on no more than conclusory assertions that ignore obvious alternative explanations for the Apple Defendants' alleged conduct.  Mot. 7–13.  Second, Plaintiff advances a Sherman Act conspiracy-to-monopolize claim without any plausible allegations addressing whether the Apple Defendants specifically intended to empower Google—the only entity even alleged to participate in any market potentially at issue—or itself with monopoly power.  Mot. 15–16.  Finally, Plaintiff fails to establish antitrust standing, relying on an impermissibly tenuous and speculative theory of injury.  Mot. 16–21.  Plaintiff's Opposition, which largely pasted verbatim from Plaintiff's Amended Complaint and relies on decades-old, inapposite caselaw, *see* Pl.'s Opp'n To Defs.' Mot. To Dismiss Pl.'s Amended Complaint ("Opp'n"), ECF No. 63, did nothing to move the needle in Plaintiff's favor on any of these independent grounds for dismissal.  The case should therefore be dismissed.

## II. ARGUMENT

### A. Plaintiff's Section 1 and Section 2 Claims Fail Because Plaintiff Does Not Allege a Plausible Horizontal Conspiracy

Plaintiff's Section 1 and Section 2 claims are both deficient because the Amended Complaint does not plausibly allege evidentiary facts to support Plaintiff's assertion that Apple and Google entered into an unlawful horizontal agreement not to compete.  Mot. 7–13; Reply 1–5.  Whether the alleged anticompetitive conduct at issue "stem[s] from independent decision or from an agreement, tacit or express" is the "crucial question" in cases involving claims of a horizontal conspiracy under

---

[1] Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt collectively are referred to herein as "Google," or the "Google Defendants," unless otherwise noted. Similarly, Defendants Apple Inc. ("Apple") and Tim Cook are together referred to herein as the "Apple Defendants," unless otherwise noted.

-1-

the Sherman Act.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (alteration in original) (citation omitted).  To that end, a plaintiff raising such claims must plead "evidentiary facts," *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047–48 (9th Cir. 2008), that either directly or circumstantially support the existence of an unlawful agreement, *see Ramsey v. Nat'l Ass'n of Music Merchs.* (*In re Musical Instruments & Equip. Antitrust Litig.*), 798 F.3d 1186, 1193 (9th Cir. 2015).

As the Apple Defendants explained in their Motion to Dismiss, Plaintiff provides no such facts here.  Mot. 7–13; Reply 1–6.  Instead, Plaintiff conjures a horizontal agreement not to compete from scattered (and, in many cases, innocuous and public) comments made over the course of almost two decades, *see* Am. Compl. ¶ 80, ECF No. 39, "secret meetings" between executives that were held in plain view at public restaurants, *see id.* ¶¶ 13, 101, 103, 124–25, and a nonexclusive *vertical* agreement between two companies with complementary, not competing, assets, *see id.* ¶¶ 89–93, 95.  These allegations are simply insufficient to state any sort of conspiracy claim.

Critically, in concocting the alleged horizontal agreement not to compete, Plaintiff ignores numerous "obvious alternative explanation[s]" for Apple's alleged conduct.  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citation omitted).  One such obvious alternative explanation is that Apple integrated Google Search into its products for procompetitive purposes—*i.e.*, to offer better products in markets in which (unlike the "search business") it actually *does* participate.  *See A-World Trade, Inc. v. Apmex, Inc.*, No. 21-55262, 2022 WL 1262010, at *1–2 (9th Cir. Apr. 28, 2022) (memorandum opinion) (explaining that an "obvious alternative explanation" for the defendant's alleged conduct was its participation in a related program for "rational, economic reasons" such as "to obtain a higher volume of sales").  After all, as the Amended Complaint concedes, Apple is a *device manufacturer and web browser developer*.  *See* Am. Compl. ¶¶ 72, 95.  It is therefore unsurprising that, as Plaintiff notes, Apple would integrate a supplier's search product—like Google Search—into its Safari web browser, its Siri voice assistant, and its Spotlight system-wide desktop search feature, *see id.* ¶¶ 89, 92, to improve those products and features.  Another obvious alternative explanation is that Apple's and Google's executives met in connection with that procompetitive vertical arrangement.  *See In re Musical Instruments*, 798 F.3d at 1196–97 (declining to infer an unlawful agreement from mere communications between

executives). And yet another is that Apple independently opted to focus its resources on improving the user experience on its existing products and services instead of on developing a general internet search engine. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1130 (9th Cir. 2015) (explaining that an anticompetitive agreement cannot be inferred from facts that "just as easily suggest rational, legal business behavior" (citation omitted)).

Plaintiff's conclusory allegations of a horizontal agreement are precisely the sort of allegations that *Twombly* and its progeny held are insufficient to support Sherman Act claims. 550 U.S. at 557 (explaining that "conclusory allegation[s] of agreement at some unidentified point do[] not supply facts adequate to show illegality").[2] Plaintiff's failure to plead any nonconclusory facts supporting such an agreement requires dismissal of *both* its conspiracy-based Sherman Act claims. *See Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, No. 11-cv-2652-GPC-RBB, 2013 WL 3873074, at *16 (S.D. Cal. July 25, 2013) (dismissing Section 2 conspiracy-to-monopolize claim where plaintiff "failed to plead the existence of a conspiracy for [a] Section 1 violation"), *aff'd*, 642 F. App'x 665 (9th Cir. 2016).[3]

### B. Plaintiff's Section 2 Claim Must Be Dismissed Because Plaintiff Does Not Plausibly Allege That Apple Possessed the Requisite Specific Intent

Plaintiff's Section 2 claim also must be dismissed because the Amended Complaint lacks plausible factual allegations that the Apple Defendants had the requisite specific intent to empower Google—the only entity in this action even alleged to participate in any market potentially at issue— or itself with monopoly power. Mot. 15–16; Reply 7–8. To state a claim under Section 2 of the

---

[2] Plaintiff may try—as it improperly attempted to do in its portion of the Joint Case Management Statement, ECF No. 83 at 2—to suggest that its allegations are rendered plausible because of statements Google made in its answer to the complaint in a separate action, *United States v. Google*, Case No. 1:20-cv-03010-APM (D.D.C). However, the Government does not allege a horizontal conspiracy in that case, nor is Apple a defendant. In particular, the Government's allegations—which address alleged single-firm conduct by Google only—say nothing about a supposed conspiracy with Apple not to compete. Google's answer in that case has no bearing whatsoever on this case against Apple.

[3] As the Apple Defendants explained, both of Plaintiff's claims are also deficient as against Mr. Cook because the Amended Complaint does not plausibly allege his direct participation in, knowing approval of, or ratification of inherently wrongful conduct. Mot. 13–14 & n.6 (citing *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1050–51 (N.D. Cal. 2021); *Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co.*, 467 F. Supp. 841, 851–54 (N.D. Cal. 1979), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981)).

Sherman Act, a plaintiff must plausibly allege that the defendants specifically intended "to empower one of them with monopoly power," *Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*, 405 F. Supp. 2d 1141, 1152 (C.D. Cal. 2005), *aff'd in part*, 294 F. App'x 271 (9th Cir. 2008), "by destroying or excluding competition within the relevant market." *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. CV F 09-0560 LJO SMS, 2011 WL 2678879, at *12 (E.D. Cal. July 7, 2011).

The Amended Complaint wholly lacks allegations addressing any such intent by the Apple Defendants. *See* Mot. 15–16; Reply 7–8. As far as the Apple Defendants' conduct is concerned, all the Amended Complaint alleges is that Apple agreed to set Google as the nonexclusive, out-of-the-box general internet search engine on its Safari web browser and devices. Am. Compl. ¶¶ 89–93, 95. The Amended Complaint even concedes that Apple permits consumers to freely "change the [default] search provider on their devices after the devices have been purchased." *See id.* ¶ 117. This nonexclusive conduct cannot give rise to an inference that Apple possessed the requisite intent either for itself or for Google to monopolize any relevant market,[4] as even *exclusive* distributorships (*i.e.*, more restrictive arrangements than are at issue here) are "not, standing alone, a violation of antitrust laws." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735–36 (9th Cir. 1987) (holding that an allegation of specific intent involving exclusive distributorship was "conclusory in the absence of anticompetitive conduct from which . . . specific intent may be inferred"). Plaintiff's Section 2 claim accordingly must be dismissed.

### C. Plaintiff's Section 1 and Section 2 Claims Must Be Dismissed Because Plaintiff Fails to Establish Antitrust Standing

Plaintiff's Sherman Act claims must be dismissed as against the Apple Defendants because Plaintiff lacks antitrust standing. Mot. 16–21; Reply 8–12. To determine whether a plaintiff has antitrust standing, courts consider several factors, including (1) whether the plaintiff can establish antitrust injury, (2) the directness of that injury, (3) the speculative measure of the harm the plaintiff incurred, (4) the risk of duplicative recovery, and (5) the complexity in apportioning damages. *Am.*

---

[4] Notably, as regards a relevant market, and as the Apple Defendants' Motion to Dismiss explained, Plaintiff's relevant market allegations are flawed and insufficient—yet another (independent) reason to dismiss Plaintiff's Section 2 claim. Mot. 14–15; Reply 6–7.

*Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054–55 (9th Cir. 1999).  While Plaintiff's Amended Complaint is defective under each of the established antitrust standing factors, three factors in particular illustrate why Plaintiff cannot claim to have standing to sue the Apple Defendants in this action: (i) Plaintiff's failure to plead antitrust injury, (ii) Plaintiff's lack of direct injury, and (iii) the speculative measure of the "harm" that Plaintiff attempts to trace back to the Apple Defendants.

*First*, Plaintiff does not plead facts sufficient to establish antitrust injury—a "necessary, but not always sufficient," predicate for antitrust standing.  *Id.* at 1055 (quoting *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986)).  Among other things, "[a]ntitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained."  *Id.* at 1057.  "Parties whose injuries . . . are experienced in another market do not suffer antitrust injury."  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (quoting *Am. Ad Mgmt.*, 190 F.3d at 1057).  Here, there is a mismatch between the market allegedly subject to any restraint and the market in which Plaintiff supposedly experienced its injuries.

On the one hand, Plaintiff alleges an unlawful restraint in an inadequately defined "search market" and that Defendants conspired to monopolize the "search business."  Am. Compl. ¶¶ 94, 136.  But on the other hand, Plaintiff claims that it suffered injury by purchasing search *advertising* placements from Google at inflated rates—*i.e.*, in a still inadequately defined "search advertising market."  *See id.* ¶¶ 48, 118, 134, 145, 147.  In short, Plaintiff's purported injury in the "search advertising market" occurred outside the "search market" in which Plaintiff alleges the anticompetitive restraint took place.  Plaintiff offers the assertion that Apple "had been working on its own search engine," *id.* ¶ 127, but that says nothing at all about any efforts or any intention by Apple to develop search *advertising* capabilities.  *See G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, No. SACV 15-00789-CJC(DFMx), 2015 WL 12696203, at *3 (C.D. Cal. Sept. 15, 2015).  And Plaintiff offers no explanation for why the markets it references should be assessed as a single market for purposes of antitrust law.  *See Ticketmaster LLC v. Designer Tickets & Tours, Inc.*, No. CV 07-1092 ABC (JCx), 2008 WL 649804, at *3–4 (C.D. Cal. Mar. 10, 2008) (dismissing antitrust claim where claimant participated in downstream ticket sales market and not in allegedly monopolized primary ticket distribution market).

*Second*, Plaintiff's allegations also cannot support antitrust standing because Plaintiff cannot establish that its alleged injury "was the direct result of [the defendant's] allegedly anticompetitive conduct." *Am. Ad Mgmt.*, 190 F.3d at 1058. That is, Plaintiff's purported injury is prohibitively indirect. To assess directness, courts "look to the chain of causation between [that] injury and the alleged restraint in the market." *Id.* As explained above, Plaintiff alleges that it suffered direct injury because it purchased search advertising placements from Google at rates that were inflated by Apple's and Google's supposed agreement not to compete with one another. Am. Compl. ¶ 48; Opp'n 18–19. But saying it had a direct injury does not make it so. In fact, Plaintiff's theory of injury depends on a tenuous series of implausible assumptions, including that Apple "had been working on its own search engine," *id.* ¶ 127—*i.e.*, that Apple would enter a market for general search services. *Cf. Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 450 (9th Cir. 1985) (explaining that an entity could not be considered a potential competitor without "a genuine intent to enter the market and a preparedness to do so"). It also depends on the assumption that Apple would have developed a corresponding search advertising business that, in turn, would have driven down the prices for search advertising placements. Yet, again, Plaintiff does not even allege any intention by Apple to develop search advertising capabilities—*i.e.*, that Apple would enter a market for search advertising.[5] *See Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1117 (E.D. Cal. 2002) (finding "no direct injury" where plaintiff's claims depended on "a multitude of speculative intervening events"). Plaintiff's inability to establish a direct injury weighs strongly against any notion that it has antitrust standing here and accordingly militates in favor of dismissal of its antitrust claims.

*Third*, and for these same reasons, Plaintiff's theory of harm is impermissibly speculative and cannot support antitrust standing. In considering the speculative measure of harm prong of antitrust standing, courts consider whether "the alleged injury was indirect" and whether "the alleged effects . . . may have been produced by independent factors." *Am. Ad Mgmt.*, 190 F.3d at 1059 (omission

---

[5] Indeed, as set forth in Defendants' Motion to Dismiss, even if Plaintiff had alleged that Apple had any intention of offering search advertising services, Plaintiff's injury would still be premised on an impermissibly speculative chain of causation that would require it to demonstrate (1) that Apple would have developed a search engine, (2) that Apple's search engine would have been successful, (3) that consumers would use Apple's search engine, (4) that Apple would have developed a corresponding search advertising business, and (5) that Apple's search advertising business would have driven down the prices for search advertising placements. Mot. 19.

in original) (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 542 (1983)).  Given the "many speculative links in the chain of causation" that would be required under Plaintiff's theory, there can be "no way of knowing[] what would have occurred" but for Defendants' alleged conduct, including whether Plaintiff "would have avoided the harm it alleges."  *See City of Oakland v. Oakland Raiders*, 20 F.4th 441, 459–61 (9th Cir. 2021) (finding that the plaintiff's damages were inherently speculative for the same reasons that the plaintiff could not establish directness).  This factor, too, thus strongly weighs against Plaintiff's ability to plead antitrust standing here, and likewise supports dismissal.  *See City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 268–69 (3d Cir. 1998) (explaining that alleged injuries, including "non-competitive rates," were speculative where they "may never occur" and finding "no direct link" between those injuries and alleged agreement whereby one defendant would withdraw an application for regulatory approval and the other defendant would allegedly charge higher, noncompetitive rates for electric utility service).

Taken together, these factors demonstrate that Plaintiff lacks antitrust standing:  Plaintiff's indirect and speculative injuries cannot support its claims against the Apple Defendants.  Ultimately, no amount of repleading could remedy these deficiencies because it would not make Apple a successful general internet search provider or provider of search advertising services.  Plaintiff's claims therefore must be dismissed with prejudice for lack of antitrust standing—that is, a participant in the only theoretical markets that Plaintiff alleges a restraint.  *Cf. Innovation Marine Protein, LLC v. Pac. Seafood Grp.*, No. 6:17-cv-00815-MC, 2018 WL 1461501, at *12 (D. Or. Mar. 23, 2018) (dismissing antitrust action with prejudice for lack of antitrust standing where "[n]o amount of repleading [would] turn [the plaintiff] into a participant in the relevant market").

### III.     CONCLUSION

For the foregoing reasons, and for the reasons articulated in the Apple Defendants' Motion to Dismiss the Complaint and Reply in Support of their Motion to Dismiss the Complaint, this Court should dismiss Plaintiff's Complaint with prejudice for failure to state a claim.  *Kendall*, 518 F.3d at 1051–52 (explaining that "[d]ismissal without leave to amend is proper if it is clear that the complaint

could not be saved by amendment" and affirming dismissal with prejudice where the plaintiffs "were already granted leave to amend once").[6]

DATED:  August 25, 2022                     By: /s/ *Steven C. Sunshine*

<div style="margin-left: 3em;">

Steven C. Sunshine (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

Jack P. DiCanio (SBN 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4660
Facsimile: (213) 621-5430
Email: jack.dicanio@skadden.com

Karen Hoffman Lent (admitted *pro hac vice*)
Michael A. Lanci (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
Email: karen.lent@skadden.com
Email: michael.lanci@skadden.com

*Attorneys for Defendants Apple Inc. and Tim Cook*

</div>

---

[6] Even if the Court does not outright dismiss Plaintiff's claims, Defendants' Motion to Dismiss also demonstrated that the Court should limit the relief Plaintiff seeks.  For one thing, the four-year limitations period under Section 4 of the Clayton Act, 15 U.S.C. § 15b, precludes damages predating December 27, 2017.  Mot. 21–24.  For another, Plaintiff's requests for injunctive relief are wholly defective, as they all rely on Plaintiff's novel theory of public injunctive relief, Mot. 25, which this Court has already held to be deficient, *see* ECF No. 86 at 5–8.

**SIGNATURE ATTESTATION**

Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that I have obtained the concurrence in the filing of this document from all the signatories for whom a signature is indicated by a "conformed" signature (/s/) within this e-filed document, and I have on file records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request.

DATED:  August 25, 2022                    By: /s/ *Steven C. Sunshine*