1   Joseph M. Alioto (SBN 42680)
2   Tatiana V. Wallace, Esq. (SBN 233939)
    ALIOTO LAW FIRM
3   One Sansome Street, 35th Floor
    San Francisco, CA  94104
4   Telephone:  (415) 434-8900
    Email:  jmalioto@aliotolaw.com
5

6   [Additional Counsel Listed on Last Page]

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11  CALIFORNIA CRANE SCHOOL, INC.,        Case No:  4:21-cv-10001 HSG
12  on behalf of itself and all others similarly
    situated,
13                                        SUPPLEMENTAL MEMORANDUM OF
                    Plaintiff,            PLAINTIFF IN OPPOSITION TO
14                                        DEFENDANTS' MOTIONS TO DISMISS
    vs.
15
16  GOOGLE LLC, ALPHABET, INC., XXVI      Hearing Date:  September 29, 2022
    HOLDINGS, INC., APPLE, INC., TIM      Time:          2:00 p.m.
17  COOK, SUNDAR PICHAI, and ERIC         Place:         Courtroom 2
    SCHMIDT,                              Judge:         Hon. Haywood S. Gilliam Jr.
18
19                  Defendants.
20

21

22

23          Plaintiff California Crane School, Inc. respectfully submits this supplemental

24  memorandum as permitted by Order of the Court on August 12, 2022 addressing "whether the

25  Amended Complaint states plausible claims against Apple, specifically."

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STANDARD OF REVIEW

The Supreme Court has held that antitrust plaintiffs are entitled to every inference that

may fairly be drawn from the facts:

> "The Court of Appeals was, of course, bound to view the evidence in the light most
> favorable to Continental and to give it the benefit of all inferences which the evidence
> fairly supports, <u>even though contrary inferences might reasonably be drawn</u>."
> *Continental Ore Co. et al. v. Union Carbide and Carbon Corp*., 370 U.S. 690 (1962)
> (emphasis added).

And in the Court of Appeals, the Ninth Circuit has held: "[V]iewing the totality of the

alleged circumstances <u>in the light most favorable</u> to [plaintiff], the complaint puts forth

'enough facts to state a claim for relief that is plausible on its face.' Our notice pleading

requirements do not require more." *Johnson v. Riverside Healthcare Sys*., 534 F.3d 1116,

1123 (9th Cir. 2008) (quoting *Twombly*, supra)(emphasis added).

ARGUMENT

1.      <u>The Amended Complaint States a Claim By Alleging that Google, A</u>

<u>Competitor, Paid Billions Per Year in Revenue Sharing to Apple, a Potential Competitor, in a</u>

<u>Per Se Horizontal Conspiracy to Divide the Search Business Between Them</u>

a.      <u>Defendants Admit That Google Paid Apple For Default Position</u>

At page 4, lines 15-22 of their Memorandum in Support ("MPA"), Defendants admit:

> "The existence of these commercial agreements, first entered into years before
> the launch of the iPhone and iPad, has been public knowledge since their inception.
> The pre-set default search engine, like other search engines integrated into Safari,
> has, of course been visible to anyone using the Safari web browser on an Apple
> device in the United States, and the fact that Google has made payments to Apple
> under the agreement has been widely reported. *Id.* [now Am. Compl.] ¶¶31-39"
> Unsurprisingly, Apple and Google executives have met numerous times over the
> years as part of the ongoing working relationship created by these agreements.  *Id.*
> ¶¶ 101, 103, 121, 124-25."

The admitted revenue-sharing agreement between Google and Apple, standing alone,

constituts a violation of Sherman Section 1 (*see Citizen Publishing Company v. United States*,

394 U.S. 131, 135-136 (1969) and *Palmer v. BRG of Georgia, Inc*., 498 U.S. 46 (1990)) and

satisfies the plausibility pleading standard of *Ashcroft v. Iqbal*, 556 U. S. 662 (2009) and *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Although revenue-sharing is a *per se* violation

by itself – as is a division of market – the Defendants' practice of sharing revenue in the

billions of dollars plainly supports the reasonable inference, as alleged, that "Google paid

Apple to stay out of the search business" ( ¶¶40-41) – an allegations that must be taken as true.

*Simon v. Hartford Life Ins. Co.,* 546 F.3d 664 (9th Cir. 2008).

       b.  Apple Is A Potential Horizontal Competitor Of Google

   The Amended Complaint alleges a potential horizontal relationship between Google as

a competitor in the search business paying Apple, as a potential competitor, billions of

dollars per year in admitted revenue sharing (¶¶108- 110):

> ¶108: "In the past, Apple had actively worked on developing its own general search engine as a potential competitor to Google.  As a result, Apple is a potential direct competitor of Google in the search business and potentially threatens Google's dominance in the search business but for its agreement not to compete with Google and to share profits with Google."

> ¶109: "It has been estimated that if Apple were to launch its own search engine in competition with Google, at least $15 billion a year of Google revenue would  go to Apple."

> ¶110: "Apple is the major threat to Google as a potential competitor in the search business."

> ¶115: "By paying billions of dollars to Apple each year, Google has locked in Apple's commitment not to compete in search."

> ¶127: "It was reported that as late as 2014 Apple had been working on its own search engine.  However, Apple opted to receive the payment of billions of dollars from Google instead of competing with Google.

In the past, Apple had actively worked on developing its own general search engine as and threatened Google's dominance in the search business opted to receive the payment of billions of dollars from Google instead of competing with Google.

The Amended Complaint therefore alleges a horizontal relationship between Google as a competitor in the search business paying Apple, as a potential competitor, billions of dollars per year in admitted revenue sharing.

Such revenue sharing between Google as a competitor and Apple as a potential competitor constitutes a *per se* violation of Section 1 of the Sherman Act. *Citizen Publishing Company v. United States*, 394 U.S. 131, 135-136 (1969); *Palmer v. BRG of Georgia, Inc*., 498 U.S. 46 (1990).

In addition, the Amended Complaint also alleges:

¶98. "The non-compete agreement, the profit-sharing agreement , and the out-of-the-box preference agreement remove any incentive on the part of Apple to compete against Apple in the search business.

¶112  "But Apple has agreed with Google that it will not develop nor offer a general search engine in competition with Google." ¶112-116.

¶115 "By paying billions of dollars to Apple each year, Google has locked in Apple's commitment not to compete in search."

In *Citizen Publishing*, the Supreme Court affirmed the district court's grant of summary judgment *for the Plaintiff* on the ground that plaintiff had proved a *per se* violation of Section 1 of the Sherman Act, stating: "Pooling of profits pursuant to an inflexible ratio at least reduces incentives to compete for circulation and advertising revenues and runs afoul of the Sherman Act. *Northern Securities Co. v. United States*, 193 U.S. 197, 328, 24 S.Ct. 436, 453, 48 L.Ed. 679 [1904]" [and] "a division of fields [is] also banned by the Act."  *Id*. at 136.

And in *Palmer v. BRG of Georgia, Inc*., 498 U.S. 46 (1990), the Supreme Court again clearly demonstrated how Defendants' agreement in this case is a violation of the law.

Under *Citizen Publishing* and *Palmer*, the revenue-sharing agreement between Google and Apple, that Defendants readily admit, is a prima facie *per se* violation of Section 1 of the Sherman Act. The fact that Defendants admit the existence of the revenue-sharing agreements between Google and Apple, alone, satisfies the plausibility standard of *Ashcroft v. Iqbal*, 556 U. S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

    2.   <u>The Inference of Conspiracy</u>

The Apple-Google written agreement alleged in the Complaint and whose existence is admitted by Defendants will prove the contours of the agreement not to compete between Apple and Google.  Once this document is uncovered through discovery and once it is presented to the Court, the document, together with the explanatory testimony of two ranking Apple and Google executives, will  prove the agreement at the heart of this case.  At this stage, however, Plaintiff has alleged that this document sets out an agreement not to compete between Apple and Google that constitutes a violation of the Sherman Act, since Plaintiff's allegations must be taken as true for purposes of the motion.

In addition, beyond the allegation of the written agreement itself, Plaintiff's additional allegations of conspiracy are sufficiently plausible to weather a motion to dismiss.

Plaintiff has alleged that Google negotiated an agreement with Apple that Google would be the default internet search engine on all Apple devices.  This agreement has been admitted by Apple.  Plaintiff has alleged that Google has paid Apple exorbitant sums for the privilege of being the default on Apple's devices and that Google has agreed to share profits with Apple for that privilege.

Plaintiff has further alleged that none of the other search engine competitors of Google could possibly match the payments that have been made to Apple and that the profit-sharing agreements between Apple and Google have in fact resulted in Apple pushing more search

1    traffic to Google and denying traffic to Google's competition. Because these payments and the

2    profit sharing were more than what would have necessarily been required to simply secure

3    default status on Apple devices, it is a logical and reasonable inference that these payments

4    and profits were paid for another additional reason:  to keep Apple from competing with

5    Google in the search advertising market, since Google knew that Apple had been exploring the

6    development of a search engine through its Siri program.

7         3.    Google's Default Position on Apple Devices Gives Google an Anticompetitive

8    Advantage Over its Competitors That is Supported by Apple

9         Google has argued that paying for the default position on Apple devices is not an

10   anticompetitive act because the Google default can easily be changed to other search engines

11   at the discretion of consumer/user.  The fact of the matter is, however, - and Plaintiff has

12   alleged - that no one ever changes the default search engine on the Apple devices once it has

13   been set – or, if it is changed at all, it is changed only very infrequently.

14        At paragraph 122 of the First Amended Complaint, Plaintiff has alleged that Tim Cook

15   had actively promoted the profit-sharing arrangement from the very beginning in exchange for

16   Apple's commitment not to compete in the search business and that Cook knew, as Google

17   admitted in a 2018 strategy document drafted internally by Google, that "People are much less

18   likely to change [the] default search engine on mobile."  As a result, the default position on

19   Apple devices was a valuable asset to Google that it jealously sought to protect.

20        Google's argument that the significance of the default position should be ignored is

21   contrary to law.  Northern Pacific R. Co. v. United States, 356 US 1, 78 S. Ct. 514 (1958) was

22   a tying case in which the government alleged that the railroads had inserted "preferential

23   routing" clauses in their contracts for the sale or lease of land adjacent to their tracks which

24   compelled the grantee or lessee to ship the commodities produced or manufactured on the land

over the defendant's railroad.  The Supreme Court decided on summary judgment in favor of the government that these "preferential routing" clauses constituted anticompetitive contracts in violation of the antitrust laws.

The railroad argued that its "preferential routing" clause, like the default clause in this case, was not anticompetitive since there was alternative means whereby the landowner could ship over competing carriers if the landowner met certain conditions.  This argument was roundly rejected by the Court which held as follows:

> The defendant contends that its "preferential routing" clauses are subject to so many exceptions and have been administered so leniently that they do not significantly restrain competition. . . . Of course if these restrictive provisions are merely harmless sieves with no tendency to restrain competition, as the defendant's argument seems to imply, it is hard to understand why it has expended so much effort in obtaining them in vast numbers and upholding their validity, or how they are of any benefit to anyone, even the defendant. But however that may be, the essential fact remains that these agreements . . . deny defendant's competitors access to the fenced-off market on the same terms as the defendant.  *Id*. at 11-12 (emphasis added).

The same is true in this case, and Defendants' arrangement to provide Google with a default position that they know will not likely be modified by the user to encompass search by its competitors in likewise an anticompetitive act that violates the Sherman Act.

The agreement to provide Google with the coveted default search position also amounts to the anticompetitive foreclosure of a significant market.  Google and Apple have in effect foreclosed Google's competitors from the internet search market to the detriment of competition as a whole, and to the detriment of Google's competitors and customers and users in particular.  This principle was highlighted in *International Salt Co. v. United States*, 332 U.S. 392 at  (1947) in which the Supreme Court ruled, while upholding the grant of summary judgment in favor of the government, that it was "unreasonable, *per se,* to foreclose competitors from any substantial market. [citing] *Fashion Originators Guild v. Federal Trade Commission,* 114 F. 2d 80 [opinion of L. Hand], affirmed, 312 U.S. 457."

Conclusion

Based upon the factual, non-conclusory allegations made in the First Amended Complaint, in order for this Court to grant Defendants' Motion to Dismiss, the Court would have to conclude, contrary to the Supreme Court opinions in *Citizens Publishing*, *supra*, and *Palmer*, *supra*, that violations for agreements not to compete and agreements to divide markets do not exist in the antitrust lexicon.  And it would have to conclude that there is no violation for conspiracy to monopolize in derogation of the Supreme Court decision in *American Tobacco Co. v. U. S.,* 328 U.S. 781, 801-810 (1946) and the Ninth Circuit's opinion in *Knutson v. Daily Review, Inc.* 548 F.2d 795 (9th Cir. 1976).

For these reasons, and for those stated in Plaintiff's Opposition to the Motion to Dismiss, and ever mindful of the Supreme Court's language in *United States v. Topco Associates*, 405 U.S. 596 (1972), set out below, as well as the Court's own expression that cases should be decided "on the merits, rather than on pleadings or technicalities" (*Molly Brown v. Natures Path Foods, Inc.,* Case No. 21-cv-05132-HSG (N.D. Cal. August 15, 2022, citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000, *en banc*)), Plaintiff submits that Defendants' Motions should be denied.

> "Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms. And the freedom guaranteed each and every business, no matter how small, is the freedom to compete— to assert with vigor, imagination, devotion, and ingenuity whatever economic muscle it can muster. Implicit in such freedom is the notion that it cannot be foreclosed with respect to one sector of the economy because certain private citizens or groups believe that such foreclosure might promote greater competition in a more important sector of the economy." *United States v. Topco Associates*, 405 U.S. 596, 610 (1972).

Dated:  August 25, 2022                    ALIOTO LAW FIRM


                                By:  */s/ Joseph M. Alioto*
                                     Joseph M. Alioto (SBN 42680)
                                     Tatiana V. Wallace (SBN 233939)
                                     One Sansome Street, Suite 3500
                                     San Francisco, CA  94104
                                     Telephone: (415) 434-8900
                                     Attorneys for Plaintiffs

ADDITIONAL PLAINTIFFS COUNSEL:

Lawrence G. Papale (SBN 67068)          Robert J. Bonsignore (SBN
LAW OFFICES OF LAWRENCE G.              BONSIGNORE TRIAL LAWYERS, PLLC
PAPALE                                  23 Forest Street
1308 Main Street, Suite 117             Medford, MA 02155
St. Helena, CA 94574                    Phone: 781-856-7650
Telephone: (707) 963-1704               Email: rbonsignore@classactions.us
Email: lgpapale@papalelaw.com


Theresa D. Moore (SBN 99978)            Josephine Alioto (SNB 282989)
LAW OFFICE OF THERESA D. MOORE PC       THE VEEN FIRM
One Sansome Street, 35th Floor          20 Haight Street
San Francisco, CA 94104                 San Francisco, CA 94102
Phone: (415) 613-1414                   Telephone: (415) 673-4800
tmoore@aliotolaw.com                    Email: jalioto@veenfirm.com


Christopher A Nedeau (SBN 81297)        Lingel H. Winters, Esq. (SBN 37759)
NEDEAU LAW PC                           LAW OFFICES OF LINGEL H. WINTERS
154 Baker Street                        388 Market St. Suite 1300
San Francisco, CA 94117-2111            San Francisco, California 94111
Telephone: (415) 516-4010               Telephone: (415) 398-2941
Email: cnedeau@nedeaulaw.net            Email: sawmill2@aol.com


Jeffrey K. Perkins (SBN 57996)
LAW OFFICES OF JEFFREY K. PERKINS
1550-G Tiburon Boulevard, #344
Tiburon, California 94920
Telephone: (415) 302-1115
Email: jeffreykperkins@aol.com