United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CRANE SCHOOL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, et al.,<br><br>Defendants. | Case No. 21-cv-10001-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 51, 90 |

Pending before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint (Dkt. No. 39, "FAC"). Dkt. No. 51 ("Mot."). The motion is fully briefed. *See* Dkt. Nos. 63 ("Opp."), 64 ("Reply"). After the motion to dismiss was filed, the Court granted Google's motion to compel arbitration and provided leave to Plaintiff and Apple to submit supplemental briefing focused on whether the FAC stated plausible claims against Apple. *See* Dkt. No. 86. Both parties submitted supplemental briefing. *See* Dkt. Nos. 88 ("Def. Supp."); 89 ("Pl. Supp.").[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below the Court **GRANTS WITH LEAVE TO AMEND** Apple's motion to dismiss.[2]

**I.   FACTUAL BACKGROUND**

Plaintiff brings a putative class action lawsuit against Apple (and Google) alleging that

---

[1] Given the procedural posture of the case, the Court will refer to "Defendant" or "Apple" in this order, even though the motion to dismiss was originally submitted by the Google and Apple defendants together.

[2] Given that the Court is granting Plaintiff leave to amend to adequately plead an antitrust claim, this order **TERMINATES AS MOOT** Plaintiff's motion to amend, Dkt. No. 90. The Court has not reached any conclusion as to the motion to amend on the merits. If Plaintiff chooses to file a second amended complaint, that complaint should include any amendments sought, and the Court will address them on any future motion to dismiss.

Apple and Google "agreed that Apple would not compete in the search business in competition with Google." FAC ¶ 2. In exchange, Plaintiff alleges that "Google agreed to share its profits from the search business with Apple and, in addition, to pay Apple extra billions of dollars." *Id.* ¶ 3. Further, "[f]or Google to be able to generate sufficient billions of dollars to pay to Apple, Apple agreed that Google would be the only search engine automatically included in all of Apple's devices." *Id.* ¶ 5. According to Plaintiff, this in turn gave "Google a substantial and unfair anticompetitive advantage over other search providers, actual and potential, including Yahoo!, DuckDuckGo, Bing, and others." *Id.* ¶ 6. Plaintiff alleges that it and the putative class "have paid more to Defendant Google to place their ads on Google's search than they would have paid in a competitive market within the United States, especially if Apple had entered the search business and competed with Google." *Id.* ¶ 45.

The FAC alleges the following violations: 1) First Claim for Relief: An Agreement Not to Compete in the Search Business, and 2) Second Claim for Relief: Conspiracy to Monopolize in Violation of Sherman Act § 2. *See id.* ¶¶ 135–57. Plaintiff also alleges fraudulent concealment. *See id.* ¶¶ 158–60. Plaintiff seeks declaratory and injunctive relief, damages, divestiture, and disgorgement. *See id.* ¶¶ 161–62.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

1  Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a
2  claim.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity
3  the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317
4  F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must identify "the who, what, when, where, and how"
5  of the alleged conduct, so as to provide defendants with sufficient information to defend against
6  the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  However, "[m]alice, intent,
7  knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.
8  Rule 9(b).

9  In reviewing the plausibility of a complaint, courts "accept factual allegations in the
10 complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
11 *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,
12 courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
13 fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
14 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

15 Even if the court concludes that a 12(b)(6) motion should be granted, the "court should
16 grant leave to amend even if no request to amend the pleading was made, unless it determines that
17 the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203
18 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

19 **B.  Antitrust Standing**
20 "Antitrust standing is distinct from Article III standing.  A plaintiff who satisfies the
21 constitutional requirement of injury in fact is not necessarily a proper party to bring a private
22 antitrust action." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1054 n.3 (9th
23 Cir. 1999) (citation omitted).  In evaluating whether a plaintiff has antitrust standing, courts
24 consider several factors, which include:

> (1) the nature of the plaintiff's alleged injury; that is, whether it was
> the type the antitrust laws were intended to forestall;
> (2) the directness of the injury;
> (3) the speculative measure of the harm;
> (4) the risk of duplicative recovery; and
> (5) the complexity in apportioning damages.

*Id.* at 1054 (citation omitted). "To conclude that there is antitrust standing, a court need not find in favor of the plaintiff on each factor . . . [but] the Supreme Court has noted that a showing of antitrust injury is necessary, [although] not always sufficient, to establish standing under § 4." *Id.* at 1055 (cleaned up and quotations omitted).

There are "four requirements for antitrust injury: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Id.*[3]

## III. DISCUSSION

### A. Plaintiff Fails to Plead Antitrust Injury

The FAC's Section 2 claims fail at the threshold because Plaintiff does not adequately allege antitrust injury.[4] "A threshold step in any antitrust case is to accurately define the relevant market, which refers to 'the area of effective competition.'" *Fed. Trade Comm'n v. Qualcomm Inc.* ("*Qualcomm*"), 969 F.3d 974, 992 (9th Cir. 2020) (quotation omitted). "[I]n assessing alleged antitrust injuries, courts must focus on anticompetitive effects 'in the market where competition is allegedly being restrained.'" *Id.* (alterations adopted) (quotation omitted). "Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Id.* (citation omitted).

Apple argues that there is a "a mismatch between the purported market allegedly restrained

---

[3] Antitrust injury is also a prerequisite for section 16 claims for injunctive relief. *See Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (concluding that "in order to seek injunctive relief under § 16, a private plaintiff must allege threatened loss or damage of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful" (quotation marks omitted)). Although the *Cargill* Court recognized that "because standing under § 16 raises no threat of multiple lawsuits or duplicative recoveries, some of the factors other than antitrust injury that are appropriate to a determination of standing under § 4 are not relevant under § 16" this did not change the fact that *antitrust injury* is required. *Id.* at 111 n.6; *see also Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1069 (E.D. Cal. 2011) (explaining that "[t]o seek injunctive relief, plaintiff must show, as relevant to this motion, that it suffered 'an antitrust injury' . . . . Antitrust injury requires that the injured party be a participant in the *same market* as the alleged malefactors" (emphasis in original) (quotations and internal citations omitted)).

[4] Plaintiff states in the Opposition that "[t]he facts alleged in the [FAC] not only establish, at a minimum, violations of the Rule of Reason, but also specifically allege per se violations of the antitrust laws . . . ." Opp. at 2. Defendant correctly responds that the Section 1 claim actually pled is limited to a per se theory. Reply at 5 n.4. Even assuming that Plaintiff intended to plead a Section 1 rule of reason claim, it would fail for the reasons explained in this section.

and the purported market in which the alleged injury occurred." Mot. at 18. According to Apple, the "Complaint alleges an unlawful restraint in an inadequately defined 'search market' and monopolization of the 'search business' . . . but then it claims that Plaintiff suffered an injury in a different (again, undefined) market altogether, the 'search advertising market.'" *Id.* (internal citations omitted). Apple further points out that "[n]othing in the Complaint explains why these markets should be assessed as a single market for the purposes of antitrust law." *Id.* Plaintiff counters that this "is a false dichotomy since what is meant in each paragraph is the same: 'search advertising market.'" Opp. at 19. As support, Plaintiff points to the following paragraph from the FAC:

> Plaintiff CALIFORNIA CRANE SCHOOL, INC. and the putative class have paid more to Defendant Google to place their ads on Google's search than they would have paid in a competitive market within the United States, especially if Apple had entered the search business and competed with Google.

*Id.* (quoting FAC ¶ 45).

But this paragraph only highlights the mismatch: Plaintiff alleges that it was harmed in the search *advertising* market by Apple's decision not to enter the search market. Nothing in this paragraph or the complaint supports a finding that the "search advertising market" is coextensive with the "search business" or "search market." Given the lack of a clear definition, a plain language reading would imply that the search advertising market is a market that sells ads on search pages and a search market is a market that provides searching services or capabilities.

Referencing other parts of the FAC simply adds to the lack of clarity. At paragraph 84 of the FAC, for example, Plaintiff provides a pie graph showing the "Mobile Search Engine U.S. Market Share." *See* FAC ¶ 84. But it is not clear if this graph shows the share of the search advertising market (*i.e.*, the proportion of ads sold or ad money collected) or the share of users. A few paragraphs down, the FAC alleges that "[s]cale is of critical importance to competition among general search engines for consumers and search advertisers." FAC ¶ 87. This paragraph seems to acknowledge that there is a distinction between competition for consumers and competition for search advertisers but does not clarify whether the graphs presented in the preceding paragraphs

regarding "market share" showed to the proportion of users or of advertising revenue.[5]

The Court finds that there is a mismatch between the market that was allegedly restrained and the market in which Plaintiff was allegedly harmed. Accordingly, Plaintiff fails to allege antitrust injury. *Qualcomm*, 969 F.3d at 992. Because antitrust injury is a "necessary" requirement for antitrust standing, Plaintiff fails to allege antitrust standing. *Am. Ad Mgmt.*, 190 F.3d at 1055.[6]

The Court therefore **DISMISSES WITH LEAVE TO AMEND** Plaintiff's Section 2 claims.

### B. Plaintiff Fails to Plausibly Plead the Alleged Conspiracy

As the Ninth Circuit has explained:

> To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, [Plaintiff] must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition.

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). "A complaint asserting a § 1 claim must allege facts plausibly suggesting (not merely consistent with) a conspiracy . . . . It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015) (quotation marks and citations omitted). "This standard does not impose a probability requirement, but simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* (quotation marks and citations omitted).

"The 'crucial question' prompting Section 1 liability is 'whether the challenged

---

[5] The Court notes that at one point the FAC starts to refer to "search advertising and general search text advertising markets." *See, e.g.*, FAC ¶ 145. This implies that Plaintiff might be alleging *two* relevant markets but the FAC provides no explanation as to what each encompasses or what the difference between them are.

[6] The Court notes that Plaintiff's failure to provide a consistent definition of the relevant market would make it difficult to assess the complaint's sufficiency in other ways. *See e.g., Qualcomm*, 969 F.3d at 992 (remarking that "courts usually cannot properly apply the rule of reason without an accurate definition of the relevant market" (alterations adopted)).

anticompetitive conduct 'stems from [lawful] independent decision or from an agreement, tacit or express.'" *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 46 (9th Cir. 2022) (quotation omitted). *See also William O. Gilley Enters., Inc. v. Atl. Richfield, Co.*, 588 F.3d 659, 663 (9th Cir. 2009) ("Whether a plaintiff pursues a per se claim or a rule of reason claim under § 1, the first requirement is to allege a contract, combination in the form of trust or otherwise, or conspiracy." (quotation marks and citation omitted)). "Therefore, a claim brought under Section 1 must contain sufficient factual matter, taken as true, to plausibly suggest that an illegal agreement was made." *DRAM*, 28 F.4th at 46. "A plaintiff can establish a conspiracy through direct evidence, circumstantial evidence, or both." *Honey Bum, LLC v. Fashion Nova, Inc.*, No. 22-55150, 2023 WL 2592287, at *5 (9th Cir. Mar. 22, 2023).

### i. Direct Evidence

"Direct evidence is smoking-gun evidence that establishes, without requiring any inferences[,] the existence of a conspiracy." *Honey Bum*, 2023 WL 2592287, at *5 (quotation marks and citations omitted).

The FAC alleges that illegal agreements "were formed, confirmed, reconfirmed, and negotiated from time to time in private, secret, and clandestine personal meetings between the Chief Executive Officers and Chairmen of Apple and Google." FAC ¶ 8. Having started from this asserted premise, the FAC then continually refers to the purported "agreement" throughout. But critically, Plaintiff acknowledges that it "do[es] not know when the agreement was originally formed but allege[s] that it began with Messrs. Jobs and Schmidt and that it has continued in force under Messrs. Cook and Pichai." *Id.* ¶ 12. These conclusory allegations are plainly insufficient. *Cf. Name.Space*, 795 F.3d at 1129 (explaining that "[i]t is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible").[7]

---

[7] In its supplemental brief, Plaintiff states that "[t]he Apple-Google written agreement alleged in the Complaint and whose existence is admitted by Defendants will prove the contours of the agreement not to compete between Apple and Google." Pl. Supp. at 5. Plaintiff does not cite to where in the FAC any written agreement is alleged. As this "written" agreement was not pled in the FAC, the Court does not take it into account for the purposes of this order. *See Avila v. Bank of Am.*, No. 17-CV-00222-HSG, 2017 WL 4168534, at *5 (N.D. Cal. Sept. 20, 2017) (explaining

7

1  As proof of the purported "secret and clandestine" meetings, Plaintiff includes pictures in its complaint of Apple and Google executives at a restaurant.  *See id.* ¶¶ 124-25.  The FAC states that "[a]s can be seen from the photograph, the dinner was over and Mr. Pichai's left arm rested on a manila folder with documents."  *Id.* ¶ 124.  But the FAC also alleges that Google and Apple have an ongoing vertical business relationship.  *See e.g.,* FAC ¶ 89 ("In 2005, Apple began using Google as the automatic, preset, out-of-the-box general search engine for Apple's Safari browser").

On their own, and especially in light of Google and Apple's business relationship, the photos "just as easily suggest rational, legal business behavior" (the leaders of two companies who do business together having dinner) as they suggest an "illegal conspiracy."  *See Kendall*, 518 F.3d at 1049.  In fact, they *more* easily suggest legal business behavior than a conspiracy because the allegation that these secret meetings were being held in such public places is arguably implausible.  *Cf. In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, No. 09CV2002, 2012 WL 3637291, at *2 (S.D. Cal. Aug. 20, 2012), *aff'd sub nom. In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015) (explaining that "[s]imply alleging that Defendants on a number of occasions had the opportunity to agree, is insufficient").

The FAC also makes several allegations describing what Defendants refer to as "disconnected quotes."  *See* Mot. at 8–9.  For example, Plaintiff alleges that the CEO of Google stated that "you can actually merge without merging" and "[i]f we just sort of merged the two companies, we could just call them AppleGoo."  FAC ¶ 99.  Plaintiff further alleges that "Apple told Google" (without any indication of who made the statement to whom or when) that "[o]ur vision is that we work as if we are one company."  FAC ¶ 100.  The FAC also alleges that Steve Jobs stated: "I said we would, if we had good relations, guarantee Google access to the iPhone and guarantee it one or two icons on the home screen."  FAC ¶ 102.  These quotes also do not plead any conspiracy: they "just as easily suggest rational, legal business behavior" by two companies

---

that "Plaintiff cannot amend his complaint with arguments made in his opposition brief").

8

who have an open business relationship as they suggest an "illegal conspiracy," and are therefore "insufficient to plead a violation of the antitrust laws." *See Kendall*, 518 F.3d at 1049 (citation omitted).

Accordingly, the Court agrees with Apple that Plaintiff fails to plausibly plead direct evidence of a conspiracy.[8]

### ii. Circumstantial Evidence

The Ninth Circuit has explained that "for plaintiffs bringing a claim under Section 1 of the Sherman Act—particularly those relying on evidence of parallel business conduct to establish a conspiracy—stating a plausible claim requires something more" than the 12(b)(6) standard. *DRAM*, 28 F.4th at 44. "Such plaintiffs must plead 'some further factual enhancement' that places their allegations of parallel conduct in a context suggesting a preceding agreement." *Id.* (citation omitted). "In other words, plaintiffs must allege something more than conduct merely consistent with agreement in order to nudge their claims across the line from conceivable to plausible." *Id.* at 47 (quotation marks omitted and alteration adopted).[9]

"In the absence of direct evidence of an agreement, certain plus factors may elevate allegations of parallel conduct to plausibly suggest the existence of a conspiracy." *Id.* "Plus factors are often 'economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action.'" *Id.* (quotation omitted). "Under the *Twombly* standard, plus factors serve as the 'something more' to place parallel conduct 'in a context that raises a suggestion of a preceding agreement.'" *Id.* (quotation omitted).

Plaintiff argues that "[m]eetings of Defendants offer the opportunity to violate the antitrust

---

[8] Plaintiff asserts, relying heavily on a case from 1969, that "the revenue-sharing agreements between Google and Apple, that Defendants admit, is a prima facie *per se* violation of section 1 of the Sherman Act." Opp. at 13 (citing *Citizen Publishing Co. v. United States*, 394 U.S. 131 (1969)). But the Court agrees with Apple that Plaintiff's claim that the purported payments must have been because "Google paid Apple to stay out of the search business," FAC ¶¶ 39–40, lacks any plausibly pled supporting underlying facts: it simply restates Plaintiff's unsupported assertion that all of the alleged conduct was the result of an (inadequately pled) conspiracy.
[9] The Ninth Circuit has explained that "[t]his higher standard is warranted by practical considerations in antitrust cases, where proceeding to discovery frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case." *DRAM*, 28 F.4th at 47 (quotation marks omitted).

laws and are considered a plus factor notwithstanding efforts of Defendants to minimize their import." Opp. at 13. However, these allegations are no more sufficient to establish "plus factors" than they were to establish direct evidence, because they do not push Plaintiff's theory of a conspiracy from possible to plausible. *See DRAM*, 28 F.4th at 45 (affirming dismissal because "[w]hile both parties' explanations for Defendants' actions are conceivable, Plaintiffs do not allege additional facts that push their theory over 'the line between possibility and plausibility'" (quotation omitted)). At bottom, these meetings do not place Apple and Google's alleged conduct "in a context that raises a suggestion of a preceding agreement." *Id.* at 47 (quotation omitted). And the opposition doesn't point to anything else beyond these meetings that Plaintiff contends was a "plus factor" pled in the FAC.

The Court therefore finds that Plaintiff has failed to plausibly allege a conspiracy through either direct or circumstantial evidence. Accordingly, the Court **DISMISSES WITH LEAVE TO AMEND** Plaintiff's Section 1 per se violation claim.

### C. Statute of Limitations

On its face, a four-year statute of limitations applies to this action. *See* 15 U.S.C. § 15b. Defendants argue that this "bars the claims that seek damages incurred before December 27, 2017." Opp. at 21.

Plaintiff first argues that the statute of limitations does not bar its recovery because the FAC "alleges a continuing violation in that the unlawful revenue-sharing continued from 2005 to the present." Opp. at 21. Apple does not appear to contest that Plaintiff has adequately pled a continuing violation. Instead, Apple argues that even if it committed an overt act during the limitations period, this would still not enable Plaintiff to recover for any damages incurred outside the statutory limitations period. The Court agrees.

In *Klehr*, a RICO suit, the Supreme Court analyzed the Clayton Act's four-year statutory window and explained that "the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). The Supreme Court cites to *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971) in support of its analysis, the same case

1  Plaintiff cites as support for the argument that "conduct that occurs more than four years prior to
2  the filing of the complaint that results in future damages may be sued on within four years of the
3  date on which they are suffered." Opp. at 22.  The Court agrees with Apple that the *Zenith* citation
4  Plaintiff highlights does not change the analysis regarding recovery for injuries incurred outside
5  the limitations window because "whether Google's advertising sales are characterized as 'new
6  overt acts' or viewed as 'future injuries' suffered only at the time of sale, the limitations period is
7  triggered when those alleged injuries occurred—*i.e.*, when advertisers paid allegedly inflated
8  prices." Reply at 13.

9  Plaintiff also argues that its fraudulent concealment allegations "serve to extend the statute
10 of limitations pending proof of the fraudulent concealment," Opp. at 22, but it fails to properly
11 plead those allegations.  Plaintiff "carries the burden of pleading and proving fraudulent
12 concealment; it must plead facts showing that [Defendant] affirmatively misled it, and that
13 [Plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim
14 despite its diligence in trying to uncover those facts." *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858
15 F.2d 499, 502 (9th Cir. 1988) (citation omitted).  Plaintiff entirely fails to meet these pleading
16 requirements.

17 Accordingly, to the extent that Plaintiff is seeking recovery that is based on incidents that
18 occurred before December 27, 2017, these claims are **DISMISSED WITH LEAVE TO AMEND**.
19 To the extent that Plaintiff intends to continue to seek recovery for incidents that occurred before
20 December 27, 2017, Plaintiff "must plead *with particularity* the circumstances of the concealment
21 and the facts supporting its due diligence." *Conmar*, 858 F.2d at 502 (emphasis added).
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## IV. CONCLUSION

The Court **GRANTS WITH LEAVE TO AMEND** Apple's motion to dismiss.[10] This order **TERMINATES AS MOOT** Plaintiff's motion to amend.

Any amended pleadings are due by April 28, 2023.

**IT IS SO ORDERED.**

Dated: 3/31/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[10] The discovery stay imposed by Dkt. No. 61 remains in place unless and until the Court finds that Plaintiff has stated a claim.