Jack P. DiCanio (SBN 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4660
Facsimile: (213) 621-5430
Email: jack.dicanio@skadden.com

Steven C. Sunshine (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

(additional counsel listed on signature page)

*Attorneys for Defendants Apple Inc. and Tim Cook*

John E. Schmidtlein (SBN 163520)
Carol J. Pruski (SBN 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: jschmidtlein@wc.com
Email: cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CALIFORNIA CRANE SCHOOL, INC., on behalf of itself and all others similarly situated,

Plaintiff,

v.

GOOGLE LLC, ALPHABET INC., XXVI HOLDINGS INC., APPLE INC., TIM COOK, SUNDAR PICHAI, and ERIC SCHMIDT,

Defendants.

CASE NO. 3:21-cv-10001-AMO

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: November 16, 2023
Time: 2:00 p.m.
Place: Courtroom 10—19th Floor
Judge: Hon. Araceli Martínez-Olguín

# NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 16, 2023 at 2:00 p.m., or as soon thereafter as this matter may be heard, either in Courtroom 10 of this Court, located on the 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or by videoconference or teleconference, Defendants Google LLC, Alphabet Inc., XXVI Holdings, Inc., Apple Inc., Tim Cook, Sundar Pichai, and Eric Schmidt ("Defendants")[1] will move the Court for an order dismissing Plaintiff California Crane School Inc.'s ("Plaintiff") Second Amended Complaint, ECF No. 112, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants respectfully request an order dismissing without leave to amend all causes of action brought against them in the above-captioned matter. This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; any reply memorandum; the pleadings and files in this action; and such other matters Defendants may present at or before the hearing.

DATED: June 23, 2023

By: /s/ *Steven C. Sunshine*

Steven C. Sunshine (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

Jack P. DiCanio (SBN 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4660
Facsimile: (213) 621-5430
Email: jack.dicanio@skadden.com

[1] Defendants Apple Inc. ("Apple") and Tim Cook are referred to herein as the "Apple Defendants." Defendants Google LLC, Alphabet Inc., XXVI Holdings, Inc., Sundar Pichai, and Eric Schmidt collectively are referred to herein as "Google," or the "Google Defendants." Defendants Tim Cook, Sundar Pichai, and Eric Schmidt collectively are referred to herein as the "Individual Defendants."

Karen Hoffman Lent (admitted *pro hac vice*)
Michael A. Lanci (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
Email: karen.lent@skadden.com
Email: michael.lanci@skadden.com

*Attorneys for Defendants Apple Inc. and Tim Cook*

DATED: June 23, 2023

By: /s/ *John E. Schmidtlein*

John E. Schmidtlein (SBN 163520)
Carol J. Pruski (SBN 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email:jschmidtlein@wc.com
Email: cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 5

A. The SAC Fails to State a Claim Under Section 1 of the Sherman Act Because it Does Not Plausibly Allege a *Per Se* Unlawful Horizontal Conspiracy ..... 5

1. The SAC Does Not Plead Direct Evidence of a Horizontal Conspiracy ..... 6

2. The SAC Does Not Plead Circumstantial Evidence of a Horizontal Conspiracy ..... 9

B. The SAC Fails to State a Claim Under Section 2 of the Sherman Act Because It Does Not Plausibly Allege a Conspiracy to Monopolize, a Relevant Market that Was Monopolized, or Specific Intent to Monopolize ..... 12

1. The SAC Does Not Plausibly Allege a Conspiracy to Monopolize ..... 12

2. The SAC Does Not Adequately Allege a Relevant Market ..... 12

3. The SAC Does Not Allege that Apple Possessed Specific Intent to Monopolize ..... 13

C. Plaintiff's Antitrust Claims Must Be Dismissed for Lack of Antitrust Standing ..... 14

D. Each of Plaintiff's State Law Claims Must Be Dismissed ..... 18

1. Plaintiff's Cartwright Act Claim ..... 18

2. Plaintiff's Unfair Competition Law Claim ..... 18

3. Plaintiff's Unjust Enrichment Claim ..... 20

E. The Claims Against the Individual Defendants Should Be Dismissed ..... 21

F. The Statute of Limitations Bars Damages Predating December 27, 2017 ..... 22

G. The Court Should Dismiss the SAC's Requests for Public Injunctive Relief and Disgorgement Under the Sherman Act and Cartwright Act ..... 23

H. The Court Should Dismiss Plaintiff's Claims Without Further Leave to Amend ..... 24

V. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Abdali v. Agiliti Surgical, Inc.*,
2020 WL 5642355 (E.D. Cal. Sept. 22, 2020) ... 22

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019) ... 20

*American Ad Management, Inc. v. General Telephone Co. of California*,
190 F.3d 1051 (9th Cir. 1999) ... 14, 16, 17

*In re Animation Workers Antitrust Litigation*,
87 F. Supp. 3d 1195 (N.D. Cal. 2015) ... 23

*Antitrust Guidelines for the Licensing of Intellectual Property*,
2017 WL 282889 (F.T.C. Jan. 12, 2017) ... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 5, 8

*Associated General Contractors of California, Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ... 16

*Auto Sound Inc. v. Audiovox Electronics Corp.*,
2012 WL 12892938 (C.D. Cal. Dec. 3, 2012) ... 10

*Avakian v. Wells Fargo Bank, N.A.*,
827 F. App'x 765 (9th Cir. 2020) ... 21

*A-World Trade, Inc. v. Apmex, Inc.*,
2022 WL 1262010 (9th Cir. Apr. 28, 2022) ... 11

*Barrett v. Apple Inc.*,
523 F. Supp. 3d 1132 (N.D. Cal. 2021) ... 21

*Barrett v. Optimum Nutrition*,
2022 WL 2035959 (C.D. Cal. Jan. 12, 2022) ... 20, 21

*Brown v. 140 NM LLC*,
2019 WL 2750889 (N.D. Cal. May 20, 2019) ... 16, 24

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ... 15

*In re California Bail Bond Antitrust Litigation*,
511 F. Supp. 3d 1031 (N.D. Cal. 2021) ... 21

*California Crane School, Inc. v. Google LLC*
621 F. Supp. 3d 1024 (N.D. Cal. 2022) ............................................................. 4, 23

*California Crane School, Inc. v. Google LLC*,
2023 WL 2769096 (N.D. Cal. Mar. 31, 2023)........................................................... *passim*

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986)................................................................................................. 15

*Cates v. Crystal Clear Technologies, LLC*,
2016 WL 4379220 (M.D. Tenn. Aug. 17, 2016) ................................................ 7, 9, 10

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
2013 WL 4192199 (N.D. Cal. May 2, 2013) ........................................................... 24

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
2016 WL 3648478 (N.D. Cal. July 7, 2016)............................................................. 24

*In re Cattle Antitrust Litigation*,
2020 WL 5884676 (D. Minn. Sept. 29, 2020) ............................................................ 6

*Cisco Systems, Inc. v. Dexon Computer, Inc.*,
2021 WL 5848080 (N.D. Cal. Dec. 9, 2021) ............................................................ 18

*City of Oakland v. Oakland Raiders*,
20 F.4th 441 (9th Cir. 2021) ..................................................................................... 17

*City of Pittsburgh v. West Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998)...................................................................................... 17

*Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*,
771 F. Supp. 2d 1195 (N.D. Cal. 2011) .................................................................... 24

*Coffee v. Google, LLC*,
2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ............................................................... 19

*Colonial Medical Group, Inc. v. Catholic Health Care West*,
444 F. App'x 937 (9th Cir. 2011) ............................................................................. 18

*Coronavirus Reporter v. Apple Inc.*,
2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) .......................................................... 13

*Dairy, LLC v. Milk Moovement, Inc.*,
2022 WL 2392622 (E.D. Cal. July 1, 2022) ............................................................. 21

*Digital Sun v. Toro Co.*,
2011 WL 1044502 (N.D. Cal. Mar. 22, 2011)............................................................. 2

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
2017 WL 6883685 (C.D. Cal. Aug. 10, 2017)............................................................. 7

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) .......... 19

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022) .......... 13

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation*,
28 F.4th 42 (9th Cir. 2022) .......... 6, 10, 11, 19

*In re Dynamic Random Access Memory Indirect Purchaser Litigation*,
2020 WL 8459279 (N.D. Cal. Nov. 24, 2020) .......... 24

*Eagle v. Star-Kist Foods, Inc.*,
812 F.2d 538 (9th Cir. 1987) .......... 17

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 22

*Flaa v. Hollywood Foreign Press Ass'n*,
55 F.4th 680 (9th Cir. 2022) .......... 10

*Flextronics International USA, Inc. v. Murata Manufacturing Co.*,
2020 WL 5106851 (N.D. Cal. Aug. 31, 2020) .......... 6

*Fonseca v. Hewlett-Packard Co.*,
2020 WL 6083448 (S.D. Cal. Feb. 3, 2020) .......... 7

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) .......... 15

*Garrison v. Oracle Corp.*,
159 F. Supp. 3d 1044 (N.D. Cal. 2016) .......... 23

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*,
605 F. Supp. 3d 672 (E.D. Pa. 2022) .......... 17

*Granddad Bread, Inc. v. Continental Baking Co.*,
612 F.2d 1105 (9th Cir. 1979) .......... 12

*Grant v. Pensco Trust Co.*,
2014 WL 1471054 (N.D. Cal. Apr. 15, 2014) .......... 19

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) .......... 19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 21

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) .......... 19

*Hu Honua Bioenergy, LLC v. Hawaiian Electric Industries, Inc.*,
2018 WL 5891743 (D. Haw. Nov. 9, 2018) .................................................................. 14

*Innovation Marine Protein, LLC v. Pacific Seafood Group*,
2018 WL 1461501 (D. Or. Mar. 23, 2018) .................................................. 10, 15, 17

*Insurance Brokerage Antitrust Litigation*,
618 F.3d 300 (3d Cir. 2010) ........................................................................................ 6, 8

*Jacobsen v. Katzer*,
2006 WL 3000473 (N.D. Cal. Oct. 20, 2006) .............................................................. 16

*Kelsey K. v. NFL Enterprises, LLC*,
254 F. Supp. 3d 1140 (N.D. Cal. 2017), *aff'd*, 757 F. App'x 524 (9th Cir. 2018) ................. 9

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ................................................................................ passim

*Ketayi v. Health Enrollment Group*,
516 F. Supp. 3d 1092 (S.D. Cal. 2021) ....................................................................... 20

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) ...................................................................................................... 23

*Korea Kumho Petrochemical v. Flexsys America LP*,
2008 WL 686834 (N.D. Cal. Mar. 11, 2008) ................................................................ 16

*Maguca v. Aurora Loan Services*,
2009 WL 3467750 (C.D. Cal. Oct. 28, 2009) ............................................................... 11

*Mayor & City Council of Baltimore, Maryland v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013) ............................................................................................ 6

*In re Musical Instruments & Equipment Antitrust Litigation*,
798 F.3d 1186 (9th Cir. 2015) ................................................................................ 6, 9, 10

*Mylan Pharmaceuticals v. Celgene Corp.*,
2014 WL 12810322 (D.N.J. Dec. 23, 2014) ..................................................................... 7

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
795 F.3d 1124 (9th Cir. 2015) .................................................................................. 11, 18

*In re National Ass'n of Music Merchants, Musical Instruments & Equipment Antitrust Litigation*,
2012 WL 3637291 (S.D. Cal. Aug. 20, 2012), *aff'd sub nom. In re Musical Instruments & Equipment Antitrust Litigation*, 798 F.3d 1186 (9th Cir. 2015) .................. 11

*Nazemi v. Specialized Loan Servicing, LLC*,
2022 WL 17220707 (C.D. Cal. Oct. 31, 2022) ............................................................. 20

*NorthBay Healthcare Group, Inc. v. Kaiser Foundation Health Plan, Inc.*,
2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) .......... 12

*O'Connor v. Uber Technologies, Inc.*,
2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) .......... 22

*Oregon Laborers-Emps. Health & Welfare Trust Fund v. Philip Morris Inc.*,
185 F.3d 957 (9th Cir. 1999) .......... 15

*Pacific Steel Group v. Commercial Metals Co.*,
2021 WL 2037961 (N.D. Cal. May 21, 2021) .......... 9, 10

*Paladin Associates, Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003) .......... 12

*Parducci v. Overland Solutions, Inc.*,
399 F. Supp. 3d 969 (N.D. Cal. 2019) .......... 19

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
911 F.3d 505 (8th Cir. 2018) .......... 9

*Pistacchio v. Apple Inc.*,
2021 WL 949422 (N.D. Cal. Mar. 11, 2021) .......... 21

*Prime Healthcare Services, Inc. v. Service Employees International Union*,
2013 WL 3873074 (S.D. Cal. July 25, 2013), *aff'd*, 642 F. App'x 665 (9th Cir. 2016) .......... 7, 12

*Rogers v. Lyft, Inc.*,
452 F. Supp. 3d 904 (N.D. Cal. 2020) .......... 23

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) .......... 12, 14, 22

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) .......... 24

*Siegler v. Sorrento Therapeutics, Inc.*,
2019 WL 3532294 (S.D. Cal. Aug. 2, 2019) .......... 13

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .......... 15

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 18, 20

*Space Exploration Technologies Corp. v. Boeing Co.*,
2006 WL 7136649 (C.D. Cal. May 12, 2006), *aff'd*, 281 F. App'x 769 (9th Cir. 2008) .......... 15, 17

*Spinelli v. National Football League*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) .......... 18

*Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*,
405 F. Supp. 2d 1141 (C.D. Cal. 2005) .......... 12, 13, 14

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
2011 WL 2678879 (E.D. Cal. July 7, 2011) .......... 13

*Swift Harvest USA, LLC v. Boley International HK Ltd*,
2020 WL 7380148 (C.D. Cal. Sept. 22, 2020) .......... 21

*Theme Promotions, Inc. v. News America Marketing FSI*,
546 F.3d 991 (9th Cir. 2008) .......... 20

*Toscano v. PGA Tour, Inc.*,
201 F. Supp. 2d 1106 (E.D. Cal. 2002) .......... 16, 17

*Toscano v. PGA Tour, Inc.*,
70 F. Supp. 2d 1109, *aff'd*, 258 F.3d 978 (9th Cir. 2001) (E.D. Cal. 1999) .......... 7

*Vallarta v. United Airlines, Inc.*,
497 F. Supp. 3d 790 (N.D. Cal. 2020) .......... 21

*Victor v. R.C. Bigelow, Inc.*,
2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) .......... 19, 20

*Waller v. County of Sutter*,
2022 WL 2441310 (E.D. Cal. June 30, 2022) .......... 24

*Wilson v. Hewlett- Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) .......... 18

## STATUTES

15 U.S.C. § 15(a) .......... 23

15 U.S.C. § 15b .......... 23

## OTHER AUTHORITIES

Complaint, *Arcell v. Google LLC*, No. 5:22-cv-02499-EJD (N.D. Cal.), ECF No. 1 .......... 17, 24

## I. INTRODUCTION

Plaintiff's Second Amended Complaint ("SAC") does nothing to remedy the multiple defects the Court identified in Plaintiff's First Amended Complaint ("FAC") and still fails to state a claim.

***No Horizontal Conspiracy*.** Plaintiff's first two complaints alleged in conclusory fashion that Apple and Google engaged in a *per se* unlawful horizontal conspiracy not to compete in the "search business," based solely on lawful meetings between company executives, a series of disconnected quotes, and a *vertical* agreement under which Apple set Google's search engine as the pre-set default search engine in its Safari web browser. In dismissing the FAC, the Court rejected Plaintiff's "conclusory allegations" as "plainly insufficient" to state a Sherman Act conspiracy claim. *Cal. Crane Sch., Inc. v. Google LLC* ("*Crane II*"), 2023 WL 2769096, at *5 (N.D. Cal. Mar. 31, 2023). As the Court reasoned, Plaintiff's allegations of meetings between, and "disconnected quotes" by, Apple's and Google's executives did "not plead any conspiracy." *Id.* Instead, they were easily explained by the "ongoing vertical business relationship" between the two companies. *Id.*

Plaintiff now triples down on its faulty theory, relying on the same events and statements that the Court already determined failed to state a claim. Without any supporting factual allegations, Plaintiff adds only the conclusory charge that Apple and Google memorialized their supposed horizontal conspiracy in their vertical agreements. But this new contention does nothing to make the supposed horizontal conspiracy any less conclusory or any more plausible. After all, it does not change the fact that Defendants' business meetings and innocuous statements are explained by their ongoing vertical relationship. At bottom, Plaintiff cannot spin this *vertical* relationship—which has been public knowledge for over 15 years—into a *horizontal* conspiracy simply by saying so.

***No Antitrust Standing*.** The Court also dismissed the FAC for lack of antitrust standing. Plaintiff could not establish that it suffered antitrust injury, a necessary requirement for pleading antitrust standing, because there was a fatal "mismatch between the market that was allegedly restrained and the market in which Plaintiff was allegedly harmed": The purported restraint imposed by Defendants' supposed horizontal agreement occurred in a "search market," even though Plaintiff's claimed injuries occurred in a "search *advertising* market." *Id.* at *3–4 (emphasis added).

The SAC does not fix this defect. Plaintiff's theory of harm, which it again claims occurred in a search advertising market, still requires establishing a but-for-world in which Apple not only offered a search engine but also launched a search advertising business. Yet, as before, Plaintiff offers no allegations that Apple had any ability or intention to develop search advertising capabilities. Without such allegations, Plaintiff's attenuated theory still requires *numerous* hypothetical steps to even loosely connect the dots between the claimed overcharge injury and challenged restraint.

***No California State Law Claims***. Plaintiff now asserts new California state law claims under the Cartwright Act, the Unfair Competition Law (the "UCL"), and the common law doctrine of unjust enrichment. But each of these claims is defective, as they all rely entirely on Plaintiff's flawed Sherman Act claims. Plaintiff's UCL and unjust enrichment claims for equitable relief also fail because Plaintiff does not plausibly plead the necessary elements of either cause of action and makes no attempt to establish that it lacks an adequate remedy at law such that equitable relief could be warranted.

***Other Deficiencies***. The SAC is marred by other problems. For one, as the Court recognized in its dismissal, the statute of limitations bars claims for damages based on search advertising sales from before December 27, 2017, and Plaintiff "entirely fails to meet the[] pleading requirements" for fraudulent concealment necessary to toll the limitations period. *Id.* at *7. For another, Plaintiff seeks forms of relief under the Sherman and Clayton Acts that are unavailable as a matter of law.

In sum, the SAC does nothing to cure the deficiencies of Plaintiff's first two complaints and sets out precisely the kind of antitrust case that the Supreme Court and Ninth Circuit have warned require rigorous enforcement of Rule 12. The SAC should be dismissed with prejudice.

## II. BACKGROUND[2]

Apple Inc. is a California-based tech company that develops and manufactures a host of hardware devices, software, and services, including Macintosh desktop and notebook computers, iPhone and iPad mobile devices, and the Safari web browser that comes preinstalled on Apple devices. SAC ¶¶ 93, 117–18. Google LLC is a California-based tech company that develops

[2] Defendants acknowledge that the Court must take Plaintiff's allegations as true, though it need not accept as true conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *See, e.g.*, *Digit. Sun v. Toro Co.*, 2011 WL 1044502, at *2 (N.D. Cal. Mar. 22, 2011).

technology and software products used by consumers around the world, including the Google Search engine. *Id.* ¶¶ 92, 126. As is common among companies that offer complementary products and services, Apple and Google have integrated their offerings to enrich the user experience.

According to the SAC, since 2005, Apple has entered into a series of efficiency-enhancing vertical agreements with Google that have allowed users of Apple devices in the United States to easily access Google Search in Apple's Safari web browser: Lacking its own general search engine, Apple agreed to set Google Search as the pre-set default general search engine in Safari, *id.* ¶¶ 143, 149, because Google offers the highest-quality search results. Google agreed to pay Apple a share of the advertising revenues generated by searches performed on Google by Safari users. *Id.* ¶ 144. These vertical agreements—which Plaintiff calls the "Pre-Installation Agreement" and the "Revenue Sharing Agreement," *id.* ¶¶ 18–19—do not require Google to be the *exclusive* general search engine available on Apple's products or even the only search engine integrated into Safari as a potential default option. That is, U.S. consumers can freely "change the search default on Safari from Google to a competing general search engine," *id.* ¶ 77; *see also id.* ¶¶ 26, 117, 218, like Bing, Yahoo!, DuckDuckGo, or Ecosia. And, they can "download or use other general search services," *id.* ¶ 82, from Apple's App Store or, as is common knowledge, navigate to the web page of their preferred search engine via any web browser available on Apple devices. Plaintiff alleges that Apple and Google executives met numerous times over the years as part of the ongoing working relationship created by these agreements. *Id.* ¶¶ 155, 157, 181–85. In 2016, in furtherance of that relationship and to improve the user experience on its devices, Apple agreed to make Google Search the pre-set default search engine in its Siri and Spotlight "search access points." *Id.* ¶ 146.

Although these *vertical* agreements between a search engine provider and a web browser developer have been public knowledge for over 15 years and are a common industry practice,[3] Plaintiff—a crane operator certification company that has purchased search advertisements on Google Search—tries to spin them into a *per se* unlawful *horizontal* conspiracy whereby Apple has

[3] The fact that Google has made revenue share payments to Apple and other companies pursuant to these commonplace agreements has been widely reported. Plaintiff now concedes that Google reports its revenue share payments to "Apple *and others*" in its public "quarterly financial filings" as "traffic acquisition costs." SAC ¶ 81 (emphasis added). The pre-set default search engine on the Safari web browser has of course been visible to anyone using Safari in the United States.

supposedly also agreed not to compete with Google in the general search and search advertising markets. *E.g.*, *id.* ¶¶ 18, 22–25, 81. Plaintiff baldly asserts that, at some unidentified point prior to 2014, Apple had done some work on a search engine of its own, and that rather than pursue that route—which, Plaintiff imagines, would have led to Apple eventually entering the "search" market and then also entering the "search advertising" market, resulting in lower search advertising prices (without any allegations that Apple actually made any efforts on that front)—Apple conspired with Google not to enter either market. *Id.* ¶¶ 162–66, 187, 221–22. Plaintiff speculates in conclusory fashion that this supposed conspiracy was engineered by former Apple and Google CEOs Steve Jobs and Eric Schmidt and later ratified by current CEOs Tim Cook and Sundar Pichai—all during "secret" meetings at Google's headquarters, a shopping mall café, Steve Jobs's living room, and local restaurants. *Id.* ¶¶ 155, 157, 181–85. Although Apple and Google purportedly "orally agreed" to form the alleged *per se* illegal conspiracy, *id.* ¶ 13, they apparently informed the "board[s] of directors" of the alleged conspiracy and memorialized it in "various writings," including the vertical "Pre-Installation" and "Revenue Sharing" agreements. *Id.* ¶¶ 12, 22–25, 94–96. The SAC is silent as to any factual allegations plausibly suggesting that the meetings and written agreements concerned a secret non-compete horizontal agreement rather than the companies' publicly-known vertical business integration.

On December 27, 2021, Plaintiff sued Defendants on behalf of itself and a proposed class of "consumers and businesses who paid Google to place advertising on Google search in the United States since January 1, 2005," claiming that the alleged non-compete agreement has inflated their search advertisement costs for almost two decades. Compl. ¶ 65, ECF No. 1. After the Google Defendants filed a motion to compel arbitration and Defendants filed a motion to dismiss, Plaintiff amended its complaint. ECF Nos. 32–33, 39. Defendants thereafter filed another motion to dismiss. ECF No. 51. On August 12, 2022, the Court granted the Google Defendants' motion to compel arbitration, staying the action against Google in favor of arbitration. *See Cal. Crane Sch., Inc. v. Google LLC* ("*Crane I*"), 621 F. Supp. 3d 1024, 1032 (N.D. Cal. 2022).

On March 31, 2023, the Court granted the motion to dismiss, concluding that Plaintiff: (1) failed to allege a plausible *per se* illegal horizontal conspiracy because it provided only

conclusory allegations of an agreement not to compete and factual allegations that were easily explained by the rational, *vertical* business relationship between Apple and Google; and (2) failed to plead antitrust standing because there was a "mismatch between the market that was allegedly restrained and the market in which Plaintiff was allegedly harmed." *Crane II*, 2023 WL 2769096, at *4–7. The Court also concluded that the statute of limitations barred recovery for incidents occurring before December 27, 2017, because Plaintiff "entirely fail[ed]" to meet the pleading requirements for claiming fraudulent concealment. *Id.* at *7. Plaintiff filed the SAC on May 26, 2023.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully"; it requires the facts pleaded to push the asserted claim across "'the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (some quotation marks omitted). To determine whether a complaint satisfies that requirement, the Court must "draw on its judicial experience and common sense." *Id.* at 679.

## IV. ARGUMENT

### A. The SAC Fails to State a Claim Under Section 1 of the Sherman Act Because it Does Not Plausibly Allege a *Per Se* Unlawful Horizontal Conspiracy

Plaintiff's *per se* claim under Sherman Act Section 1 fails for the very reasons for which the Court already dismissed it: There are no factual allegations that plausibly support an inference that Apple and Google entered into any horizontal agreement not to compete in the search business or search advertising business. *See Crane II*, 2023 WL 2769096, at *4–7. To allege a plausible Section 1 agreement, a plaintiff "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts" that, if true, would prove an unlawful agreement. *Id.* at *4 (quoting *Kendall v. Visa U.S.A.*,

*Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)). These facts must include allegations sufficient to "answer the basic questions" regarding the alleged agreement: "who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048. And they must reflect non-conclusory, non-inferential, "direct" evidence of an agreement or, absent that, powerful circumstantial evidence that is inconsistent with rational, legal business conduct. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193–94 (9th Cir. 2015). Under this standard, "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as . . . an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall*, 518 F.3d at 1049.

As the Court previously recognized, stating a Section 1 claim "'requires something more' than the 12(b)(6) standard." *Crane II*, 2023 WL 2769096, at *6 (quoting *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 45 (9th Cir. 2022)). "This higher standard is warranted by practical considerations in antitrust cases, where proceeding to discovery frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case." *Id.* at *6 n.9 (alteration omitted) (quoting *DRAM*, 28 F.4th at 47). The SAC strikes at the heart of these practical concerns, as it pleads neither direct nor circumstantial evidence of a horizontal conspiracy.

**1. The SAC Does Not Plead Direct Evidence of a Horizontal Conspiracy**

Even on Plaintiff's third attempt to state a claim, the SAC contains no factual allegations that could give rise to direct evidence of a non-compete conspiracy. "Direct evidence is smoking-gun evidence that establishes, without requiring any inferences[,] the existence of a conspiracy," *id.* at *4 (quoting *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir. 2023))—*e.g.*, "a recorded phone call in which two competitors agreed to fix prices." *Mayor & City Council of Balt., Md. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). Allegations of direct evidence must be "sufficiently detailed to survive [a] Motion to Dismiss." *In re Cattle Antitrust Litig.*, 2020 WL 5884676, at *5 (D. Minn. Sept. 29, 2020) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323-24 (3d Cir. 2010)). That is, a plaintiff must "allege facts *showing* that [the d]efendants had an explicit agreement." *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, 2020 WL 5106851, at *14 (N.D. Cal. Aug. 31, 2020) (emphasis added). Plaintiff still fails to do so here.

Plaintiff's new, conclusory allegations that Defendants included their supposed agreement not to compete in their "Pre-Installation" and "Revenue Sharing" agreements—vertical agreements that Plaintiff recognizes are commonplace in the industry and publicly reported, *see* SAC ¶ 81—do not plausibly establish the alleged horizontal conspiracy. As an initial matter, the mere existence of Apple's and Google's *vertical* agreements are insufficient to establish a *horizontal* conspiracy. *See Toscano v. PGA Tour, Inc.*, 70 F. Supp. 2d 1109, 1114–15 (E.D. Cal. 1999), *aff'd*, 258 F.3d 978 (9th Cir. 2001); *see also Mylan Pharms. v. Celgene Corp.*, 2014 WL 12810322, at *6–8 (D.N.J. Dec. 23, 2014) (explaining it is not enough "to simply plead that a contract exists"). Nor can Plaintiff meet its burden by simply asserting in conclusory fashion that Apple's and Google's vertical agreements contained secret terms or evinced a secret purpose reflecting a conspiracy. *See Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, 2013 WL 3873074, at *6 (S.D. Cal. July 25, 2013) (finding implausible allegations that agreements "were written in 'code language' to . . . memorialize an otherwise secret agreement" to eliminate competitors), *aff'd*, 642 F. App'x 665 (9th Cir. 2016). In fact, the Ninth Circuit has held that a plaintiff's bare assertions that a publicly-known agreement contains an anticompetitive "'secret term'" are, without more, "insufficient to state a claim" under Section 1. *Disney Enters., Inc. v. VidAngel, Inc.*, 2017 WL 6883685, at *4 (C.D. Cal. Aug. 10, 2017) (quoting *PharmaRX Pharm., Inc. v. GE Healthcare, Inc.*, 596 F. App'x 580, 580–81 (9th Cir. 2015)).

Plaintiff also does not provide factual allegations of sufficient detail to support the claimed written agreement not to compete. The SAC does not offer *any* evidentiary facts that could raise a reasonable inference that Apple and Google entered into a written conspiratorial agreement, let alone facts that provide the requisite level of specificity required by *Kendall*. *See Kendall*, 518 F.3d at 1047–48. Plaintiff has never seen the alleged agreement, so its actual content is clearly not the basis for Plaintiff's accusation. SAC ¶ 11. And Plaintiff provides zero support for its speculation as to the purported written terms beyond baldly asserting that they amounted to an agreement not to compete. *See Fonseca v. Hewlett-Packard Co.*, 2020 WL 6083448, at *6 (S.D. Cal. Feb. 3, 2020) (holding alleged non-compete conspiracy "f[e]ll short of [*Kendall*'s] standard of specificity," where plaintiff did not provide "details as to who drafted or entered the agreement, or when and where it was agreed upon"); *Cates v. Crystal Clear Techs., LLC*, 2016 WL 4379220, at *10 (M.D. Tenn. Aug.

17, 2016) (finding implausible the theory that an agreement not to compete between two entities that were not horizontal competitors "disguise[d] itself as a vertical agreement"). Ultimately, Plaintiff's insertion of the adjective "written" to describe the alleged agreement not to compete does nothing to transform it from the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" precluded by *Iqbal* and *Twombly* into a plausible allegation. *Iqbal*, 556 U.S. at 678. "After *Twombly*, if a plaintiff expects to rely exclusively on direct evidence of conspiracy"—such as a written agreement—"its complaint must plead 'enough fact[s] to raise a reasonable expectation that discovery will reveal' this direct evidence." *Ins. Brokerage*, 618 F.3d at 324 (citation omitted). Plaintiff raises no such expectation here.

The SAC does not otherwise improve the conclusory theory the Court found deficient in the FAC. As the Court previously found, Plaintiff's conclusory allegations of "secret and clandestine" meetings between, and disconnected quotes from, company executives do not give rise to an inference of conspiracy. *See Crane II*, 2023 WL 2769096, at *4–5. Plaintiff again admits that it does not know when the alleged secret meetings began, SAC ¶ 35, and still offers not a single evidentiary fact that might establish that the meetings resulted in a conspiracy. From this starting point, Plaintiff all but concedes that it cannot plead a Section 1 claim with the specificity that *Kendall* requires: That is, it cannot provide answers to the foundational questions of "who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048.

All it provides are photos of Messrs. Cook and Pichai dining at a restaurant, SAC ¶¶ 184–85, which as the Court noted "'just as easily suggest rational, legal business behavior' (the leaders of two companies who do business together having dinner) as they suggest an 'illegal conspiracy.'" *Crane II*, 2023 WL 2769096, at *5 (quoting *Kendall*, 518 F.3d at 1049). "In fact, they *more* easily suggest legal business behavior than a conspiracy because the allegation that these secret meetings were being held in such public places is arguably implausible." *Id.* (emphasis in original). The same is true of the SAC's disconnected (and often public) alleged quotes by company executives (*e.g.*, the alleged statement that "[i]f we just sort of merged the two companies, we could just call them AppleGoo," SAC ¶ 153), which still say nothing about a supposed agreement that Apple would not develop its own general search engine or search advertising capabilities and are consistent with an

"open business relationship." *Crane II*, 2023 WL 2769096, at *5. Plaintiff fails to plead direct evidence of a conspiracy.

**2. The SAC Does Not Plead Circumstantial Evidence of a Horizontal Conspiracy**

Like the allegations of the previous two complaints, the SAC's allegations "are no more sufficient to establish" circumstantial evidence of a conspiracy "than they were to establish direct evidence" because they "do not place Apple and Google's alleged conduct 'in a context that raises a suggestion of a preceding agreement.'" *Crane II*, 2023 WL 2769096, at *6 (citation omitted). To plead circumstantial evidence, a plaintiff must allege facts demonstrating "parallel conduct" combined with "plus factors" that are "inconsistent with unilateral conduct," *Musical Instruments*, 798 F.3d at 1193–94, and "tend[] to exclude the possibility that [the] defendants acted independently," *Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), *aff'd*, 757 F. App'x 524 (9th Cir. 2018). Plaintiff does not plausibly plead parallel conduct *or* plus factors.

*First*, Plaintiff pleads no "parallel conduct," which alone warrants dismissal. *Musical Instruments*, 798 F.3d at 1193; *see also Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018). At best, as the Court has recognized, the SAC alleges facts consistent with lawful "*vertical* agreement[s] between parties that provide very different services," *Cates*, 2016 WL 4379220, at *10 (emphasis added)—*i.e.*, agreements between Apple and Google under which Apple agreed to set Google as the default general search engine in Safari. SAC ¶¶ 143-51. There is nothing suspicious or unusual about this kind of vertical agreement—into which search providers have entered with browser developers for many years, *see id.* ¶ 81, and which are not subject to the *per se* scrutiny the SAC exclusively advances, *see, e.g.*, *Pac. Steel Grp. v. Com. Metals Co.*, 2021 WL 2037961, at *7 (N.D. Cal. May 21, 2021). Indeed, the SAC concedes that these agreements are efficiency enhancing, recognizing "there is value in being the default browser on Apple's devices," SAC ¶¶ 26, 218. *See Antitrust Guidelines for the Licensing of Intellectual Prop.*, 2017 WL 282889, at *3, *10 (F.T.C. Jan. 12, 2017) (recognizing procompetitive benefits of vertical integration and that vertical licensing arrangements are subject to the rule of reason). Nor is there anything unusual or

suspicious about a company's unilateral decision not to enter two wholly new lines of business—here, general search and search advertising.[4]

*Second*, even if the SAC adequately pled parallel conduct (which it does not), it does not plead "plus factors" necessary to make the existence of a horizontal conspiracy plausible, as the Court previously held. Plus factors are "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action," *Musical Instruments*, 798 F.3d at 1194, which serve as the "something more" required to state a claim under the Sherman Act, *DRAM*, 28 F.4th at 47 (citing *Twombly*, 550 U.S. at 557). Typical examples of plus factors include conduct against an entity's apparent economic self-interest, unusual interfirm communications, and abrupt changes in long-standing business practices or price structures. *See, e.g.*, *Musical Instruments*, 798 F.3d at 1195. The SAC contains no such facts.

The SAC does not allege that any action by Apple or Google was against either company's self-interest absent the alleged horizontal agreement. Specifically, the SAC contains no non-conclusory factual allegations that would support an inference that it was in Apple's self-interest to undertake developing *both* a general search engine *and* a search advertising business, such that its decision *not* to go that route evidences a conspiracy. While Plaintiff contends that Apple was a "potential competitor to Google," *e.g.*, SAC ¶ 16, the SAC is utterly devoid of allegations that would make that bald assertion plausible—*i.e.*, facts that support the inference that Apple intended to enter, or was prepared to enter, either the purported general search or search advertising markets. *See Cates*, 2016 WL 4379220, at *10 (dismissing Section 1 claim based on "conclusory allegation" that defendants were horizontal competitors where complaint conceded a vertical relationship); *cf. Innovation Marine Protein, LLC v. Pac. Seafood Grp.*, 2018 WL 1461501, at *8–9 (D. Or. Mar. 23, 2018) (setting forth various factors for pleading potential competition). Plaintiff's vague and

---

[4] Plaintiff's inability to plead a horizontal relationship between Apple and Google (including based on potential competition, *see infra* pp. 10–11) dooms its Section 1 *per se* claim. *See Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 692 (9th Cir. 2022) (affirming dismissal of *per se* "market-division" claim where alleged conspirators "d[id] not participate in the same product market"). Plaintiff does not bring any Section 1 claim premised on the rule of reason. Even if it had, it still fails to allege any plausible agreement not to compete, antitrust standing, *see infra* pp. 14–18, a relevant market, *see infra* pp. 12–13, or that the alleged vertical agreement had adverse competitive effects on that market under the rule of reason. *See Pac. Steel Grp.*, 2021 WL 2037961, at *7–9; *see also Auto Sound Inc. v. Audiovox Elecs. Corp.*, 2012 WL 12892938, at *4–6 (C.D. Cal. Dec. 3, 2012).

unsupported claim that Apple "at one point" secretly "tested" its own "built-in search engine without any announcements," SAC ¶ 164, is not only insufficient but also: (1) fails even to specify whether Apple had tested a *general* search engine or, instead, a "specialized" search engine that would be outside Plaintiff's alleged relevant market, *see id.* ¶ 197; and (2) contradicts Plaintiff's assertion that Apple had "announced the development of its own search engine," *id.* ¶ 187.[5] Meanwhile, Plaintiff *never* alleges that Apple undertook efforts to develop search *advertising* capabilities, further illustrating that it has no basis to allege that Apple was a potential search advertising competitor to Google.

As the Court previously held, Plaintiff also does not allege as plus factors any qualifying interfirm communications or abrupt changes in business practices. Plaintiff's allegations of meetings between executives "are no more sufficient to establish 'plus factors' than they were to establish direct evidence" because they "do not place Apple and Google's alleged conduct 'in a context that raises a suggestion of a preceding agreement'" not to compete. *Crane II*, 2023 WL 2769096, at *6 (quoting *DRAM*, 28 F.4th at 47). After all, courts have long held that the mere *opportunity* to conspire during meetings held for legitimate purposes is insufficient to establish a conspiracy. *See, e.g., In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, 2012 WL 3637291, at *2, *5 (S.D. Cal. Aug. 20, 2012), *aff'd sub nom. In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015). And the SAC still pleads the exact opposite of an abrupt change in business practice: a decades-long commercial relationship. *See* SAC ¶ 143. That lawful, vertical relationship provides one of many "obvious alternative explanations" for the conduct Plaintiff alleges, *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015) (citation omitted); *see also A-World Trade, Inc. v. Apmex, Inc.*, 2022 WL 1262010, at *1–2 (9th Cir. Apr. 28, 2022), and undermines any negative inferences, since courts are

[5] Likewise, Plaintiff's allegations that "as late as 2014 Apple had been working on its own search engine," SAC ¶ 187, and developed Siri and Spotlight "with the intent of making . . . a proprietary search engine," *id.* ¶ 165 are in direct conflict with its core assertion that Apple had agreed with Google not to undertake such efforts since 2005, *id.* ¶ 148—not to mention wholly conclusory. *See Maguca v. Aurora Loan Servs.*, 2009 WL 3467750, at *2 (C.D. Cal. Oct. 28, 2009) (noting that "self-contradictory" allegations are an "admission sufficient to dismiss [a] cause of action").

rightfully suspicious of alleged conspiracies that operate in plain sight due to their inherent implausibility, *see Crane II*, 2023 WL 2769096, at *5.

Plaintiff cannot assume the existence of an illegal agreement, cherry-pick a scattershot of neutral events while ignoring their innocent explanations, and then ask the Court to allow discovery that would be a mere fishing expedition. The Court should again dismiss Plaintiff's Section 1 claim.

### B. <u>The SAC Fails to State a Claim Under Section 2 of the Sherman Act Because It Does Not Plausibly Allege a Conspiracy to Monopolize, a Relevant Market that Was Monopolized, or Specific Intent to Monopolize</u>

The SAC's Second Claim for Relief relies on the same (inadequate) allegations as its First Claim for Relief in support of a conspiracy to monopolize the "search business" and "search advertising business" under Sherman Act Section 2. SAC ¶¶ 230–34. Plaintiffs bringing conspiracy-to-monopolize claims must plead facts sufficient to show, *inter alia*, "the existence of a . . . conspiracy to monopolize," *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003), a relevant market within which the alleged monopolist would have monopoly power, *see Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987), and that the defendants specifically intended "to empower one of them with monopoly power," *Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*, 405 F. Supp. 2d 1141, 1152 (C.D. Cal. 2005). The SAC fails on all three fronts.

#### 1. The SAC Does Not Plausibly Allege a Conspiracy to Monopolize

As with the Section 1 claim, the Court need not look further than the first element of Plaintiff's Section 2 claim. "The standard for pleading a conspiracy for the purposes of a claim under Section 2 of the Sherman Antitrust Act is the same as the standard for pleading a conspiracy under Section 1." *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 2017 WL 6059299, at *4 n.43 (N.D. Cal. Dec. 7, 2017); *cf. Granddad Bread, Inc. v. Cont'l Baking Co.*, 612 F.2d 1105, 1111–12 (9th Cir. 1979). Because Plaintiff "has failed to plead the existence of a conspiracy for [a] Section 1 violation, [it] has also failed to satisfy the first element for conspiracy to monopolize under Section 2." *Prime Healthcare*, 2013 WL 3873074, at *16.

#### 2. The SAC Does Not Adequately Allege a Relevant Market

The Section 2 claim also fails for the independent reason that the SAC neglects to plausibly allege a relevant market. Section 2 claimants must provide a relevant market that is defined with

"clarity" and that does not rely on "inconsistent explanations." *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *7-8 (N.D. Cal. Nov. 30, 2021) (dismissing claims that "lack[ed] clarity as to the relevant product markets"). Recent Ninth Circuit caselaw underscores the importance of tightly defining the relevant market in antitrust cases involving general search engines and search advertising. *See Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1138–40 (9th Cir. 2022).

Plaintiff's product and geographic market definition remain unclear and inconsistent. The Second Claim for Relief shifts between the "search market," the "general search market," the "search advertising market," the "search business," and the "search advertising business" as relevant markets that have allegedly been monopolized. SAC ¶¶ 231–34, 237. Meanwhile, Plaintiff elsewhere purports to define markets for "general search services" and "search advertising" in the United States as relevant antitrust markets. *Id.* ¶¶ 195–203. And the SAC is inconsistently riddled with graphs and figures that concern other markets altogether, such as the U.S. and global "search engine markets," *id*. ¶¶ 14–15, the "global search advertising" market, *id*. ¶¶ 15–16, the "mobile search engine U.S. market," *id.* ¶¶ 47, 55, 129–31, the "computer search engine market," *id.* ¶¶ 129–31, and the "digital advertising" market, *id.* ¶ 17. In light of these abundant inconsistencies, Plaintiff's market definition is "altogether unclear," and its Section 2 claims should be dismissed. *See Siegler v. Sorrento Therapeutics, Inc.*, 2019 WL 3532294, at *13–16 (S.D. Cal. Aug. 2, 2019).

### 3. The SAC Does Not Allege that Apple Possessed Specific Intent to Monopolize

Yet another independent basis for dismissal of the Section 2 claim is that the SAC still fails to allege that Apple specifically intended to monopolize, or for Google to monopolize, any relevant market. To plead such intent, a plaintiff must plausibly allege that the defendants intended to empower one of them with the power "to seize monopoly power by destroying or excluding competition within the relevant market." *Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 2011 WL 2678879, at *12 (E.D. Cal. July 7, 2011). As an initial matter, the SAC contains no allegations that Apple specifically intended for either itself or Google to monopolize a relevant market. *See Standfacts*, 405 F. Supp. 2d at 1152. Plaintiff's allegations that Apple "combined with Google to monopolize the search business and the search advertising business" and that "Google and Apple have *shared* monopoly control" in the

search advertising market, SAC ¶¶ 176, 234 (emphasis added), are conclusory and do not provide a cognizable theory under Section 2, *see Standfacts*, 405 F. Supp. 2d at 1152–53.

Nor can the requisite specific intent be inferred from Plaintiffs' allegations regarding Apple's and Google's vertical agreements. That Apple entered into vertical distribution agreements pursuant to which it agreed to make Google the default search engine for its products, SAC ¶¶ 143-51, does not permit the inference that it specifically intended to exclude Google's competitors from any market. As in its prior complaint, Plaintiff's SAC concedes that these agreements are not exclusive. SAC ¶ 177.[6] Yet even *exclusive* distributorships are "not, standing alone, a violation of antitrust laws." *Rutman Wine Co.*, 829 F.2d at 735-36 (holding that allegation of specific intent involving exclusive distributorship was "conclusory in the absence of anticompetitive conduct from which . . . specific intent may be inferred"). One step further, Apple enables consumers to freely change their default general search engine to Google's competitors, SAC ¶ 77, which directly contradicts any notion that Apple intended for itself or Google to exclude competitors. Given the SAC's emphasis on general search on mobile devices, *see, e.g.*, *id.* ¶¶ 15, 47, 122, 131, so, too, does Plaintiff's concession that Apple and Google entered into their vertical agreement two years *before* Apple released the iPhone in 2007, *id.* ¶ 149—when Apple had a small share of the computer business. Moreover, while the SAC likewise makes much of Apple's alleged "motive . . . to share in [Google's] profits," *id.* ¶ 86, a "common motive to increase profits" is "not enough" to support an inference of specific intent to monopolize. *Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*, 2018 WL 5891743, at *4 (D. Haw. Nov. 9, 2018) (citation omitted). Plaintiffs' Section 2 claim must be dismissed.

### C. <u>Plaintiff's Antitrust Claims Must Be Dismissed for Lack of Antitrust Standing</u>

As the Court previously held, Plaintiff lacks antitrust standing. *See Crane II*, 2023 WL 2769096, at *2–4. Private plaintiffs bringing antitrust suits must establish "antitrust standing." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999). To assess antitrust standing, courts consider several factors: "(1) the nature of the plaintiffs' alleged injury . . . ; (2) the

[6] Indeed, the SAC's new allegations underscore the fact that these agreements are not exclusive. *See* SAC ¶¶ 26, 218 ("[A] default browser can always be removed."); *id.* ¶ 77 ("[P]eople change the search default on Safari from Google to a competing general search engine. . . ."); *id.* ¶ 82 (noting that users may "change search engines" or "download or use other general search services").

directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Id.* The SAC fails under all these factors.

***Antitrust Injury.*** Antitrust injury is a "necessary, but not always sufficient," condition for showing antitrust standing. *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986).[7] To establish antitrust injury, a plaintiff must "allege [a] credible injury caused by [alleged] unlawful conduct" that "flows from that which makes the conduct unlawful" and is of "the type the antitrust laws were intended to prevent." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (citation omitted). Moreover, "the injured party [must] be a participant in the same market as the alleged malefactors." *Id.* (citation omitted). "Parties whose injuries" occur "in another market do not suffer antitrust injury.'" *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (citation omitted).

Consistent with the Court's previous holding, there remains a "mismatch between the market that was allegedly restrained and the market in which Plaintiff was allegedly harmed." *Crane II*, 2023 WL 2769096, at *4. Specifically, Plaintiff states that it "participates directly [in] the search advertising market," SAC ¶ 211, and that it supposedly has paid vague "higher prices" in that market, *id.* ¶ 4, but Plaintiff still fails to allege a plausible restraint in that market. While Plaintiff provides the conclusory allegation that Apple agreed with Google not to compete in the search advertising market, it still never alleges that Apple could have ever entered that market, or that it had even taken any steps to try to enter that market—*e.g.*, by developing search *advertising* capabilities.

In a similar vein, Plaintiff still fails to allege any credible injury that "flows from that which makes defendants' acts unlawful"—as opposed to from legitimate agreements and business realities. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The SAC premises Plaintiff's injury on Apple competing in the search advertising market. But, as set forth above, the SAC has not alleged—and cannot allege—that Apple intended to enter, was prepared to enter, *see Innovation Marine*, 2018 WL 1461501, at *8–12, or was otherwise "ready to compete" in, the general search or search advertising markets, *Space Expl. Techs. Corp. v. Boeing Co.*, 2006 WL 7136649, at *4 (C.D. Cal. May 12, 2006), *aff'd*, 281 F. App'x 769 (9th Cir. 2008). In the absence of such

[7] Antitrust injury is a prerequisite for damages claims under Section 4 of the Clayton Act and injunctive claims under Section 16 alike. *See Cargill*, 479 U.S. at 110, 112 nn. 5–6; *Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 967 (9th Cir. 1999).

allegations, Plaintiff's claimed injury is not sufficient to sustain antitrust standing. *See Brown v. 140 NM LLC*, 2019 WL 2750889, at *4 (N.D. Cal. May 20, 2019) (declining to find antitrust injury where no facts showed that "prices . . . increased as a result of the alleged agreement"); *Korea Kumho Petrochemical v. Flexsys Am. LP*, 2008 WL 686834, at *5 (N.D. Cal. Mar. 11, 2008) (declining to find antitrust injury where plaintiff did not allege a "cognizable injury proximately caused" by alleged misconduct). Plaintiff cannot establish its injury by simply wishing that an innovative company like Apple would launch products that it never has launched before.

***Directness of the Injury***. Plaintiff also does not have antitrust standing because it cannot establish that its alleged injury "was the direct result of [the defendant's] allegedly anticompetitive conduct." *Am. Ad Mgmt.*, 190 F.3d at 1058. To assess directness, courts "look to the chain of causation between [that] injury and the alleged restraint in the market." *Id.* "There 'must be not a mere causal link, but a direct effect.'" *Jacobsen v. Katzer*, 2006 WL 3000473, at *3 (N.D. Cal. Oct. 20, 2006) (quoting *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989 (9th Cir. 2000) (some quotation marks omitted).

Here, Plaintiff's alleged injury is prohibitively indirect. Based on Plaintiff's allegations, its injury would have occurred only if, but-for that agreement, Apple: (1) undertook a multi-billion dollar effort to develop its own general search technology; (2) launched a successful general search engine; (3) used this general search engine as the pre-set default in Safari; (4) developed separate search advertising technology (which Plaintiff never alleges Apple has tried to do); and (5) launched a successful search advertising business that somehow resulted in Plaintiff winning search advertising auctions on Google with lower bids than it previously paid. Courts routinely dismiss claims on antitrust standing grounds where, as here, "the chain of causation between [a plaintiff's] injury and the alleged restraint . . . contains several somewhat vaguely defined links." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540–41, (1983). This factor weighs strongly in favor of dismissal. *See Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1117 (E.D. Cal. 2002) (finding "no direct injury" where claims depended on "a multitude of speculative intervening events").

***Speculative Measure of the Harm.*** For essentially the same reasons, Plaintiff's theory of harm is impermissibly speculative. In assessing whether the harm a plaintiff alleges is speculative, courts consider whether "the alleged injury was indirect" and whether "the alleged effects . . . may have been produced by independent factors." *Am. Ad Mgmt.*, 190 F.3d at 1059 (omission in original) (quoting *Associated Gen. Contractors*, 459 U.S. at 542). Given the "many speculative links in the chain of causation" required under Plaintiff's theory, there can be "no way of knowing[] what would have occurred" but for the alleged conduct, including whether Plaintiff "would have avoided the harm it alleges" altogether. *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 459–61 (9th Cir. 2021) (finding that plaintiff's damages were speculative for the same reasons that plaintiff could not establish directness). Plaintiff sets forth no basis to establish it would not have been injured in a but-for-world, in light of its total failure to plead that Apple would have developed general search capabilities or taken any steps to develop search advertising capabilities. *See Innovation Marine*, 2018 WL 1461501, at *8–12; *Space Expl. Techs. Corp.*, 2006 WL 7136649, at *4. This factor, too, thus strongly weighs against Plaintiff's ability to plead antitrust standing here, and likewise supports dismissal. *See City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 268–69 (3d Cir. 1998) (explaining alleged injuries were speculative where they "may never occur").

***Risk of Duplicative Recovery.*** The SAC's requested relief also creates a risk of duplicative recovery. "The risk to be avoided under this factor is that . . . plaintiffs may be [able] 'to assert conflicting claims to a common fund . . . .'" *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 542 (9th Cir. 1987) (citation omitted). The SAC does just that by both asking the Court to "require Apple to disgorge all [] revenue" derived from Google under the alleged agreements and seeking treble damages, SAC ¶¶ 275(f), 276(c). *Cf. In re Generic Pharms. Pricing Antitrust Litig.*, 605 F. Supp. 3d 672, 678 (E.D. Pa. 2022) (explaining that permitting disgorgement would "undermine the policy against duplicative recoveries"). So, too, does the fact that consumer plaintiffs in a parallel action brought by Plaintiff's counsel seek the monetary relief that Plaintiff seeks here. *See* Compl. ¶¶ 161, 163, *Arcell v. Google LLC*, No. 5:22-cv-02499-EJD (N.D. Cal.), ECF No. 1.

***Complexity in Apportioning Damages.*** Finally, "the fact that [Plaintiffs'] alleged injuries are both indirect and derivative would require a complex trial to apportion damages." *Toscano*, 201

F. Supp. 2d at 1118–19; *see also Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 111 (S.D.N.Y. 2015). Search advertisers can participate in search advertising auctions that are run every time a user enters a search query on Google Search. Proving how search advertising auctions on Google Search would have come out (*i.e.*, who would have won and at what bid price) had Apple launched a search engine and search advertising business many years ago, and whether Plaintiff or any putative class member who could have participated in those auctions was damaged, poses innumerable complex proof issues. Plaintiff has pled no facts to establish that it could apportion damages among putative class members or even assess on a class-wide basis whether any individual advertisers were harmed.

In sum, Plaintiff fails to allege facts sufficient to show antitrust injury under the dispositive first factor of the antitrust standing inquiry, and the remaining factors independently show that it lacks antitrust standing in this case. The Court should dismiss Plaintiff's Sherman Act claims.

## D. <u>Each of Plaintiff's State Law Claims Must Be Dismissed</u>

### 1. Plaintiff's Cartwright Act Claim

Plaintiff's Cartwright Act claim must be dismissed for the same reasons as Plaintiff's Sherman Act claim because "the requirements for a claim under California's Cartwright Act are identical to those for a claim under the Sherman Act." *Colonial Med. Grp., Inc. v. Cath. Health Care W.*, 444 F. App'x 937, 939 (9th Cir. 2011); *see also Name.Space*, 795 F.3d at 1131 n.5; *Cisco Sys., Inc. v. Dexon Comput., Inc.*, 2021 WL 5848080, at *5 (N.D. Cal. Dec. 9, 2021).

### 2. Plaintiff's Unfair Competition Law Claim

Plaintiff's UCL claim fares no better. "[T]he UCL creates 'three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent,'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citation omitted), and "provides only for equitable remedies," *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2 (9th Cir. 2020) (citation omitted). Plaintiff appears to seek relief under each of the three UCL prongs, SAC ¶¶ 255–58,[8] but none is satisfied, and, in any event, Plaintiff does not establish that it lacks an adequate remedy at law such that it would be entitled to the equitable relief it seeks under the UCL.

---

[8] A less generous reading of the SAC suggests that the UCL claim includes only a claim under the "unlawful" prong, as the SAC's references to the unfair and fraudulent prongs of the UCL are cursory, at best. SAC ¶¶ 257–58.

***Unlawful Acts Prong.*** Plaintiff's "unlawful acts" UCL claim is predicated on its Sherman and Cartwright Act claims, SAC ¶ 255, and must be dismissed for the same reasons as those claims. *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 982 (N.D. Cal. 2019).

***Fraudulent Acts Prong.*** To the extent Plaintiff advances a "fraudulent acts" UCL claim, SAC ¶ 258, it does not plead any fraudulent conduct by Apple or Google—let alone with the degree of particularity required under Federal Rule of Civil Procedure 9(b). *Parducci*, 399 F. Supp. 3d at 982; *see also Grant v. Pensco Tr. Co.*, 2014 WL 1471054, at *6 (N.D. Cal. Apr. 15, 2014).

***Unfair Acts Prong*** And to the extent Plaintiff advances an "unfair acts" UCL claim, the claim must be dismissed for several independent reasons. At the outset, the claim necessarily fails for the same reasons as Plaintiff's antitrust claims and because it merely echoes its theories under the other prongs of the UCL. "[T]he determination that . . . conduct is not an unreasonable restraint of trade necessarily implies that [it] is not 'unfair' towards consumers," requiring dismissal. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018) (citation omitted)); *see also DRAM*, 28 F.4th at 54 n.7. Similarly requiring dismissal, the claim overlaps "completely with [the] claim under the [unlawful] prong" and any claim under the fraudulent prong. *See Parducci*, 399 F. Supp. 3d at 982; *see also Coffee v. Google, LLC*, 2022 WL 94986, at *13 (N.D. Cal. Jan. 10, 2022); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017).

In any event, Plaintiff does not allege plausible violations of the UCL under any of the applicable tests for pleading an "unfair acts" claim. Because "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action," *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *18 (N.D. Cal. Mar. 14, 2014) (citation omitted), courts consider whether the alleged practice either: (1) "is 'tethered to any underlying constitutional, statutory or regulatory provision, . . . threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law'"; (2) "is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'"; or (3) has an impact on the alleged victim that "outweighs 'the reasons, justifications and motives of the alleged wrongdoer.'" *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (citations omitted). With respect to the tethering test, "nowhere in its complaint . . . does [Plaintiff] allege . . . that the misconduct it describes . . . threatens an *incipient*

violation of an antitrust law," *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1155 (N.D. Cal. 2019), and all that Plaintiff provides are the same conclusory allegations that fail as to its Sherman Act claims. Plaintiff's bald allegations that Defendants violated the Sherman Act through conspiratorial agreements that have purportedly been in effect since 2005 do not establish any separate, incipient violation of the antitrust laws. With respect to the immorality test, the SAC does not include any allegations that set out purportedly immoral, unethical, oppressive, unscrupulous, or substantially injurious alleged conduct. *See Nazemi v. Specialized Loan Servicing, LLC*, 2022 WL 17220707, at *4 (C.D. Cal. Oct. 31, 2022). And with respect to the "balancing" test, Plaintiff "fails to plead sufficient facts for [the Court] to say whether the utility of the defendant's conduct does or does not outweigh the gravity of the alleged harm to the plaintiffs," *Victor*, 2014 WL 1028881, at *18, and in fact provides no allegations at all as to whether any harm it faces *outweighs* the numerous benefits to consumers that Apple's and Google's vertical business relationship provides.

***Adequate Remedies Available at Law.*** While Plaintiff seeks disgorgement and restitution under the UCL,[9] SAC ¶¶ 259, 263, its UCL claim must also be dismissed because it does not allege—and cannot establish—that it "lacks an adequate remedy at law" to warrant such relief. *Sonner*, 971 F.3d at 844. "[I]n fact, [Plaintiff] does the opposite by seeking both monetary damages and restitution for the same alleged conduct without alleging how the monetary damages would not fully compensate [its] loss." *Barrett v. Optimum Nutrition*, 2022 WL 2035959, at *5 (C.D. Cal. Jan. 12, 2022); *see also Sonner*, 971 F.3d at 844. Plaintiff's UCL claim should be dismissed.

### 3. Plaintiff's Unjust Enrichment Claim

Plaintiff's claim for unjust enrichment also cannot survive. "[T]here is no[] . . . cause of action for 'unjust enrichment'" under California law, but courts sometimes construe a purported unjust enrichment claim "as a quasi-contract claim seeking restitution." *Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1139 (S.D. Cal. 2021) (citation omitted). They will only do so, however, in circumstances involving "mistake, fraud, coercion, or request," *see id.* (citation omitted), and in which restitution is the only adequate remedy available, *see Optimum Nutrition*, 2022 WL 2035959,

[9] Notably, "[t]he California Supreme Court has held that nonrestitutionary disgorgement is . . . not allowed under the UCL." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1009 (9th Cir. 2008) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 948 (Cal. 2003)).

at *6. Plaintiff's unjust enrichment claim ignores these requirements and instead relies on its (flawed) antitrust claims to allege that Apple and Google were unjustly enriched "[a]s a result of their unlawful conduct," SAC ¶ 268, which is insufficient for several reasons.

*First*, "[b]ecause [Plaintiff's] other causes of action did not state a claim, [its unjust enrichment] claim also [necessarily] fails." *Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020); *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 810 (N.D. Cal. 2020). *Second*, "Plaintiff does not allege any quasi-contract between the parties" sufficient for this court to infer a quasi-contract claim in the first instance. *Swift Harvest USA, LLC v. Boley Int'l HK Ltd*, 2020 WL 7380148, at *16 (C.D. Cal. Sept. 22, 2020). "[A] bald conclusory allegation of supracompetitive prices fails to satisfy [its] pleading requirements." *Pistacchio v. Apple Inc.*, 2021 WL 949422, at *3 (N.D. Cal. Mar. 11, 2021). *Third*, the SAC's allegations are insufficient to "plausibly plead[] an actionable wrong" because they do not allege any mistake, fraud, coercion, or request. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1096 (N.D. Cal. 2022); *see also Dairy, LLC v. Milk Moovement, Inc.*, 2022 WL 2392622, at *8 (E.D. Cal. July 1, 2022) (dismissing claim that "incorporate[d] by reference all of [plaintiff's] other allegations and allege[d] in conclusory terms that [defendant was] unjustly enriched"). And *last*, as set out above, *see supra* p. 20 & n.9, Plaintiff does not "adequately plead[]" that restitution is the only adequate remedy available at law to address the harm that it alleges, *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1157 (N.D. Cal. 2021), given that it expressly seeks monetary damages for the same conduct for which it seeks restitution, *Optimum Nutrition*, 2022 WL 2035959, at *6. Plaintiff's unjust enrichment claim should be dismissed.

**E. <u>The Claims Against the Individual Defendants Should Be Dismissed</u>**

Even if the claims proceed (which they should not), the lack of plausible allegations that support Plaintiff's fanciful horizontal conspiracy theory mandates dismissal of its claims against the Individual Defendants. Claims under the Sherman and Cartwright Acts can be sustained against such defendants only where a plaintiff plausibly alleges their direct participation in, knowing approval of, or ratification of inherently wrongful conduct. *See In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1040–41 n.4, 1050–51 (N.D. Cal. 2021) (citing *Murphy Tugboat Co. v. Shipowners & Merchs. Towboat*

*Co.*, 467 F. Supp. 841, 851–54 (N.D. Cal. 1979), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981)). Likewise, a defendant's individual liability under the UCL "must be based on his personal participation in the [allegedly] unlawful practices and unbridled control" over those practices. *Abdali v. Agiliti Surgical, Inc.*, 2020 WL 5642355, at *2 (E.D. Cal. Sept. 22, 2020) (citation omitted); *see O'Connor v. Uber Techs., Inc.*, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013).

Here, the SAC contains no plausible, non-conclusory allegations that connect the Individual Defendants to the alleged horizontal conspiracy between Apple and Google, as the vast majority of allegations directed toward them are still nothing more than bare assertions that they conspired. SAC ¶¶ 94–96, 184, 189. While Plaintiff avers that the Individual Defendants met "privately and secretly" to discuss and confirm the companies' agreements, SAC ¶ 219, it does not explain how such meetings were anything more than business meetings necessary to carry out a lawful vertical business integration between Apple and Google. Nor can the SAC plausibly allege that the Individual Defendants knowingly approved of or ratified inherently unlawful acts, as the referenced agreements in the SAC are non-exclusive vertical agreements that are not *per se* unlawful under Ninth Circuit precedent. *See Rutman Wine Co.*, 829 F.2d at 734. In the end, Plaintiff brings claims against the Individual Defendants solely because of their role as executives and does not plausibly suggest any involvement by the Individual Defendants beyond merely acting in that capacity. SAC ¶¶ 94, 111, 181, 185, 189. The claims asserted individually against the Individual Defendants should be dismissed.[10]

### F. <u>The Statute of Limitations Bars Damages Predating December 27, 2017</u>

Even assuming the SAC states viable claims under the Sherman Act and Cartwright Act, the statute of limitations still bars relief for damages incurred before December 27, 2017. Private actions brought under Section 4 of the Clayton Act and the Cartwright Act are subject to a four-year

[10] Plaintiff's unjust enrichment claim as to the Individual Defendants should also be dismissed because Plaintiff failed to allege that they received and unjustly retained a benefit at Plaintiff's expense. *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (explaining that a plaintiff must show that a defendant received and unjustly retained a benefit at the plaintiff's expense to state a claim for unjust enrichment). In its Fifth Claim for Relief, Plaintiff broadly states that "Defendants have and will continue to be unjustly enriched by the receipt of, at a minimum, unlawful inflated prices and unlawful profits on sales of search advertising in the search advertising market," but does not explain how *the Individual Defendants* received and unjustly retained a benefit. SAC ¶ 268.

limitations period. *See* 15 U.S.C. § 15b; *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1208 n.10 (N.D. Cal. 2015) (citing Cal. Bus. & Prof. Code § 16750.1). As the Court previously held, Plaintiff may not recover for acts that occurred "outside th[is] limitations period," which bars relief for damages incurred before December 27, 2017. *Crane II*, 2023 WL 2769096, at *7 (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997)).

While Plaintiff still attempts to avoid this limitations-period bar by claiming fraudulent concealment, it likewise still "entirely fails to meet the[] pleading requirements" for such a claim. *Id.*; *see also Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1073–74 (N.D. Cal. 2016). Plaintiff has made no effort to remedy this deficiency, adding only the vague allegations that Apple and Google kept their supposed "written agreements secret" and that the arbitration agreement it has with Google "was obtained through [] concealment and suppression of material facts." SAC ¶¶ 271, 274. That is far from enough. Plaintiff's claims for damages arising before December 27, 2017 should be dismissed.

### G. <u>The Court Should Dismiss the SAC's Requests for Public Injunctive Relief and Disgorgement Under the Sherman Act and Cartwright Act</u>

The Court should also dismiss Plaintiff's Sherman and Cartwright Act claims to the extent that they seek public injunctive relief, restitution, and disgorgement. The SAC's requests for relief are muddled and do not clearly outline the relief Plaintiff seeks. *See* SAC ¶¶ 275–79. Outside of its request for damages, Plaintiff appears to seek only "restitution and disgorgement . . . for the benefit of the general public" in furtherance of its Sherman Act and Cartwright Act claims. *Id.* ¶ 277. But Plaintiff may not seek "public injunctive relief" under the Sherman Act or the Cartwright Act because neither statute authorizes such relief. *Crane I*, 621 F. Supp. 3d at 1032 (noting that "to the Court's knowledge, no court has interpreted the Cartwright Act" or "any . . . law other than the UCL, CLRA, and FAL" to authorize such relief); *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 919 (N.D. Cal. 2020).

Regardless of Plaintiff's request for "public injunctive relief," Plaintiff cannot seek restitution or disgorgement via Sections 4 and 16 of the Clayton Act. Section 4 of the Clayton Act permits Sherman Act claimants to seek treble "damages," 15 U.S.C. § 15(a), while Section 16 permits prospective "injunctive relief . . . against threatened loss or damage," *id.* § 26. Disgorgement and

restitution, which are retrospective remedies, qualify as neither. *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *13 (N.D. Cal. July 7, 2016) ("[T]he Ninth Circuit disallows private use of Section 16 to pursue disgorgement."); *Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) (same). Such relief is equally unavailable under the Cartwright Act, which gives antitrust plaintiffs seeking damages an adequate remedy at law. *Cf. In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 4192199, at *7 (N.D. Cal. May 2, 2013) (recommending dismissal of claims for restitution under the Cartwright Act because it "provides specific remedies for antitrust violations"), *report and recommendation adopted as modified*, 2013 WL 4505701 (N.D. Cal. Aug. 21, 2013). The Court should bar Plaintiffs from pursuing public injunctive relief, restitution, and disgorgement in furtherance of its Sherman and Clayton Act claims.

**H. <u>The Court Should Dismiss Plaintiff's Claims Without Further Leave to Amend</u>**

The Court should dismiss the SAC without leave to amend. "[D]ismissal without leave to amend is proper if it is clear . . . the complaint could not be saved by amendment," and a "court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted). Plaintiff has now tried (and failed) to plead plausible claims in four separate versions of its complaint, including (1) the original complaint, (2) the FAC, (3) a proposed SAC in connection with a motion to amend denied as moot, *see* ECF No. 90-2, and (4) the SAC here.[11] There is no way Plaintiff can plead around the deficiencies of the SAC. *See, e.g.*, *Brown*, 2019 WL 2750889, at *4 (dismissing claims on standing and antitrust standing grounds and concluding that "further attempts to amend would be futile"). What is more, it is "clear Plaintiff has no facts to add [and] thus [that] amendment would be futile." *Waller v. Cnty. of Sutter*, 2022 WL 2441310, at *2 (E.D. Cal. June 30, 2022) (dismissing cause of action in second amended complaint with prejudice); *see also In re Dynamic Random Access Memory Indirect Purchaser Litig.*, 2020 WL 8459279, at *11 (N.D. Cal. Nov. 24, 2020) (dismissing Sherman Act claims with prejudice because plaintiff failed "to correct the deficiencies identified in

---

[11] Notably, Plaintiff's counsel's complaint in the parallel *Arcell* action presents claims that are nearly identical to those in Plaintiff's previous complaints here. *See* Compl., *Arcell v. Google LLC*, No. 5:22-cv-02499-EJD (N.D. Cal.), ECF No. 1.

the original complaint"), *aff'd sub nom. In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42 (9th Cir. 2022).

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC without leave to amend.

DATED: June 23, 2023

By: /s/ *Steven C. Sunshine*

Steven C. Sunshine (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

Jack P. DiCanio (SBN 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4660
Facsimile: (213) 621-5430
Email: jack.dicanio@skadden.com

Karen Hoffman Lent (admitted *pro hac vice*)
Michael A. Lanci (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
Email: karen.lent@skadden.com
Email: michael.lanci@skadden.com

*Attorneys for Defendants Apple Inc. and Tim Cook*

DATED: June 23, 2023

By: /s/ *John E. Schmidtlein*

John E. Schmidtlein (SBN 163520)
Carol J. Pruski (SBN 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Email:jschmidtlein@wc.com
Email: cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

## SIGNATURE ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from any other signatory to this document.

DATED: June 23, 2023

By: /s/ *Steven C. Sunshine*

Steven C. Sunshine