Jack P. DiCanio (SBN 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4660
Facsimile: (213) 621-5430
Email: jack.dicanio@skadden.com

Steven C. Sunshine (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

(additional counsel listed on signature page)

*Attorneys for Defendants Apple Inc. and Tim Cook*

John E. Schmidtlein (SBN 163520)
Carol J. Pruski (SBN 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile:  (202) 434-5029
Email: jschmidtlein@wc.com
Email: cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CALIFORNIA CRANE SCHOOL, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, ALPHABET INC., XXVI HOLDINGS INC., APPLE INC., TIM COOK, SUNDAR PICHAI, and ERIC SCHMIDT,<br><br>Defendants. | CASE NO. 5:21-cv-10001-PCP<br><br>**DEFENDANTS' STATEMENT OF RECENT DECISION**<br><br>Date: February 8, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 8—4th Floor<br>Judge: Hon. P. Casey Pitts |

1  Pursuant to Civil Local Rule 7-3(d)(2), Defendants Google LLC, Alphabet Inc., XXVI
2  Holdings Inc., Apple Inc., Tim Cook, Sundar Pichai, and Eric Schmidt ("Defendants") respectfully
3  submit the attached recent decision by the Hon. Rita F. Lin of the United States District Court for
4  the Northern District of California in *Arcell et al. v. Google LLC et al.*, No. 22-cv-02499-RFL (N.D.
5  Cal. Feb. 5, 2024), in which Judge Lin granted a motion to dismiss in favor of Defendants.  The
6  decision is relevant to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF
7  No. 115), which will be heard by this Court on February 8, 2024.

8  The *Arcell v. Google LLC* decision was published after the date Defendants filed their reply
9  brief, which was August 25, 2023.  (*See* ECF No. 126.)

10  A copy of the *Arcell v. Google LLC* decision is attached hereto as Exhibit 1.

12  DATED:  February 5, 2024          By: /s/   Steven C. Sunshine

Steven C. Sunshine (admitted *pro hac vice)*
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

Jack P. DiCanio (SBN 138752)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4660
Facsimile: (213) 621-5430
Email: jack.dicanio@skadden.com

Karen Hoffman Lent (admitted *pro hac vice*)
Michael A. Lanci (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
Email: karen.lent@skadden.com
Email: michael.lanci@skadden.com

*Attorneys for Defendants Apple Inc. and Tim Cook*

DATED:  February 5, 2024

By: /s/_____*John E. Schmidtlein*_____

John E. Schmidtlein (SBN 163520)
Carol J. Pruski (SBN 275953)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email:jschmidtlein@wc.com
Email: cpruski@wc.com

*Attorneys for Defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Sundar Pichai, and Eric Schmidt*

**<u>ATTESTATION</u>**

I, Steven C. Sunshine, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1, I hereby attest that all counsel whose e-signatures (/s/) appear on this document concurred in this filing.

DATED:  February 5, 2024                                         By: /s/  *Steven C. Sunshine*

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY KATHERINE ARCELL, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE LLC, et al.,<br><br>　　　　　Defendants. | Case No.  22-cv-02499-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 70 |

　　　　Defendants' motion to dismiss is granted.  This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties. Plaintiffs assert claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2, as well as California law, based on two different theories of liability.

　　　　**1.**  Plaintiffs' first theory is that Apple and Google allegedly entered into a secret horizontal agreement under which "Apple would not compete in the search business in competition with Google."  (FAC ¶ 22).  Plaintiffs allege that, in exchange, "Google paid Apple to stay out of the search business" (FAC ¶ 58), "agree[ing] to share its profits from the search business with Apple and, in addition, to pay Apple extra billions of dollars" (FAC ¶ 23).

　　　　The FAC, however, fails to cure the deficiencies previously identified by the Court.  The prior order granting Defendants' motion to dismiss held that Plaintiffs did not allege facts plausibly suggesting "the existence of any agreement preventing Apple from entering the search engine market, including a conspiracy agreement to monopolize."  *Arcell v. Google LLC*, No. 5:22-CV-02499-EJD, 2023 WL 5336865, at *4 (N.D. Cal. Aug. 18, 2023).  Yet as in their original complaint, Plaintiffs have not pled "enough facts to state a claim to relief that is

1

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiffs continue to allege that the horizontal agreement was "formed, confirmed, reconfirmed, and negotiated from time to time in private, secret, and clandestine personal meetings between" Google and Apple executives. (FAC ¶ 28; *see also* FAC ¶ 180(b)). But "this allegation is nothing more than a conclusory statement," as the FAC still "does not answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). Indeed, for instance, Plaintiffs acknowledge that they "do not know the date when the agreement between Apple and Google was originally formed." (FAC ¶ 32); *see Twombly*, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Nor do Plaintiffs offer non-conclusory facts about what was discussed at these meetings, much less any that would plausibly show that a horizontal agreement was ever made. *Cf. In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, No. 09CV2002, 2012 WL 3637291, at *2 (S.D. Cal. Aug. 20, 2012), *aff'd sub nom. In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015) ("Simply alleging that Defendants on a number of occasions had the opportunity to agree, is insufficient."). Although the FAC again points to photographs of Defendants Tim Cook and Sundar Pichai at a restaurant as proof of these secret meetings about the horizontal agreement (FAC ¶¶ 31–33, 128–29), Plaintiffs have added no new facts to make this allegation plausible. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015) ("It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible.").

In any event, "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall*, 518 F.3d at 1049. Meetings between executives of companies that, as Plaintiffs themselves allege, have an ongoing vertical business relationship (*see* FAC ¶ 103) are "fully consistent" with "'rational, legal business behavior,'"

2

*Name.Space*, 795 F.3d at 1130 (quoting *Kendall*, 518 F.3d at 1049); *see also Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("When considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009))).

Plaintiffs also fail to add any new facts about the series of quotations that they maintain plausibly suggests Apple agreed not to compete with Google in the search business. For instance, Plaintiffs allege that an unidentified "senior Apple employee wrote to a Google counterpart: 'Our vision is that we work as if we are one company.'" (FAC ¶ 21). Plaintiffs admitted at the hearing that they do not know who this individual is, let alone the area or level of responsibility that person had, if any, in Google's search business. As another example, Plaintiffs allege that Defendant Eric Schmidt stated onstage at an event with Steve Jobs in 2007 unveiling the original Apple iPhone, "[Y]ou can actually merge without merging," and "[i]f we just sort of merged the two companies, we could just call them AppleGoo." (FAC ¶ 113). But as this Court previously held, "[t]hese statements are too vague and are not alleged to be directed specifically to the issue of search engines." *Arcell*, 2023 WL 5336865, at *3.

Similarly, Plaintiffs offer no plausible allegations regarding Apple's plans to enter the search market. The assertion that Apple "[i]n the past" had been developing its own search engine is wholly conclusory and speculative. (*See* FAC ¶ 112). Further, Plaintiffs' allegation "that as late as 2014 Apple had been working on its own search engine" (FAC ¶ 131) undermines the plausibility of Plaintiffs' core theory that Apple had agreed with Google not to do so since at least 2005 (FAC ¶ 108). *See Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (plaintiff's theory was "implausible in the face of contradictory . . . facts alleged in her complaint").

The FAC's principal additions to its horizontal agreement theory are likewise insufficient for similar reasons. While Plaintiffs allege that the horizontal agreement was both "written" and "oral" (FAC ¶ 172), without further facts, these are bare and conclusory assertions that are not entitled to the presumption of truth, *see Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In addition, Plaintiffs allege that the horizontal agreement can be "infer[red]" by their "written

3

Revenue Sharing Agreement and in their written Pre-Installation Agreements." (FAC ¶ 156). But this assertion is devoid of any facts that would make such an inference plausible. *See Iqbal*, 556 U.S. at 678. Moreover, Plaintiffs cannot cure this pleading defect simply "by alleging that the anticompetitive agreement was a secret term of an otherwise public agreement." *PharmaRx Pharm., Inc. v. GE Healthcare, Inc.*, 596 F. App'x 580, 580 (9th Cir. 2015); *see also Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, No. 11-CV-2652-GPC-RBB, 2013 WL 3873074, at *6 (S.D. Cal. July 25, 2013), *aff'd*, 642 F. App'x 665 (9th Cir. 2016) (allegations that "agreements were written in 'code language' to disguise their activities aimed at market domination and memorialize an otherwise secret agreement" were conclusory). Similarly, Plaintiffs assert that a horizontal agreement can be inferred in this case because Apple and Google "have abused their size and have utilized their size in the past for unlawful purposes" (FAC ¶ 180(g)), alleging, for instance, that "Apple has been found to have engaged in a per se conspiracy with book publishers to fix the price of ebooks" (FAC ¶ 180(e)). But like Plaintiffs' other allegations, the FAC does not contain facts from which one could plausibly infer that this conduct carried over into the search business. *See In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) ("Descriptions of *other* instances in which some of these defendants were found to have engaged in price-fixing is provocative, but plaintiffs have not shown enough commonalities between those circumstances and the present case to make those allegations probative.").

Accordingly, as Plaintiffs have had ample opportunity to amend and have failed to cure the deficiencies previously identified by the Court, their Section 1 and Section 2 claims predicated on the horizontal agreement theory are **DISMISSED WITHOUT LEAVE TO AMEND**.

2. Plaintiffs' second theory is that Google's exclusive default agreement, under which Apple set Google as the default search engine for its Safari web browser, foreclosed competition in the general search services market in the United States. (*See, e.g.*, FAC ¶¶ 103, 204, 220).

As a threshold matter, Plaintiffs have adequately pled a relevant market. "[T]o state a

valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.'" *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008). Plaintiffs plainly state that the relevant market is "[g]eneral search services in the United States." (FAC ¶ 162; *see also* FAC ¶ 203). General search services "allow consumers to find responsive information on the internet by entering keyword queries in a search engine." (FAC ¶ 162). Plaintiffs further allege that Google has a 90% share of this market. (FAC ¶¶ 45, 206–07). Thus, the FAC, despite some references to other markets, sufficiently defines the U.S. general search services market as the relevant market underlying Plaintiffs' antitrust claims.

Nevertheless, Plaintiffs' Section 1 and 2 claims premised on their exclusive dealing theory fail because they have not adequately alleged that Google's exclusive default agreements substantially foreclosed competition in the U.S. general search services market. "Exclusive dealing is a theory under both § 1 and § 2 of the Sherman Act." *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1029–30 (N.D. Cal. 2015). "[A]n exclusive dealing arrangement does not violate the antitrust laws unless its probable effect is to foreclose competition in a 'substantial share' of the relevant market." *Eastman v. Quest Diagnostics Inc.*, No. 15-CV-00415-WHO, 2015 WL 7566805, at *11 (N.D. Cal. Nov. 25, 2015) (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327–29 (1961)). While some courts have required a showing of a higher degree of market foreclosure under Section 1, *see id.* at *11 & n.8, "whether bringing claims under section 1 or section 2, a plaintiff still must plead facts that support a plausible inference that the exclusive dealing arrangement forecloses a substantial share of the relevant market," *id.* at *11.

Here, Plaintiffs' allegations fail to raise a plausible inference of substantial foreclosure. Plaintiffs allege that Google's exclusive default agreements "foreclosed a substantial share of the general search services market." (FAC ¶ 217). But "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678. Although Plaintiffs also assert that the exclusive default agreements "effectively foreclosed new and potential entrants from entering the market or gaining their naturally competitive market shares" (FAC ¶ 206), as well as "harmed competition by impeding the distribution of innovative

5

search apps that offer search features that would otherwise challenge Google" (FAC ¶ 169), these allegations are entirely conclusory and speculative.

Aside from these naked assertions, Plaintiffs solely rely on their allegation that Google possesses a 90% share of the U.S. general search services market to show that the exclusive default agreements substantially foreclosed competition in that market. (*See* FAC ¶ 206; *see also* Opp. at 18). But "allegations of large market share" are not enough to survive a motion to dismiss absent sufficient allegations of anticompetitive conduct. *Abbyy USA Software House, Inc. v. Nuance Commc'ns Inc.*, No. C 08-01035 JSW, 2008 WL 4830740, at *2 (N.D. Cal. Nov. 6, 2008). Plaintiffs fail to explain, for example, how Google's share of the U.S. general search services market "w[as] actually affected" by the exclusive default agreements. *Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, No. 12-CV-05847-WHO, 2014 WL 524076, at *11 (N.D. Cal. Feb. 6, 2014); *see also Rheumatology Diagnostics Lab'y*, 2013 WL 3242245, at *11 (concluding at the pleading stage that substantial foreclosure could not be evaluated where, among other things, "Plaintiffs d[id] not specify how [an alleged monopolist]'s market share has changed over time in relation to the execution of the" agreement).

Plaintiffs' assertion of substantial foreclosure of competition in the U.S. general search services market is otherwise "devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "To plausibly allege foreclosure . . . plaintiffs at the very least needed to plead facts sufficient to support the inference that the exclusive dealing arrangements have some appreciable impact on the market." *Eastman v. Quest Diagnostics Inc.*, 724 F. App'x 556, 558 (9th Cir. 2018). While Plaintiffs allege that the exclusive default agreement "covers roughly 36 percent of all general search queries in the United States, including mobile devices and computers" (FAC ¶ 17), this allegation is insufficient to plausibly establish substantial foreclosure of competition in the U.S. general search services market. For one, Plaintiffs allege no facts to support this conclusory assertion, such as identifying the source of the figure. "[T]he Court must insist on some greater specificity in pleading 'before allowing a potentially massive factual controversy to proceed.'" *Feitelson*, 80 F. Supp. 3d at 1032 (quoting

6

*Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).  For another, as Google contends (Mot. at 23 n.9), coverage is not necessarily the same as foreclosure, and Plaintiffs do not argue to the contrary.  Thus, Plaintiffs' allegation, without more, does not plausibly show that the exclusive default agreement foreclosed competition in a substantial share of the U.S. general search services market.  *See Rheumatology Diagnostics Lab'y*, 2014 WL 524076, at *10 (failure to plausibly show substantial foreclosure where plaintiffs did not allege "how the agreement affected . . . any . . . market participant's share" (internal quotation marks and citation omitted)); *see also Eastman*, 2015 WL 7566805, at *11 ("To determine whether the foreclosure amounts to a substantial share, 'it is necessary to weigh the probable effect of the contract on the relevant area of effective competition, taking into account the relative strength of the parties, the proportionate volume of commerce involved . . . , and the probable immediate and future effects which preemption of that share of the market might have on effective competition.'" (quoting *Tampa Elec.*, 365 U.S. at 329)).[1]

Plaintiffs' counsel represented at the hearing on the motion that Plaintiffs could amend to allege facts supporting a plausible inference of substantial foreclosure.  Because Plaintiffs have not previously had an opportunity to test the legal adequacy of their theory, and the Court cannot conclude that amendment would be futile on the current record, Plaintiffs' Section 1 and Section 2 claims based on the exclusive dealing theory are **DISMISSED WITH LEAVE TO AMEND**.

    **3.**  Additionally, Plaintiffs fail to establish antitrust standing on either of their theories

---

[1] To the extent Google suggests that Plaintiffs must allege the precise percentage of the market that is foreclosed (Mot. at 23; Reply at 9), the Court disagrees.  At the pleading stage, "a plaintiff is not necessarily required to allege a specific percentage of foreclosure."  *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2017 WL 2774406, at *24 (N.D. Cal. June 26, 2017) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 452 n.12 (4th Cir. 2011)); *see also Applied Med. Res. Corp. v. Medtronic, Inc.*, No. 823CV00268WLHDFM, 2023 WL 5503107, at *2 n.1 (C.D. Cal. Aug. 2, 2023) ("[T]here is no rule that a plaintiff must calculate and allege the exact portion of foreclosed sales in an initial complaint.").

because they cannot demonstrate an antitrust injury, which requires "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999). For the reasons discussed above, Plaintiffs have not adequately alleged unlawful conduct, let alone an antitrust injury, as there are no plausible allegations that Defendants entered into an illegal horizontal agreement or that Defendants' exclusive default agreement substantially foreclosed competition in the U.S. general search services market.

4. As for the Individual Defendants, Plaintiffs have "not alleged specific facts identifying the relevant conduct of each defendant" entitling them to relief, in contravention of Rule 8 of the Federal Rules of Civil Procedure. *Cook v. Tennessee*, No. 23-CV-04619-JCS, 2023 WL 7174226, at *3 (N.D. Cal. Oct. 31, 2023); *see also Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 997 (D. Haw. 2019) ("[C]onclusory allegations that do not identify the role of the defendants do not comply with Rule 8(a)."); *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (dismissal is proper where the complaint fails to "'state[] clearly how each and every defendant is alleged to have violated plaintiffs' legal rights,'" "mak[ing] 'everyone did everything' allegations"). "Nor has [the FAC] identified the specific claims [it] asserts against each" Individual Defendant, *Cook*, 2023 WL 7174226, at *3, as Plaintiffs also fail to name any of the Individual Defendants in any of the asserted claims for relief. As it is conceivable that Plaintiffs could cure this defect, and the order granting the previous motion to dismiss did not address this defect in the claims against the Individual Defendants, the claims against the Individual Defendants are **DISMISSED WITH LEAVE TO AMEND**.

5. Having dismissed Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); (*see* FAC ¶¶ 2–3). This case remains at an early stage, and concerns over "judicial economy, convenience, fairness, and comity" weigh against exercising supplemental jurisdiction. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

**6.** Because a four-year statute of limitations applies to Sherman Act claims, 15 U.S.C. § 15(b), "Plaintiffs' claims are generally precluded to the extent they seek relief for injuries predating April 22, 2018, four years before they filed suit." *Arcell*, 2023 WL 5336865, at *5.

As this Court previously held, the continuing violation exception does not apply. As an initial matter, despite Defendants' argument on this issue (Mot. at 16), Plaintiffs "fail[] to respond to this argument and therefore concede[] it through silence." *Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010). In any event, "[t]o state a continuing violation of the antitrust laws in the Ninth Circuit, a plaintiff must allege that a defendant completed an overt act during the limitations period that meets two criteria: '1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff.'" *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014) (quoting *Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987))). But Plaintiffs offer no new allegations "to establish any overt act in their complaint" sufficient to invoke this exception. *Arcell*, 2023 WL 5336865, at *5. Moreover, "the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). Therefore, as this Court's prior order recognized, "even if Plaintiffs properly alleged continuing overt acts that caused injury within the statute of limitations, they are only entitled to relief for injuries occurring from that overt act within the statute of limitations." *Arcell*, 2023 WL 5336865, at *5.

Nor have Plaintiffs sufficiently alleged that the fraudulent concealment exception applies. "To plead fraudulent concealment in accordance with Rule 9(b), Plaintiffs must allege an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1075 (N.D. Cal. 2016) (cleaned up). Plaintiffs' conclusory and vague allegations that Defendants "secretly conducted meetings" and "engaged in conduct to obfuscate internal communications" are plainly insufficient. (FAC ¶ 265); *see id.* at 1073 ("[A]llegations of

9

fraudulent concealment must be pled with particularity," and "'[c]onclusory statements are not enough.'" (quoting *Conmar v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988))). And while Plaintiffs assert that "Google has destroyed evidence of its practices" in another case (FAC ¶ 265), they put forth no specific factual allegations that Defendants did so in this case.

As such, to the extent Plaintiffs seek recovery based on incidents that occurred before April 22, 2018, these claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

**7.** Plaintiffs' motion to convert Defendants' motion to dismiss into a motion for summary judgment (Dkt. No. 92) is **DENIED**, as this order is not based on any "matters outside the pleadings." Fed. R. Civ. P. 12(d); *see also Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (conversion not required under Rule 12(d) where the district court "did not consider any material outside the pleadings"). Additionally, the discovery stay (Dkt. No. 47) remains in place unless and until the Court holds that Plaintiffs have stated a claim upon which relief can be granted.

\*   \*   \*

Within **thirty days from the date of this order**, Plaintiffs shall file a second amended complaint correcting the deficiencies identified in this order. Plaintiffs' failure to meet the 30-day deadline to file a second amended complaint or failure to cure the deficiencies identified in this order will result in dismissal with prejudice of Plaintiffs' claims. Defendants' response to the operative complaint is due **twenty-one days** from the date of Plaintiffs' filing.

**IT IS SO ORDERED.**

Dated: February 5, 2024

RITA F. LIN
United States District Judge