UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CRANE SCHOOL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, et al.,<br><br>Defendants. | Case No. 21-cv-10001-PCP<br><br>**ORDER GRANTING IN PART GOOGLE'S MOTION TO COMPEL ARBITRATION AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 114, 115 |

In this class action lawsuit against defendants Google LLC, Alphabet Inc., XXVI Holdings Inc., Google CEO Sundar Pichai, and former Google CEO Eric Schmidt (collectively, the Google defendants), as well as Apple Inc. and Apple CEO Tim Cook (collectively, the Apple defendants), plaintiff California Crane School, Inc. (CCS) alleges that Google and Apple unlawfully agreed to divide the online search and search advertising markets in violation of federal and state antitrust laws. The Google defendants now move to compel arbitration, and all defendants move to dismiss the complaint. For the reasons that follow, the Court grants in part Google's motion to compel arbitration, denying the motion only as to CCS's claim for public injunctive relief under California's Unfair Competition Law. The Court grants Google's motion to dismiss that remaining claim, and grants Apple's motion to dismiss all of the claims against the Apple defendants.

## BACKGROUND

CCS is a crane operating school that advertises its services on Google. CCS alleges that Google and Apple have unlawfully agreed to divide the markets for search and search advertising. Specifically, CCS alleges that since 2005 Apple and Google have agreed that Apple will not enter the search and search advertising markets and will instead make Google the default search engine on Apple's devices in exchange for billions of dollars in payments from Google to Apple. CCS

alleges that CEOs Pichai and Cook secretly met several times to continue this unlawful agreement.

In its first amended complaint, CCS asserted violations of Sections 1 and 2 of the Sherman Act. Dkt. No. 39.[1] The Google defendants moved to compel arbitration in March 2022, and the Court granted that motion. *Cal. Crane Sch., Inc. v. Google LLC*, 621 F. Supp. 3d 1024 (N.D. Cal. 2022) ("*Crane I*"). In *Crane I*, the Court held that CCS had accepted Google's 2017 and 2018 Advertising Program Terms of Service, and that because CCS had been provided with an opportunity to opt out of arbitration but did not do so, the arbitration agreement was not adhesive. *Id.* at 1030. The Court further held that the language of the Terms encompassed the claims in the then-operative complaint. *Id.* The Court also held that while California's *McGill* rule makes an arbitration provision that waives a party's ability to seek public injunctive relief in any forum invalid and unenforceable, *see McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017), such relief could not be sought on the federal law claims in the complaint. *Crane I*, 621 F. Supp. 3d at 1031. Finally, the Court suggested that even if CCS were to amend its complaint to include state law claims for public injunctive relief, CCS was seeking relief on behalf of itself and a "discrete subset of similarly situated" consumers who paid Google for advertising services, and "public injunctive relief cannot be sought in pursuit of representative claims." *Id.* at 1032.

The Google and Apple defendants separately moved to dismiss the first amended complaint, and the Court also granted that motion. The Court held that CCS had failed to adequately plead antitrust injury, to plead facts plausibly alleging an antitrust conspiracy, or to plead fraudulent concealment with particularity. *Cal. Crane Sch., Inc. v. Google LLC*, 2023 WL 2769096 (N.D. Cal. Mar. 31, 2023) ("*Crane II*"). Regarding antitrust injury, the Court found a "mismatch," noting that CCS "alleges that it was harmed in the search *advertising* market" while CSS's claims arose from "Apple's decision not to enter the *search* market." *Id.* at *3 (emphasis added). Regarding the alleged antitrust conspiracy, the Court held that the complaint did not include enough direct or circumstantial evidence of the purported agreement between Google and Apple to make CCS's allegations regarding the existence of that agreement plausible. *Id.* at *5–6.

---

[1] The operative complaint is now the second amended complaint. Dkt. No. 112.

After the *Crane I and Crane II* decisions, CCS filed the now-operative second amended complaint adding three state law claims. Dkt. No. 112. The second amended complaint asserts class claims for: (1) violation of Section 1 of the Sherman Act by entering a profit-sharing non-compete agreement; (2) violation of Section 2 of the Sherman Act by conspiring to monopolize; (3) violation of California's Cartwright Act by restraining trade and commerce; (4) violation of the UCL by unfairly restricting competition; and (5) unjust enrichment for unlawfully inflating prices and profits. CCS seeks an order voiding the purported agreement between Google and Apple, granting injunctive relief under the UCL enjoining defendants from entering future non-compete agreements, and awarding treble damages for the class, disgorgement, and divestiture.

The Google defendants now renew their motion to compel arbitration, arguing that CCS is required to arbitrate all disputes with Google per its contractual obligations. Google argues that its Terms of Service, which CCS purportedly accepted in 2017 and 2018, require the use of binding individual arbitration, rather than jury trials or class actions, to resolve disputes. Dkt. No. 32-2, at 2. The Google defendants contend that the additional state law claims in the second amended complaint do not support a claim for public injunctive relief under the *McGill* rule given the issues identified by the Court in *Crane I*.

The Google and Apple defendants separately move to dismiss CCS's second amended complaint under Federal Rule of Civil Procedure 12(b)(6). They argue that the complaint fails to state a claim under Sections 1 and 2 of the Sherman Act, that CCS lacks antitrust standing, that the state law claims should be dismissed because the predicate federal violations are insufficiently pleaded, and that claims for damages predating December 27, 2017 (four years before the filing of the initial complaint on December 27, 2021) are time-barred. 15 U.S.C. § 15b.

## LEGAL STANDARDS

The Federal Arbitration Act (FAA) provides that a "written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this language makes clear, "an arbitration agreement is a contract like any other." *Bielski v.*

3

*Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). And like other contracts, arbitration agreements are subject to "generally applicable contract defenses" like "fraud, duress, or unconscionability." *Lim v. TForce Logs., LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

When a party moves to compel arbitration, the court must first determine "whether a valid arbitration agreement exists" and "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).[2] If the court is "satisfied that the making of the agreement for arbitration … is not in issue," it must "make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. The summary judgment standard applies to such motions. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Thus, the court must "give to the opposing party the benefit of all reasonable doubts and inferences." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007).

The Federal Rules require a complaint to include only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a Rule 12(b)(6) motion contending that a complaint fails to state a claim, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029 (9th Cir. 2009). Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While legal conclusions "can provide the complaint's framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 664.

Under the law of the case doctrine, a court generally will not reconsider "an issue previously decided by the same court, or a higher court in the identical case." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition." *Id.* (citing *Liberty Mutual Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)).

---

[2] The arbitration agreement at issue here expressly assigns these issues of enforceability and scope to the Court. Dkt. No. 32-2, at 6 ("[O]nly a court of competent jurisdiction may decide issues relating to the scope and enforceability of this arbitration provision.").

4

"Application of the doctrine is discretionary." *Lummi Indian Tribe*, 235 F.3d at 452.

## ANALYSIS

**I.    The Google Defendants' Motion To Compel Arbitration Is Granted in Part.**

The Google defendants move to compel arbitration of CCS's claims pursuant to an arbitration clause in Google's Terms of Service. CCS responds that Google imposed "adhesive terms" through its agreement, Dkt. No. 118, at 9, and that this unlawful adhesion constitutes grounds for revocation of the contract under the FAA's saving clause, 9 U.S.C. § 2. *See Kilgore v. KeyBank, Nat. Ass'n,* 718 F.3d 1052, 1058 (9th Cir. 2013) (noting that the FAA's savings clause "preserves generally applicable contract defenses"). CCS also responds that Google's arbitration agreement is unenforceable because it waives public injunctive relief in violation of the California Supreme Court's *McGill* rule. Dkt. No. 118, at 12.[3]

Google's Terms of Service contain an unambiguous opt out provision, allowing an advertiser to opt out of the arbitration provision within 30 days of entering into the contract with Google. Dkt. No. 32-2, at 2 ("If Customer wishes, Customer may opt out of the requirement to arbitrate disputes by following the instructions in Section 13(F) below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision."). As the Court previously held in *Crane I*, 621 F. Supp. 3d at 1030, the opt out provision in Google's Terms of Service defeats CCS's argument that the arbitration agreement is adhesive. *See Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018) ("This Court finds that the 2017 [Terms] provided a meaningful opportunity to opt out of the arbitration provision."), *aff'd*, 816 F. App'x 68 (9th Cir. 2020). The ability to opt out of arbitration within a reasonable timeframe fatally undermines CCS's position that the arbitration agreement imposes adhesive terms on customers.

In support of its contrary argument, CCS cites *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 923 (9th Cir. 2013), in which the Ninth Circuit held that "where … [an individual] is facing [a corporation] with overwhelming bargaining power who drafted the contract … on a take-it-or-

---

[3] CCS does not contest that the arbitration agreement, if found to be valid and enforceable, encompasses all of its federal and state law claims.

leave-it basis, the [arbitration] clause is procedurally unconscionable." Google's opt-out provision, however, undercuts CCS's position that Google had overwhelming bargaining power with respect to the arbitration agreement. In contrast to an unconscionable take-it-or-leave-it contract, the arbitration agreement here allowed a customer to take-it, opt-out-of-arbitration-and-then-take-it, or leave-it. Even if other terms of Google's Terms of Service were found to be adhesive, the same cannot be said of the Terms' arbitration provisions, which the Court must consider separate and apart from the remainder of the contract. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.").[4]

CCS also argues that it opted out of arbitration by timely filing suit and opposing arbitration. Dkt. No. 118, at 22. It cites language from the Terms of Service stating that "[n]either party will be treated as having waived any rights by not exercising (or by delaying the exercise of) any rights under these Terms." Dkt. No. 32-2, at 8. But "[i]t is a standard rule of contract interpretetation that specific terms control over general ones." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020). Here, the specific 30-day opt-out period governing the arbitration agreement controls over the more general reservation of rights provision. Because CCS failed to opt out of arbitration within 30 days of agreeing to the Terms, it cannot exercise that right thereafter.

CCS further contends that the Google defendants waived arbitration by filing a motion to dismiss. *See Newirth ex re. Newirth v. Aegis Senior Comtys.*, 931 F.3d 935, 941 (9th Cir. 2019) ("Seeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum."). But the Google defendants moved to compel arbitration before ever moving to dismiss, and by doing so preserved their position that the issues in this case should be decided by an arbitrator rather than by the Court.[5]

---

[4] Because of this substantive federal law, an arbitration provision can be valid and enforceable even if other parts of the contract it is in are not and even if the state law of severability would not provide for severance of the arbitraion provision from the unenforceable portions of the contract.

[5] CCS also argues that the arbitration agreement unconstitutionally dispenses of its fundamental right to a jury trial under the Seventh Amendment. Dkt. No. 118, at 23–24. But the Supreme Court

United States District Court
Northern District of California

Finally, CCS argues that the arbitration agreement waives its ability to pursue public injunctive relief, making it unenforceable under the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017). Google's Terms state that the "arbitrator may award declaratory or injunctive relief only in favor of the *individual* party seeking relief and only to the extent necessary to provide relief warranted by that party's *individual* claim." Dkt. No. 32-2, at 5 (emphasis added). Because the Terms purportedly require arbitration of all disputes but also preclude the arbitrator from awarding *public* relief, CCS argues that the provision runs afoul of the *McGill* rule.

The *McGill* rule is a generally applicable contract defense not preempted by the FAA. *See Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 827 (9th Cir. 2019); *see also McBurnie v. RAC Acceptance East, LLC*, No. 22-16868, at *12 (9th Cir. Mar. 14, 2024) (reaffirming *Blair* in light of intervening Supreme Court precedent). The parties disagree, however, about whether the injunctive relief CCS seeks under the UCL—specifically, an injunction preventing Google and Apple from entering future non-compete agreements with respect to the search and search advertising markets, Dkt. No. 112, at 58—constitutes public injunctive relief.

The Ninth Circuit provided guidance on this issue in two recent decisions. In *Blair v. Rent-a-Center*, the plaintiffs alleged that Rent-A-Center's rent-to-own pricing scheme for household items violated state consumer protection laws that set maximums on the total amount of installment payments for rent-to-own items and on the final cash price to purchase such items. *Blair*, 928 F.3d at 823. The *Blair* class action plaintiffs sought an order "on behalf of the people of California" enjoining Rent-A-Center's use of the purportedly unlawful pricing structure in the future. *Id.* The Court found that the rent-to-own agreement at issue, which required arbitration of all disputes "on an individual basis," was unenforceable because it waived the right to seek public injunctive relief under the UCL in any forum in violation of the *McGill* rule. *Id.* In doing so, the Court held that the relief sought properly amounted to a public injunction because "Blair [sought]

---

has expressly held that a party can contractually waive its constitutional right to a jury trial in civil cases. *Hodges v. Easton*, 106 U.S. 408, 412 (1882). The Ninth Circuit has acknowledged that the FAA constitutionally "permits pre-dispute jury trial waivers … in the context of arbitration clauses." *In re Cnty. of Orange*, 784 F.3d 520, 529 n.4 (9th Cir. 2015).

7

to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public." *Id.* at 831 n.3.

In *Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535 (9th Cir. 2021), the Ninth Circuit clarified the meaning of public injunctive relief, holding that such relief must have the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public, cannot constitute the pursuit of representative claims or relief on behalf of others, and should present diffuse benefits to the general public as a whole. *Id.* at 541–42. The Court stated that public injunctive relief within the meaning of *McGill* is "limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party." *Id.* at 542. "[I]n explaining why the relief sought in *Blair* included public injunctive relief, [the Court] noted that it sought to stop Rent-A-Center from using an unlawful pricing structure" in a manner that "diffusely benefitted the general public as a whole." *Id.* at 544. By contrast, the relief sought in *Hodges* could not be defined as public injunctive relief because the relief would only benefit Comcast's cable subscribers, a "group of individuals similarly situated to the plaintiff." *Id.* at 549.

Here, CCS purports to bring its UCL claim against Google and Apple "for public injunctive relief for the benefit of the general public as a whole, and not as a class action or as a representative action, to restore competition in the market for search advertising." Dkt. No. 112, at 49. CCS alleges that "Google's and Apple's conduct has harmed the general public by reducing the quality of general search services in relation to privacy, data protection, and use of consumer data, by lessening choice in general search services, and by impeding innovation." *Id.*

The Court agrees that this relief would benefit the general public as a whole rather than providing benefits to only a specific and identifiable subset of the population. Unlike the class-specific relief sought in *Hodges*, the relief here would provide diffuse benefits to the public by potentially bolstering competition in the search and search advertising markets, increasing consumer choice, improving data privacy, and decreasing costs for both general search engine

users and digital advertisers like CCS.[6] Greater competition could also accelerate innovation, bringing positive downstream effects on internet users as a whole. Indeed, the injunctive relief sought by CCS here arguably provides even more diffuse benefits to the public as a whole than the relief in *Blair*, which would have benefitted only those members of the public who entered into future rent-to-own agreements with Rent-A-Center. *Blair*, 928 F.3d at 823. The injunctive relief CCS seeks under the UCL thus constitutes public injunctive relief for the purposes of *McGill*.[7]

Because Google's arbitration agreement prohibits CCS from seeking this public injunctive relief under the UCL in any forum, it violates the *McGill* rule and is unenforceable as to CCS's UCL claim for public injunctive relief.

Google's Terms of Service explicitly state that "[i]f a court decides that applicable law precludes enforcement of any of this subsection's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court." Dkt. No. 32-2, at 7. The Court therefore severs the UCL claim from the arbitration agreement and will allow that claim to proceed in this Court. *See Blair*, 928 F.3d at 831 (severing the claim for public injunctive relief from the scope of arbitration after finding a violation of the *McGill* rule). Because the Court finds the arbitration agreement to be otherwise valid and enforceable and because it encompasses CCS's remaining claims against the Google defendants, the Court grants the Google defendants' motion to compel arbitration of those claims.

## II. Defendants' Motion To Dismiss Is Granted.

While the Court compels arbitration of four claims against the Google defendants, the Google defendants' motion to dismiss the remaining UCL claim for public injunctive relief remains before this Court, and the Apple defendants have moved to dismiss all of CCS's claims

---

[6] Whether CCS has standing to bring a claim for public injunctive relief on behalf of general search engine users is a different question that goes to the adequacy of that claim under Rule 12(b)(6) rather than the arbitration agreement's enforceability as to the UCL claim.

[7] Because the Court in *Crane I* did not have any UCL claim for public injunctive relief before it, it did not decide "explicitly or by necessary implication" that the *McGill* rule would not apply to such a claim. *Lummi Indian Tribe*, 235 F.3d at 452. Regardless, application of the law of the case doctrine is "discretionary," *Lummi*, 235 F.3d at 452, and the Court would exercise its discretion to decide this issue *de novo* even if *Crane I* had decided it.

against them. The Court must therefore address both of the pending motions to dismiss CCS's second amended complaint, which contend that the revised complaint "does nothing to remedy the multiple defects the Court identified in Plaintiff's First Amended Complaint." Dkt. No. 115, at 11. The Court agrees that the second amended complaint, like the prior complaint, fails to state any plausible claim for relief.

### A. CCS Fails To Adequately Plead Claims Under the Sherman Act.

"Section 1 of the Sherman Act … has been interpreted as outlawing only unreasonable restraints of trade." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1149 (9th Cir. 2019) (cleaned up). To state a claim under Section 1, a plaintiff "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). "It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015).

"A plaintiff can establish a conspiracy through direct evidence, circumstantial evidence, or both." *Honey Bum, LLC v. Fashion Nova, Inc.*, 2023 WL 2592287, at *5 (9th Cir. Mar. 22, 2023). When presenting circumstantial evidence, "plaintiffs must allege something more than conduct merely consistent with agreement in order to nudge their claims across the line from conceivable to plausible." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation*, 28 F.4th 42, 47 (9th Cir. 2022). "Something more" includes "[p]lus factors [that] are often economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *Id.*

In its second amended complaint, as in the prior complaint, CCS fails to provide direct evidence of the purported non-compete agreements between Google and Apple. CCS alleges "a horizontal market allocation agreement between Apple and Google that Apple will not compete

against Google and that Google will pay Apple not to compete." Dkt. No. 112, at 4.[8] But CCS admits that it "has been prevented from obtaining the written Google-Apple agreements which set out the combination and conspiracy in detail." *Id.* While alleging that "Apple and Google have agreed in various writings, including in their written Revenue Sharing Agreement and in their written Pre-Installation Agreement that Apple would not compete in the search business and the search advertising market," CCS has included neither written agreement in its second amended complaint. *Id.*

Instead, CCS alleges in a vague and conclusory manner that these "written agreements were formed, confirmed, reconfirmed, and negotiated from time to time in private, secret, and clandestine personal meetings between the Chief Executive Officers and Chairmen of Apple and Google." *Id.* at 9. A "formal [written] agreement is not necessary" to adequately allege a conspiracy, simply "a conscious commitment to a common scheme designed to achieve an unlawful objective." *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 842 (9th Cir. 2022) (cleaned up). Yet CCS concedes that it does "not know when the secret meetings began but allege[s] that they began with Messrs. Jobs and Schmidt and that they have continued in force under Messrs. Cook and Pichai." *Id.* at 10. Such allegations, without any *evidence* of the underlying written or oral agreement to an anti-competitive scheme, are "plainly insufficient" to meet Rule 12(b)(6)'s pleading standards. *Crane II*, 2023 WL 2769096, at *5.

Without any direct evidence of the alleged agreements, CCS must provide circumstantial evidence plausibly suggesting the existence of the purported conspiracy. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193, 1194 n.6 (9th Cir. 2015) (noting that plaintiffs can plead "evidentiary facts" that "provide a plausible basis" to "infer the alleged agreements' existence."); *see also Copeland v. Energizer Holdings, Inc.*, 2024 WL 511224, at *4 (N.D. Cal. Feb. 9, 2024). CCS, however, fails to plead evidentiary facts showing the kind of "plus

---

[8] Although the parties do not dispute that Google and Apple entered into an agreement to make Google's search engine the default search engine for certain Apple products, CCS's claims are not premised on that agreement but on a purported additional agreement that Apple will refrain from competing against Google in the search or search advertising markets.

11

1    factors" necessary to make its conspiracy claims plausible. *DRAM*, 28 F.4th at 47 ("[P]laintiffs

2    must allege something more than conduct merely consistent with agreement in order to nudge

3    their claims across the line from conceivable to plausible.") (citation and alteration omitted).

4          First, CCS provides photographs of Google CEO Pichai and Apple CEO Cook having

5    dinner together. But this evidence alone is inadequate to allege a conspiracy for the purposes of

6    Section 1 of the Sherman Act. Rather, these photographs "could just as easily suggest rational,

7    legal business behavior by the defendants." *Kendall*, 518 F.3d at 1049; *see also Crane II*, 2023

8    WL 2769096, at *5.

9          Likewise, Google's dominance in the search and search advertising markets alone is

10   insufficient to allege that Google and Apple are engaged in a horizontal antitrust conspiracy, as its

11   dominance could rationally be attributed to a number of other market factors. *Cf. Abbyy USA

12   Software House, Inc. v. Nuance Commc'ns Inc.*, 2008 WL 4830740, at *2 (N.D. Cal. Nov. 6,

13   2008) ("[A]bsent well-pleaded allegations of anticompetitive conduct, [plaintiff] may not maintain

14   a cause of action for monopolization, even considering its allegations of large market share.").

15         CCS also claims that "Apple had actively worked on developing its own general search

16   engine as a potential competitor to Google that would replace Google as the default search engine

17   on its device," Dkt. No. 112, at 29; that this project was abandoned at some point; and that a

18   former Google executive described the potential loss of its search engine's default placement on

19   Apple products as a "Code Red," *id.* at 30. But again, these facts are consistent with each party

20   pursuing its own rational economic self-interest. Google pays Apple billions of dollars in return

21   for Apple making Google the default search engine on all of its devices, which CCS itself

22   contends is highly valuable to Google.[9] This mutually beneficial relationship could just as easily

23   suggest rational unilateral behavior by both companies (which each profit from the arrangement)

24   as it could suggest the existence of an unlawful conspiracy to refrain from competing with one

---

[9] To be certain, the Court takes judicial notice of the fact that the federal government is currently pursuing a Section 2 claim against Google based in part upon its default search engine agreement with Apple. *United States v. Google LLC*, Case No. 20-cv-03010 (D.D.C.). Notably, however, the government is not pursuing and has never pursued any Section 1 claim involving an unlawful conspiracy between Google and Apple.

12

another in the search and search advertising markets. Similarly, Apple's purported decision to abandon its search engine project years ago could just as easily be attributed to business factors, such as the actual and opportunity costs of developing a search engine, the difficulty of competing with existing search engines, or the benefit of receiving substantial ongoing payments from Google without having to invest any resources to generate that passive income, as to the existence of an unlawful conspiracy.

Because CCS still has not pleaded evidentiary facts sufficient to plausibly suggest the existence of the purported conspiracy between Apple and Google, the Court grants the Apple defendants' motion to dismiss the Section 1 claim. And because CCS had an opportunity to amend its complaint to address these deficiencies but failed to do so, the dismissal is without leave to amend.[10]

To state a conspiracy to monopolize claim under Section 2 of the Sherman Act, a plaintiff must plausibly show: (1) the existence of a combination or conspiracy to monopolize; (2) one or more overt acts in furtherance of the conspiracy; (3) a specific intent to monopolize; and (4) causal antitrust injury. *Paladin Assocs., Inc. v. Montana Power, Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). CCS's Section 2 claims fails for largely the same reasons as its Section 1 claim. CCS fails to include in its complaint the requisite agreement between Google and Apple and, for the reasons noted above, fails to plead evidentiary facts sufficient to plausibly allege an agreement or conspiracy between Google and Apple. CCS's Section 2 claim additionally fails because the second amended complaint does not plead facts establishing a specific intent by the Apple defendants to enable Google's monopolization of the market. The Court therefore grants the Apple

---

[10] CCS's allegations might very well have been sufficient to state a claim under the notice pleading standards that prevailed before the Supreme Court's decisions in *Twombly* and *Iqbal*. Since those decisions, however, Rule 12 has required more than conclusory allegations and instead demands the pleading of evidentiary facts plausibly suggesting the existence of an alleged conspiracy. Indeed, *Twombly* dealt with the precise issue here—whether the plaintiffs' bare allegation of an alleged antitrust conspiracy provided "plausible grounds to infer an agreement" under Rule 12. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court held that it did not. Though CCS argues that it should be permitted to undertake discovery to obtain the facts necessary to plead an antirust conspiracy, Dkt. No. 119, at 29, *Twombly* held that plaintiffs must satisfy the plausibility standard *before* being permitted such discovery. *Id.* at 546.

defendants' motion to dismiss the Section 2 claim, again without leave to amend.

### B. CCS Fails To Adequately Plead State Law Claims.

Defendants argue that CCS's new state law claims under the Cartwright Act, under the UCL, and for unjust enrichment should be dismissed because they are each predicated on the inadequately pleaded federal law claims. The Court agrees.

"[T]he requirements for a claim under California's Cartwright Act are identical to those for a claim under the Sherman Act." *Colonial Med. Grp., Inc. v. Cath. Health Care W.*, 444 F. App'x 937, 939 (9th Cir. 2011) ("[B]ecause we affirm the district court's dismissal of [plaintiff's] Sherman Act claims, we also affirm its dismissal of [plaintiff's] Cartwright Act claims."). CCS acknowledges this parallelism between the state and federal antitrust laws. Dkt. No. 119, at 26 ("Typically, if a plaintiff is capable of maintaining a Sherman Act claim, the plaintiff is capable of maintaining a similar Cartwright Act claim."). Because the Cartwright Act claim has the same elements as a Sherman Act violation, the Court grants the Apple defendants' motion to dismiss the Cartwright Act claim without leave to amend.

The UCL prohibits unfair competition, which means "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. When assessing a UCL claim, courts consider each of three prongs—unlawful, fraudulent, and unfair—to determine whether a practice constitutes unfair competition, and "a claim that sufficiently pleads any of these prongs survives a motion to dismiss." *MacDonald v. Ford Motor Co.*, 37 F.Supp.3d 1087, 1097 (N.D. Cal. 2014). The unlawful prong requires a predicate legal violation (e.g., a Sherman Act or Cartwright Act violation), the fraudulent prong requires a showing of fraudulent conduct pleaded with particularity under Federal Rule of Civil Procedure 9(b), and the unfair prong requires a showing of substantial injury not outweighed by countervailing benefits to consumers or competition that could not have been reasonably avoided by consumers. *Id.* at 1098. As an alternative to this balancing approach to the unfair prong, courts in the Ninth Circuit sometimes consider: (1) whether the challenged conduct is "tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law"; or (2) whether the practice is "immoral, unethical, oppressive,

1   unscrupulous or substantially injurious to consumers." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d
2   1204, 1215 (9th Cir. 2020).
3         Because CCS fails to adequately plead claims under the Sherman Act and Cartwright Act
4   and has not identified any other unlawfulness in the defendants' alleged conduct, it cannot bring a
5   UCL claim under the unlawful prong. *DRAM*, 28 F.4th at 54 n.7 (dismissing plaintiffs' UCL claim
6   because it was "premised upon the existence of an antitrust conspiracy, and therefore [should] rise
7   and fall with the Sherman Act claim."). As indicated by CCS at the February 8, 2024 motion
8   hearing and as suggested by defendants in their briefing, Dkt. No. 115, at 28 n.8, CCS appears to
9   be asserting a UCL claim predicated solely on the defendants' alleged violation of these antitrust
10  laws. The Court's dismissal of those antitrust claims therefore requires dismissal of CCS's UCL
11  claim as well. Because the Court dismisses the predicate antitrust claims without leave to amend,
12  it will also dismiss the UCL claim without leave to amend.
13        Even if CCS were pursuing a claim under one of the other prongs, its UCL claim would
14  have to be dismissed. As this Court noted in *Crane II*, CCS fails to plead with particularity under
15  Rule 9(b) the circumstances of any asserted fraudulent concealment. *Crane II*, 2023 WL 2769096,
16  at *7 (citing *Conmar Corp. v. Mitsui & Co. (USA)*, 858 F.2d 499, 502 (9th Cir. 1988)). CCS
17  similarly fails to plead facts supporting any of the three Ninth Circuit tests for unfairness. Under
18  the cost-benefit balancing test, CCS fails to establish that the utility of defendants' conduct is
19  outweighed by the alleged harm to consumers.[11] Applying the tethering test, CCS's claim fails
20  because the underlying Sherman Act and Cartwright Act claims are not adequately pleaded and
21  CCS has not shown that defendants' conduct threatens an incipient violation of or "violates the
22  policy or spirit" of any antitrust law—which, as relevant here, target agreements and conspiracies

---

[11] CCS does not address the possible benefits to consumers from Apple and Google's business relationship. If Google's market dominance results from the strength of its search engine, consumers may benefit from having Google serve as the default search engine on Apple devices. In addition, to demonstrate harm to consumers, CCS would need to plausibly allege that, in the absence of the alleged agreement, Apple would be successful in developing a competitive search engine notwithstanding that other large corporations like Microsoft have faced difficulty in doing so. Demonstrating harm to consumers in the search advertising market would be an even greater hurdle, as CCS would need to plead facts showing that Apple would have entered and succeeded in that separate market.

15

1  in restraint of trade rather than merely unilateral conduct. Dkt. No. 119, at 27; *CVS Pharmacy*, 982

2  F.3d at 1215; *see also The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988)

3  ("Unilateral conduct by a single firm, even if it appears to restrain trade unreasonably, is not

4  unlawful under section 1.") (cleaned up). Likewise, there is no plausible showing that the alleged

5  practice is immoral, unethical, or oppressive to consumers. *See supra* note 11.

6        CCS's final claim is for unjust enrichment.[12] "When a plaintiff alleges unjust enrichment, a

7  court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v.*

8  *Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). To adequately allege unjust

9  enrichment as a quasi-contract claim for restitution, "a plaintiff must show that the defendant

10  received and unjustly retained benefit at the plaintiff's expense." *ESG Capital Partners, LP v.*

11  *Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). In support of its unjust enrichment claim, CCS

12  alleges only that both the Google defendants and the Apple defendants have been unjustly

13  enriched "[a]s a result of their unlawful conduct described above" and "from their unlawful acts."

14  Dkt. No. 112, at 55. Crucially, CCS does not identify what benefit the Apple defendants received

15  *from CSS* that should be returned to CSS. To the contrary, CCS alleges that its payments were

16  made solely to Google. Further, CCS's claim is by its own terms premised on the unlawfulness of

17  the defendants' conduct, and the Court has already concluded that the second amended complaint

18  fails to state a valid claim of unlawfulness under any other state or federal law. The Court

19  therefore grants the Apple defendants' motion to dismiss CCS's unjust enrichment claim without

20  leave to amend.[13]

---

[12] The Apple defendants contend that California law generally does not provide such a standalone cause of action. Dkt. No. 115, at 30–31; *see Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). On the basis of intervening California Supreme Court authority, however, the Ninth Circuit has more recently acknowledged (in a nonprecedential opinion) that unjust enrichment may constitute a standalone cause of action under California law. *Bruton v. Gerber Products Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (citing *Hartford Casualty Ins. Co. v. J.R. Mktg., LLC*, 61 Cal.4th 988, 998 (2015), which noted that the "law implies a restitutionary obligation" where the doctrine of unjust enrichment applies). Because CCS has not pleaded the elements of a claim for unjust enrichment or restitution, the Court need not resolve this issue.

[13] Where a plaintiff has had numerous opportunities to amend their complaint but has failed to identify any viable legal theories, the district court has discretion to dismiss without leave to amend even a new claim. *See Dutciuc v. Meritage Homes of Arizona, Inc.*, 426 F. App'x 658, 660 (9th Cir. 2011) ("Although leave to amend is often freely given when justice so requires, a district

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court grants the Google defendants' motion to compel arbitration of all claims except CCS's UCL claim for public injunctive relief. The Court grants without leave to amend the Google and Apple defendants' motions to dismiss the UCL claim and the Apple defendants' motion to dismiss the remaining claims.

**IT IS SO ORDERED.**

Dated: March 21, 2024

P. Casey Pitts
United States District Judge

---

court may deny leave to amend where a plaintiff has repeatedly failed to cure deficiencies by amendments previously allowed.") (cleaned up).